**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

Civil Case No. 1:16-cv-01329-NYW

VIOLETA SOLIS,
CESAR SALAZAR,
EDGAR CEBALLOS,
AARON SALAS,
HILDEBERTO ALDECO BALTAZAR,
JUAN RAMON RODRIGUEZ,
and those similarly situated;

       Plaintiffs,

v.

THE CIRCLE GROUP, LLC,
LA DRYWALL, INC.,
L.A.G. DRYWALL, INC.,
JAVIER MARTINEZ DRYWALL, LLC,
GULF COAST CONSTRUCTION, INC.,
JOSE MENDIOLA (AKA "CABALLO"),
JESUS ORNELAS (AKA "CHUY"),
JAVIER MARTINEZ, and
JEFFREY MUSTO;

       Defendants.

---

**FIRST AMENDED**
**CLASS AND COLLECTIVE ACTION COMPLAINT AND JURY DEMAND**

---

## INTRODUCTORY STATEMENT

1.     This case involves the mistreatment of laborers who install drywall in residential and commercial real estate projects. Many of these projects are chic, visible, and expensive developments in booming cities. For example, in Denver, Plaintiffs and some of the other workers they seek to represent installed drywall in a large residential real estate project at 1776

Broadway, Denver, Colorado ("SkyHouse Denver"). SkyHouse Denver is one of many other SkyHouse projects in urban centers around the country. According to one account, SkyHouse Denver includes the "signature SkyHouse on the top floor of the building [which] includes a club room, swimming pool, and fitness center. The building is targeting next-generation professionals who are choosing to live in urban centers close to public transportation, employment centers, and cultural institutions."

2.     SkyHouse Denver's targeted customers may be "next-generation professionals who are choosing to live in urban centers," but its targeted drywall workers are low-wage, immigrant laborers who are harmed by illegal pay and discrimination practices. Defendants exploit these workers by refusing to pay them for all of the hours they work and, pursuant to an apparent company-wide policy, refusing to pay them overtime premiums for hours worked in excess of 40 per week. Because of the high-pressure nature of drywall work, these workers are frequently required to work far more than 40 hours in a week and often more than 60 hours a week, and yet none of those excess hours are compensated with overtime premiums. They file this lawsuit after months of complaining in vain about their missing wages.

3.     Additionally, at SkyHouse Denver, Defendants exploited their workers by subjecting them to pervasive sex and race discrimination that resulted in Latina female workers being paid less while performing harder and more dangerous work than other employees. Although many drywall workers do not have experience with drywall work before they begin at the SkyHouse Denver location, male workers have an opportunity to learn to hang and install drywall. Latina workers, on the other hand, are assigned to the role of Cleaner/Laborer, where they are tasked with cleaning, moving, and scraping debris off of the walls and the floors. While

at work, they are subjected to catcalls and taunts. When Plaintiff Solis asked her boss whether her employers would pay her the wages she had earned through her hard work, he laughed and called her a "poor Mexican."

## JURISDICTION AND VENUE

4.      This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1331 (federal question), and supplemental jurisdiction pursuant to 28 U.S.C. § 1367 over Plaintiffs' related claims under state law.

5.      Venue is proper pursuant to 28 U.S.C. § 1391. A substantial part of the events giving rise to Plaintiffs' claims occurred in this District, where SkyHouse Denver is located.

## ADMINISTRATIVE EXHAUSTION

6.      Plaintiff Solis filed Charges of Discrimination with the EEOC against Defendants The Circle Group, LLC (Charge No. 541-2016-01845), Gulf Coast Construction, Inc. (Charge No. 541-2016-01848), and LA Drywall, Inc. (Charge No. 541-2016-01847) on May 31, 2016, alleging discrimination on the basis of sex, race, national origin, and ancestry, in violation of Title VII, and sex-based disparities in pay, in violation of the EPA.

7.      Plaintiff Solis received Notices of Right to Sue from the EEOC on June 21, 2016 on her charges of discrimination.

8.      Plaintiff Solis has exhausted all administrative remedies and this action is timely filed.

## PLAINTIFFS

9.      At all times material to the allegations of the complaint, Plaintiffs Aaron Salas, Cesar Salazar, Hildeberto Baltazar, Violeta Solis, and Juan Ramon Rodriguez were domiciled in

the District of Colorado. While in Colorado, these Plaintiffs worked on the SkyHouse Denver project and were employed by corporate defendants that included The Circle Group, LLC (hereinafter "Circle Group"), LA Drywall, Inc. and L.A.G. Drywall, Inc. (hereinafter collectively "LA Drywall"), Javier Martinez Drywall, LLC (hereinafter "Javier Martinez Drywall"), and Gulf Coast Construction, Inc. (hereinafter "Gulf Coast Construction" or "Gulf Coast"). They were also employed by individuals including, but not limited to, Jose Mendiola (aka "Caballo" or "Juan"), Jesus Ornelas (aka "Chuy"), Javier Martinez, and Jeffrey Musto.

10.     In November 2015, Plaintiff Edgar Ceballos was domiciled in Tennessee, where he performed drywall work as employee of, among others, Circle Group, LA Drywall, and Gulf Coast Construction. After leaving Nashville, Plaintiff Ceballos travelled to Denver where he began work on the SkyHouse Denver project as an employee of, among others, Circle Group, LA Drywall, Javier Martinez Drywall, Gulf Coast Construction, Jose Mendiola (aka "Caballo," "Juan"), Jesus Ornelas (aka "Chuy"), Javier Martinez, and Jeffrey Musto.

11.     Plaintiffs have each signed written consent to be named Plaintiffs in a FLSA collective action, and these signed consent forms are filed in this case at ECF Doc. No. 9.

## DEFENDANTS

12.     Defendant Circle Group is a Georgia Limited Liability Company with its principal place of business in Georgia.

13.     Defendant Circle Group is a large, national drywall subcontractor that performs work for residential and commercial development projects around the United States. It installs tens of millions of square feet of drywall per year in projects around the country.

14.     Upon information and belief, Circle Group works with "labor brokers" to recruit employees and to transport these employees around the United States to perform work related to the installation of drywall. These "labor brokers" are middlemen or intermediaries that facilitate connections between employees and Circle Group and help Circle Group supervise employees on job sites.

15.     Defendant LA Drywall, Inc. is a Florida for Profit Corporation with its principal place of business in Florida. LA Drywall, Inc. is one of the labor brokers that frequently works with Circle Group to recruit, transport, and supervise employees. LA Drywall, Inc.'s primary function is recruiting and supervising drywall labor.

16.     Defendant L.A.G. Drywall, Inc. is a Florida for Profit Corporation with its principal place of business in Georgia.  L.A.G. Drywall, Inc. is one of the labor brokers that frequently works with Circle Group to recruit, transport, and supervise employees.  L.A.G. Drywall, Inc.'s primary function is recruiting and supervising drywall labor.

17.     Defendants LA Drywall, Inc. and L.A.G. Drywall, Inc. are alter egos of one another with shared ownership and management. They will be collectively referred to herein as "LA Drywall."

18.     Javier Martinez Drywall, LLC (hereinafter "Javier Martinez Drywall") is a Colorado Limited Liability Company with its principal place of business in Colorado. It is one of Circle Group's labor brokers. Javier Martinez Drywall's primary function is recruiting and supervising drywall labor.

19.    Gulf Coast Construction, Inc. is a Georgia for Profit Corporation with its principal place of business in Georgia. The checks that Circle Group and the other Defendants use to pay workers are from Gulf Coast.

20.    Jose Mendiola, sometimes called "Caballo" and sometimes called "Juan," helped Circle Group to recruit and supervise laborers working on drywall at the SkyHouse Denver project. He is an agent of LA Drywall and/or L.A.G. Drywall.

21.    Jesus Ornelas, sometimes called "Chuy," helped Circle Group to recruit and supervise laborers working on drywall at the SkyHouse Denver project. He is an agent of LA Drywall and/or L.A.G. Drywall.

22.    In this Complaint, Defendants Mendiola and Ornelas are sometimes referred to as "agents of LA Drywall."

23.    Javier Martinez helped Circle Group to recruit and supervise laborers working on drywall at the SkyHouse Denver project. He is an agent of Javier Martinez Drywall.

24.    Jeffrey Musto was employed by Circle Group and helped Circle Group to recruit and supervise laborers working on drywall at the SkyHouse Denver project.  He is an agent of Circle Group.

25.    In this Complaint, Defendants Ornelas, Mendiola, Martinez and Musto are sometimes referred to as the "Individual Defendants."

## STATEMENT OF FACTS SUPPORTING PLAINTIFFS' WAGE-AND-HOUR CLAIMS

**A.  SkyHouse Denver Project: Plaintiffs were employed by Circle Group, LA Drywall, Javier Martinez Drywall, Gulf Coast Construction, Jose Mendiola, Jesus Ornelas, Javier Martinez, and Jeffrey Musto.**

26.     In the period between September 2015 and the present, Plaintiffs entered into employment relationships with Circle Group, LA Drywall, Javier Martinez Drywall, Gulf Coast Construction, Jose Mendiola, Jesus Ornelas, Javier Martinez, and Jeffrey Musto to provide drywall labor at the SkyHouse Denver project.

27.     All Plaintiffs were recruited and hired by LA Drywall and its agents for the purpose of working on Circle Group's contract at the SkyHouse Denver site.

28.     The role and functions of Javier Martinez Drywall at the SkyHouse Denver site considerably overlapped with the role and functions of LA Drywall. After she was recruited to work at the SkyHouse site, at least one worker was "switched" from Javier Martinez Drywall to LA Drywall. This formal change did not alter her day-to-day employment.

29.     Plaintiff Ceballos and other members of the putative Colorado Class were recruited by LA Drywall to travel to Denver to perform drywall labor on the SkyHouse Denver project.

30.     Some members of the Colorado Class lived in housing provided by LA Drywall. Often this housing took the form of cramped trailers.

31.     Other Plaintiffs and some members of the Colorado Class lived in Denver before beginning work at the SkyHouse Denver project. LA Drywall and Javier Martinez Drywall recruited these members through the Internet and word of mouth.

32.     Plaintiffs' work involved various aspects of the drywall mounting process. This work included drywall, framing, and clean-up work related to drywall installation.

33.     While working on the SkyHouse Denver site, Plaintiffs were managed and supervised by agents of LA Drywall, Javier Martinez Drywall, and Circle Group, including the Individual Defendants.

34.     Circle Group, LA Drywall, and Javier Martinez Drywall agents together told Plaintiffs when they needed to arrive at work and when they could leave work each day. Plaintiffs were not free to come and go as they pleased.

35.     Each day Plaintiffs reported to work, they signed in on sheets provided by LA Drywall, Javier Martinez Drywall, and Circle Group.

36.     On some occasions, when Plaintiffs arrived at the worksite, they walked past a Circle Group agent (typically Defendant Musto) sitting behind two different time sheets. One time sheet was for workers whom Circle Group designated as working for LA Drywall. The other time sheet designated sign-in times for workers whom Circle Group designated as working for Circle Group. In the mornings, the Circle Group agent would decide whether Plaintiffs and others similarly situated should sign in on the Circle Group timesheet or the LA Drywall timesheet. Plaintiffs and others similarly situated did not know how the Circle Group agent assigned Plaintiffs to one time sheet as opposed to another.

37.     On other occasions, Plaintiffs and others similarly situated signed time sheets for both LA Drywall and Circle Group on the same day.

38.     Circle Group, LA Drywall, and Javier Martinez agents including the Individual Defendants jointly supervised Plaintiffs' day-to-day work, including by telling Plaintiffs what floor to work on and what their responsibilities were for any given day.

39.     The work Plaintiffs performed for Circle Group, LA Drywall, and Javier Martinez Drywall was integral to the businesses of Circle Group, LA Drywall, and Javier Martinez Drywall because the principal purpose of these businesses is the installation of drywall, which cannot be done without drywall installers like the Plaintiffs.

40.     Plaintiffs did not exercise any managerial control that affected an opportunity for profit or loss. Plaintiffs reported to work when Circle Group, LA Drywall, and Javier Martinez Drywall (and their agents including the Individual Defendants) told them to report to work, and they left work when Circle Group and LA Drywall told them they could leave work.

41.     Many Plaintiffs did not have significant experience working in drywall before beginning their work on the SkyHouse Denver project, and some Plaintiffs did not have ***any*** drywall experience before starting work on the SkyHouse Denver project.

42.     Although they were insufficient to allow for safe and effective work, most of the tools and equipment for Plaintiffs' work on the SkyHouse Denver project were, in large part, provided by Circle Group, LA Drywall, and Javier Martinez Drywall.

43.     When Plaintiffs and others similarly situated complained about their wages they often complained to the agents of Circle Group and LA Drywall, including Defendants Musto, Ornelas, and Mendiola. Agents of Circle Group and LA Drywall were aware that Plaintiffs were not being paid their legal wages but continued to make assurances that they would receive their legal wages while frequently becoming angry and dismissive about Plaintiffs' complaints.

44.     Circle Group, LA Drywall and their agents habitually reduced the wages of Plaintiffs and others similarly situated in response to their complaints about Defendants' failure to pay legal wages.

45.     When Plaintiffs received wages for their work on the SkyHouse Denver project, those wages came in the form of checks from Gulf Coast Construction.

**B. SkyHouse Nashville Project: Plaintiff Ceballos and others similarly situated were employed by Circle Group, LA Drywall, and Gulf Coast Construction.**

46.     In 2015, Plaintiff Ceballos entered into an employment relationship with Circle Group, LA Drywall, and Gulf Coast Construction to provide drywall labor in a large development project in Nashville.

47.     LA Drywall recruited Plaintiff Ceballos for the Nashville project through Ceballos's family member.

48.     Before, during, and after his work in Nashville, Defendants suggested to Plaintiff Ceballos that he would receive legal wages.

49.     During his work in Nashville, Plaintiff Ceballos was supervised by Circle Group and LA Drywall, which provided drywall labor for the SkyHouse Nashville project. Circle Group instructed him where and when to show up and what tasks to perform each day.

50.     During his work in Nashville, Plaintiff Ceballos did not have control over his hours or his work. He was dependent on Circle Group and LA Drywall for his assignments, instructions, and pay.

51.     Circle Group and LA Drywall closely and directly supervised Plaintiff Ceballos's work in Nashville.

52.     After he completed his work in Nashville, LA Drywall and Circle Group told Plaintiff Ceballos that he could report to Denver for more work.

53.     When Plaintiff had not received all of his wages for his work in Tennessee, he was told he should complain to LA Drywall and its agents.

54.     He complained to Defendants Mendiola and Ornelas, but he was never paid all of his legal wages.

55.     When Plaintiff Ceballos received wages for his work on the Nashville project those wages came in the form of a check from Gulf Coast Construction.

## C. Defendants' Failure to Pay for All Hours Worked & Failure to Pay Overtime for Hours Worked in Excess of 40 Hours Per Week

56.     In the course of their work for Defendants in both Colorado and Tennessee, Plaintiffs frequently worked more than 40 hours per week. For example, in September 2015, Plaintiffs employed on the Denver SkyHouse project frequently worked every day of the week, Monday through Sunday, for more than 9 hours each day. At other times, Plaintiffs worked Monday through Friday for more than 9 hours each day and Saturday for more than 7 hours.

57.     No matter how many hours they worked, Plaintiffs were never paid overtime premiums for hours worked in excess of 40 hours per week. When they were paid for their work, they were paid the same wage for every hour they worked during the week.

58.     Plaintiffs were also frequently denied pay entirely for some of the hours they worked. For example, Plaintiff Salas was routinely denied pay for exactly 10 hours of work performed during the course of a week on the SkyHouse Denver project. Plaintiff Solis was denied pay for over 100 hours of work.

59.     When Plaintiffs complained to either Circle Group, LA Drywall, and Javier Martinez Drywall about their failure to pay wages, Circle Group, LA Drywall, and Javier Martinez Drywall often informed Plaintiffs that they would receive pay soon. In many cases, however, Plaintiffs did not receive their pay. And when they did receive wages, they never received overtime wages for hours worked in excess of 40 hours per week.

11

60.     On at least one occasion, Defendant Ornelas, an LA Drywall agent, informed Plaintiff Salazar that "they" had 1000 employees and "only one person doing payroll." Therefore, LA Drywall's agent explained, Plaintiff would have to be patient but would ultimately receive his wages. Plaintiff never received all of his wages and never received *any* overtime pay notwithstanding that he frequently worked more than 40 hours per week.

61.     Defendant Ornelas seems to have been referring to Circle Group's payroll practices.

**D.  Defendants' Businesses**

62.     Defendants each have an annual revenue of more than $500,000 per year and collectively were an enterprise with annual revenue of more than $500,000 per year.

63.     During their work for Defendants, Plaintiffs' work involved interstate commerce. Plaintiffs handled goods, tools, and materials transmitted in interstate commerce, and worked with employees who had moved for the purpose of working for Defendants or had themselves moved to work for Defendants.

64.     Defendants' operations are highly interrelated, because Defendants work together on multiple construction projects around the U.S., for which they jointly recruit and supervise employees to perform drywall services (Defendants' primary business). Defendants' control of labor relations is centralized, with payroll for all employees of Defendants coming from Defendant Gulf Coast Construction. Defendants share common managers who jointly supervise the work of employees and who direct that work on behalf of all Defendants interchangeably.

65.     Defendants are joint employers of all Plaintiffs, except that Defendant Javier Martinez Drywall, Defendant Javier Martinez and Defendant Jeffrey Musto are not joint

employers of Plaintiffs or class members working outside Colorado. Each Defendant had a major role in controlling Plaintiffs' work on a day-to-day basis, including hiring, work assignments, provision of housing, tools, safety training, and transportation, direction of work through supervisors, and decisions about how many of Plaintiffs' hours of work would be compensated and how and when Plaintiffs would be paid.

**E.  Defendants Knew or Should Have Known That Plaintiffs Were Entitled to Minimum Wage, Overtime, and Pay for all of the Hours they Worked**

66.     Defendants knew or should have known that Plaintiffs were entitled to minimum wage, overtime, and pay for all of the hours they worked.

67.     Plaintiffs were subject to the daily and direct supervision and control of Defendants. But Plaintiffs did not receive pay for all of the hours they worked and never received overtime pay.

68.     At least some Plaintiffs and putative class members complained to Defendants about the underpayment of wages. Notwithstanding these complaints, Defendants continued to deny Plaintiffs and putative class members pay for all of the hours they worked and, as a routine policy, denied Plaintiffs overtime pay for hours worked in excess of 40 hours per week.

69.     On some occasions Defendants even punished Plaintiffs who complained about not receiving wages by paying those Plaintiffs less.

## STATEMENT OF FACTS SUPPORTING PLAINTIFFS' DISCRIMINATION CLAIMS

70.     Plaintiff Solis worked as a Cleaner/Laborer for Defendants at SkyHouse Denver.

71.     Female workers were assigned to "Cleaner/Laborer" positions when they applied for work, and were not given the opportunity to work as Drywallers.

72.     Plaintiff Solis was hired by Defendant Jesus "Chuy" Ornelas.

73.     Upon information and belief, no women worked as Drywallers at SkyHouse Denver project, because Defendants refused to hire women to work as Drywallers.

74.     Male employees without drywall experience were hired by Defendants to work as Drywallers at SkyHouse Denver project.

75.     Plaintiff Solis was supervised by Defendant Jeffrey Musto, Rhonda (last name unknown), and Chre Houston. Sometimes, she was supervised by Defendant Javier Martinez, Mr. Ornelas, or Mr. Mendiola. Upon information and belief, Mr. Musto, Rhonda, and Ms. Houston were employed by Defendant Circle Group.

76.     Ms. Solis received paychecks from Defendant Gulf Coast Construction.

77.     Cleaner/Laborer employees were paid less than Drywallers.

78.     Working as a Cleaner/Laborer was heavier, more physically demanding work than working as a Drywaller. Cleaner/Laborers had to lift heavy pieces of drywall and other debris and make constant trips to throw the debris into the dumpster. They also had to scrape debris off the floor.

79.     Mr. Musto told Ms. Solis and other employees that women were better at hard work than men, and that was why he assigned women to Cleaner/Laborer positions, which he felt were the best place for women.

80.     Although most Cleaner/Laborers were female, a handful of men were assigned to work as Cleaner/Laborers as well.

81.     These men had identical duties to Ms. Solis.

82.     Upon information and belief, these men requested this assignment but would have been allowed to work as Drywallers if they chose.

14

83.     Upon information and belief, male Cleaner/Laborers were paid more per hour and were paid their correct wages more often than Ms. Solis.

84.     Upon information and belief, white female Cleaner/Laborers were paid more per hour and were paid their correct wages more often than Ms. Solis.

85.     Ms. Solis was also harassed based on her sex and because she is a Hispanic/Mexican-born woman.

86.     In a meeting of all employees working on drywall (including Drywallers, Cleaner/Laborers, and supervisors), a supervisor named Stuart (last name unknown) said that based on his religion, women shouldn't be working in construction.

87.     Female workers were catcalled and asked on dates by men at SkyHouse Denver project.

88.     Mr. Musto mocked Plaintiff Solis for being a "poor Mexican" when she demanded wages owed to her.

89.     Mr. Musto frequently had angry and violent outbursts towards Hispanic/Mexican-born workers.

90.     Ms. Houston often called Hispanic/Mexican-born workers "stupid," "mensa," "tonto," or "donkeys," yelled at them, and made fun of them for not speaking English.

91.     Plaintiff Solis left her employment due to an injury on or about November 9, 2015.

## RULE 23 WAGE-AND-HOUR CLASS ALLEGATIONS

92.     Plaintiffs incorporate by reference all previous paragraphs of this Complaint as if fully rewritten herein.

93.     Plaintiffs assert their Counts III-VI as a Fed R. Civ P. 23 class action on their own

behalf and on behalf of classes for which they seek certification.

94.     Pending any modifications necessitated by discovery, Plaintiffs preliminarily

define a class (the "Rule 23 Nationwide Class") as follows:

> ALL CURRENT AND FORMER EMPLOYEES OF CIRCLE
> GROUP, LA DRYWALL, OR GULF COAST CONSTRUCTION
> WHO PERFORMED DRYWALL, CLEANING, OR LABOR
> WORK

95.     Pending any modifications necessitated by discovery, Plaintiffs preliminarily

define a sub-class (the "Colorado Class") as follows:

> ALL CURRENT AND FORMER EMPLOYEES OF CIRCLE
> GROUP, LA DRYWALL, OR GULF COAST CONSTRUCTION
> WHO PERFORMED DRYWALL, CLEANING, OR LABOR
> WORK IN COLORADO

96.     Pending any modifications necessitated by discovery, Plaintiffs preliminarily

define a sub-class (the "Tennessee Class") as follows:

> ALL CURRENT AND FORMER EMPLOYEES OF CIRCLE
> GROUP, LA DRYWALL, OR GULF COAST CONSTRUCTION
> WHO PERFORMED DRYWALL, CLEANING, OR LABOR
> WORK IN TENNESSEE

97.     The classes are so numerous that joinder of all potential class members is

impracticable.  Plaintiffs do not know the exact size of the classes because that information is

within the control of Defendants. However, Plaintiffs estimate that the Rule 23 Nationwide Class

includes over 1,000 members because of statements made by Defendants' agents to Plaintiffs and

frequent turnover of drywall, cleaning, and labor employees.

98.     The sub-classes make up a subset of these Plaintiffs. Based on Plaintiffs'

experiences, the Colorado Class includes at least 50 members and the Tennessee Class includes

at least 50 members. The exact size of the classes will be easily ascertainable from Defendants' records.

99.     There are questions of law or fact common to the classes that predominate over any individual issues that might exist. Common questions of law and fact include: Defendants' pay practices; Defendants' failure to pay employees for some of their work; Defendants' failure to pay employees overtime wages for hours worked in excess of 40 hours per week.

100.     The class claims asserted by Plaintiffs are typical of the claims of all of the potential Class Members because Plaintiffs experienced the same or similar working conditions and pay practices as the Defendants' other employees. A class action is superior to other available methods for the fair and efficient adjudication of this controversy because numerous identical lawsuits alleging similar or identical causes of action would not serve the interests of judicial economy. This is especially true in the case of low-wage immigrant construction workers, like the class members here, who do not have experience with the American legal system, are unlikely to seek, or be able to retain, legal representation on their own and cannot realistically navigate the legal system *pro se*.

101.     Plaintiffs will fairly and adequately protect and represent the interests of the class. They were Defendants' employees and were victims of the same violations of law as the other class members, including numerous violations of federal and state wage-and-hour laws.

102.     Plaintiffs are represented by counsel experienced in litigation on behalf of low-wage workers and in wage-and-hour class actions.

103.    The prosecution of separate actions by the individual putative class members would create a risk of inconsistent or varying adjudications with respect to individual potential class members that would establish incompatible standards of conduct for Defendants.

104.    Each Class Member's claim is relatively small. Thus, the interest of potential Class Members in individually controlling the prosecution or defense of separate actions is slight. In addition, public policy supports the broad remedial purposes of class actions in general and that the pertinent state laws are appropriate vehicles to vindicate the rights of those employees with small claims as part of the larger class.

105.    Plaintiffs are unaware of any members of the putative classes who are interested in presenting their claims in a separate action.

106.    Plaintiffs are unaware of any pending litigation commenced by putative class members.

107.    It is desirable to concentrate this litigation in this forum because some of the employment contracts at issue were entered into in this jurisdiction and many Plaintiffs are domiciled in this jurisdiction.

108.    This class action will not be difficult to manage due to the uniformity of claims among putative class members and the susceptibility of wage claims to both class litigation and the use of representative testimony and representative documentary evidence.

109.    The contours of the class will be easily defined by reference to the payroll documents Defendants were legally required to create and maintain. 29 C.F.R. § 516, *et seq.*

## 29 U.S.C. § 216(b) COLLECTIVE ACTION ALLEGATIONS

110.    Plaintiffs incorporate by reference all previous paragraphs of this Complaint as if fully re-written herein.

111.     Plaintiffs bring their FLSA claim (Count I) as a collective action, pursuant to 29 U.S.C. § 216(b), on behalf of themselves and on behalf of all other similarly situated current and former employees of Defendants.

112.    Pending any modifications necessitated by discovery, Plaintiffs preliminarily define the "216(b) Class" as follows:

> ALL CURRENT AND FORMER EMPLOYEES OF CIRCLE GROUP, LA DRYWALL, OR GULF COAST CONSTRUCTION WHO PERFORMED DRYWALL, CLEANING, OR LABOR WORK

113.    Pending any modifications necessitated by discovery, Plaintiffs preliminarily define the "216(b) Colorado Class" as follows:

> ALL CURRENT AND FORMER EMPLOYEES OF CIRCLE GROUP, LA DRYWALL, OR GULF COAST CONSTRUCTION WHO PERFORMED DRYWALL, CLEANING, OR LABOR WORK IN COLORADO

114.    Pending any modifications necessitated by discovery, Plaintiffs preliminarily define the "216(b) Tennessee Class" as follows:

> ALL CURRENT AND FORMER EMPLOYEES OF CIRCLE GROUP, LA DRYWALL, OR GULF COAST CONSTRUCTION WHO PERFORMED DRYWALL, CLEANING, OR LABOR WORK IN TENNESSEE

115.    All potential FLSA Class Members are similarly situated because, among other things, they were all hourly employees of Defendants and the members of the Sub-Classes were

additionally all employed by Defendants. Moreover, all members of the Class and Sub-Classes suffered from the same policies of Defendants, including:

      a.      failing to pay overtime premiums;

      b.      failing to compensate employees for all of the time they worked; and

      c.      failing to pay class members at least statutory minimum wage on each pay day as mandated by the FLSA.

116.    Plaintiff Solis brings her Claim for Relief under the Fair Labor Standards Act and Equal Pay Act (Count II) as a collective action, pursuant to 29 U.S.C. § 216(b), on behalf of herself and on behalf of all similarly situated employees currently and formerly employed by Defendants. Pending any modifications necessitated by discovery, Plaintiff preliminarily defines this "216(b) EPA Class" as follows:

> ALL FEMALE WORKERS EMPLOYED BY DEFENDANTS
> AS HOURLY EMPLOYEES AT THE DENVER SKYHOUSE
> SITE

117.    All potential 216(b) EPA Class Members are similarly situated because they worked for Defendants as hourly employees and are or were subject to Defendants' common policy of paying female workers less than male workers for the same work.

**COUNT I: BREACH OF THE FAIR LABOR STANDARDS ACT (FLSA)**
**29 U.S.C. §§ 201 ET SEQ.**

**(Plaintiffs and the 216(b) Class against All Defendants; Plaintiffs and the 216(b) Colorado Class against All Defendants; Plaintiff Ceballos and the 216(b) Tennessee Class against All Defendants Except Javier Martinez Drywall, Javier Martinez, and Jeffrey Musto)**

118.    Plaintiffs incorporate by reference all previous paragraphs of this Complaint.

119.    Plaintiffs bring their FLSA claim as a collective action, pursuant to 29 U.S.C. § 216(b), on behalf of themselves and on behalf of all other similarly situated current and former employees of Defendants.

120.    Defendants employed all Plaintiffs on the SkyHouse Denver project and, with the exception of Javier Martinez Drywall, Javier Martinez, and Jeffrey Musto, also employed Plaintiff Ceballos in Tennessee.

121.    Each of the Defendants were, or were members of, of an enterprise that had annual revenues in excess of $500,000 during Plaintiffs' employment and had two or more employees that handled goods or materials that had been moved in or produced for interstate commerce. Defendants were therefore an enterprise or enterprises engaged in commerce pursuant to 29 U.S.C. § 203(s)(1).

122.    During their employment, Plaintiffs and those similarly situated were also engaged in commerce pursuant to 29 U.S.C. § 203(b).

123.    As employers of Plaintiffs and those similarly situated, Defendants named in this claim were required to pay the Plaintiffs and those similarly situated minimum wage and overtime pursuant to 29 U.S.C. §§ 206, 207 and failed to do so.

124.    The failure to pay minimum wage and overtime was willful pursuant to 29 U.S.C. § 255(a) because Defendants knew or showed reckless disregard for the fact Plaintiffs and those similarly situated were non-exempt employees covered by the FLSA and therefore entitled to minimum wage and overtime.

125.    Plaintiffs and those similarly situated are therefore entitled to the following pursuant to 29 U.S.C. § 216: unpaid minimum wage and overtime, statutory liquidated damages, reasonable attorney's fees, and costs.

126.    As joint employers, Defendants are joint and severally liable to the Plaintiffs and the 216(b) Class.

127.    As joint employers, Defendants are joint and severally liable to Plaintiffs and the 216(b) Colorado Class.

128.    As joint employers, Defendants are joint and severally liable to Plaintiff Ceballos and the 216(b) Tennessee Class.

## COUNT II: VIOLATION OF THE FAIR LABOR STANDARDS ACT ("FLSA"), AS AMENDED BY THE EQUAL PAY ACT ("EPA"), 29 U.S.C. § 206(d)

### (Plaintiff Solis and the 216(b) EPA Class against All Defendants)

129.    Plaintiffs incorporate by reference all previous paragraphs of this Complaint.

130.    Ms. Solis and all Plaintiffs who "opt in" to this action (collectively, the "Female Plaintiffs"), are female and are within the class protected by the EPA.

131.    All Defendants were joint employers of Ms. Solis.  All Defendants shared control of the terms, conditions, and performance of their employment.

132.    All Defendants shared payroll, shared the supervision and management of employees including Ms. Solis, employed joint supervisors and managers, and shared hiring and firing duties.

133.    Defendants have discriminated against Ms. Solis and other female employees within the meaning of the EPA and in violation of the FLSA, by providing them with lower pay than similarly situated male colleagues on the basis of their gender, female, even though Ms.

Solis and all others similarly situated performed similar duties requiring the same skill, effort, and responsibility of male counterparts.

134.   Ms. Solis and similarly situated male employees all perform similar job duties and functions as cleaner/laborers. Ms. Solis and similarly situated males all performed jobs that required equal skill, effort, and responsibility, and are or were performing under similar working conditions.

135.   Defendants discriminated against Ms. Solis by subjecting her to discriminatory pay, discriminatory denial of promotions, and other forms of discrimination in compensation in violation of the EPA.

136.   The differential in pay between male and female employees was not due to seniority, merit, quantity or quality of production, or any factor other than sex.

137.   Defendants caused, attempted to cause, contributed to, or caused the continuation of wage rate discrimination based on gender, in violation of the EPA.

138.   The foregoing conduct constitutes a willful violation of the EPA within the meaning of 29 U.S.C. § 255(a).

139.   As a result of Defendants' conduct as alleged in this Complaint, Ms. Solis has suffered and continues to suffer harm, including but not limited to: lost earnings, lost benefits, and other financial loss, as well as humiliation, embarrassment, emotional and physical distress, and mental anguish.

140.   By reason of Defendants' discrimination, Ms. Solis is entitled to all legal and equitable remedies available for violations of the EPA, including liquidated damages for all willful violations, attorney's fees, costs, and other compensation pursuant to 29 U.S.C. § 216(b).

## COUNT III: VIOLATION OF STATE MINIMUM WAGE, OVERTIME, AND WAGE-PAYMENT LAWS OF THE STATES WHERE THE RULE 23 CLASS WORKED

**(Plaintiffs and Rule 23 Nationwide Class against All Defendants)**

141.     Plaintiffs incorporate by reference all previous paragraphs of this Complaint as if fully re-written herein.

142.     Defendants employed Plaintiffs and the Rule 23 Nationwide Class.

143.     Defendants failed to pay Plaintiffs and the Rule 23 Nationwide Class minimum wage and overtime and failed to pay them for all of the hours they worked.

144.     Plaintiffs and the Nationwide Class seek recovery of these wages and additional damages, costs, and attorney's fees pursuant to the laws of the states in which they worked.

145.     As joint employers, Defendants are joint and severally liable to Plaintiffs and the Rule 23 Nationwide Class.

## COUNT IV:  BREACH OF FIDUCIARY DUTY AND CIVIL THEFT UNDER THE COLORADO TRUST FUND ACT C.R.S. §§ 38-22-127, 184-401, 18-4-405

**(Plaintiffs and Colorado Class against Circle Group, LA Drywall, Javier Martinez Drywall, Gulf Coast Construction)**

146.     Plaintiffs incorporate by reference all previous paragraphs of their Complaint.

147.     Defendants entered into the employment agreements with Plaintiffs and those similarly situated.

148.     Defendants entered into several contracts under which Plaintiffs and those similarly situated were to perform construction services under their employment agreements on real property in Colorado.

149.     Some of these contracts were for construction services on privately owned real property.

150.    Under the employment agreements, Plaintiffs and those similarly situated performed construction services improving privately owned real properties located in Colorado. They were not paid for their work.

151.    Upon information and belief, funds were disbursed to Defendants as payment for labor performed by Plaintiffs and those similarly situated on the improvements.

152.    Defendants failed to hold the disbursed funds in trust for Plaintiffs and those similarly situated, and intended to permanently deprive Plaintiffs and those similarly situated of the disbursed funds or used the disbursed funds in a manner practically certain to deprive Plaintiffs and those similarly situated of the disbursed funds.

153.    Plaintiffs and the Colorado Class are therefore entitled by statute to treble damages, costs, and attorney's fees.

## COUNT V:  FAILURE TO PAY EARNED, VESTED & DETERMINABLE WAGES IN VIOLATION OF THE COLORADO WAGE CLAIM ACT ("CWCA"), C.R.S. § 8-4-109

### (Plaintiffs and Colorado Class against All Defendants)

154.    Plaintiffs incorporate by reference all previous paragraphs of their Complaint.

155.    Defendants were Plaintiffs' "employer" as that term is defined by the CWCA because they employed Plaintiffs in Colorado. C.R.S. § 8-4-101(5).

156.    Plaintiffs were Defendants' employees as that term is defined by the CWCA because they performed labor for the benefit of Defendants in which Defendants commanded when, where, and how much labor or services would be performed. C.R.S. § 8-4-101(4).

157.    The overtime premiums and wages Defendants denied Plaintiffs constitute earned wages or other compensation owed Plaintiffs. C.R.S. § 8-4-109.

158.    None of Plaintiffs continue to work for Defendants.

159.    Plaintiffs are entitled to recover in this civil action the unpaid balance of the full amount of wages they are owed, including overtime premiums, together with penalties and reasonable attorney's fees and court costs.  C.R.S. §§ 8-4-109, 8-4-110, 8-6-118; 7 C.C.R 1103-1(18).  Plaintiffs sent written wage demands for unpaid wages and overtime to Defendants Circle Group, LA Drywall, Inc., Gulf Coast Construction, and Javier Martinez Drywall on June 7, 2016. As of the date of the filing of this First Amended Complaint, none of these Defendants have responded to Plaintiffs' wage demands. C.R.S. § 8-4-109(3).

160.    As joint employers, Defendants are joint and severally liable to Plaintiffs and the Colorado Class.

## COUNT VI: QUANTUM MERUIT UNDER TENNESSEE LAW

### (Plaintiff Ceballos and the Tennessee Class against All Defendants Except Javier Martinez Drywall, Javier Martinez, and Jeffrey Musto)

161.    Plaintiffs incorporate by reference all previous paragraphs of this Complaint.

162.    There was no legally enforceable contract between the parties.

163.    Plaintiff Ceballos and the Tennessee Class provided valuable labor and services to Defendants in Tennessee. Defendants retained the benefits of this labor and these services without compensating Plaintiff Ceballo and the Tennessee Class for the value of this labor and services, which includes hourly wages and overtime premiums required by law for hours worked in excess of 40 hours per week.

164.    Under the circumstances, the parties reasonably understood that Plaintiff Ceballo and the Tennessee Class expected to be paid their legal wages.

165.    It would be unjust for Defendants to retain the benefits of the value of this labor and these services without compensating Plaintiff Ceballo and the Tennessee Class for them.

## COUNT VII: BREACH OF CONTRACT UNDER TENNESSEE LAW

**(Plaintiff Ceballos and the Tennessee Class against All Defendants Except Javier Martinez Drywall, Javier Martinez, and Jeffrey Musto)**

166.    Plaintiffs incorporate by reference all previous paragraphs of this Complaint.

167.    In the alternative to Count VI (Quantum Meruit under Tennessee Law), Plaintiff Ceballos and the Tennessee Class allege that they entered into an implied-in-fact contract, under Tennessee law, with Defendants who employed them in Tennessee.

168.    Pursuant to this agreement, Defendants who employed Plaintiff Ceballos and the Tennessee Class in Tennessee agreed to pay Plaintiffs the wages and overtime premiums to which they were entitled by law.

169.    By failing to pay Plaintiff Ceballos and the Tennessee Class the wages and overtime premiums to which they were entitled by law, these Defendants breached their contract with Plaintiff Ceballos and the Tennessee Class.

## COUNT VIII: DISCRIMINATION ON THE BASIS OF SEX, RACE, NATIONAL ORIGIN, ANCESTRY, AND "SEX PLUS RACE/NATIONAL ORIGIN/ANCESTRY," TITLE VII, 42 U.S.C. § 2000E *ET SEQ.*

**(Plaintiff Solis against Circle Group, LA Drywall, and Gulf Coast Construction)**

170.    Plaintiffs incorporate by reference all previous paragraphs of this Complaint.

171.    Ms. Solis is female and is within the class protected by Title VII.

172.    Ms. Solis is Hispanic and of Mexican national origin and ancestry and is within the class protected by Title VII.

173.    Defendants Circle Group, Gulf Coast Construction, and LA Drywall are each an employer for purposes of Title VII.

174.    Each of these Defendants employed Ms. Solis.

175.    Each of these Defendants shared payroll, shared the supervision and management of employees including Ms. Solis, employed joint supervisors/managers, and shared hiring and firing duties.

176.    Each of these Defendants were joint employers of Ms. Solis. They shared control of the terms, conditions, and performance of her employment.

177.    Each of these Defendants created, condoned, and failed to prevent and correct a hostile work environment for Ms. Solis during her employment, because of her sex.

178.    Each of these Defendants created, condoned, and failed to prevent and correct a hostile work environment for Ms. Solis during her employment, because of her race, national origin, ancestry, and "sex plus" each of these traits.

179.    Each of these Defendants discriminated against each Ms. Solis in the terms and conditions of her employment, including pay, work assignment, opportunities for promotion and training, and exposure to risks of physical harm, because of her sex.

180.    Each of these Defendants discriminated against Ms. Solis in the terms and conditions of her employment, including pay, work assignment, opportunities for promotion and training, and exposure to risks of physical harm, because of her race, national origin, ancestry, and "sex plus" each of these traits.

181.    Each of these Defendants constructively discharged Plaintiff Solis because of her sex.

182.    Each of these Defendants constructively discharged Plaintiff Solis because of her race, national origin, ancestry, and "sex plus" each of these traits.

183.    Creation of a hostile work environment, discrimination in terms and conditions, and constructive discharge are adverse employment actions.

184.    These Defendants did not create a hostile work environment for male employees, did not constructively discharge similarly situated male employees, and treated male employees more favorably than Ms. Solis in the terms and conditions of employment.

185.    These Defendants also did not create a hostile work environment for employees who were not Hispanic/Mexican-born females, did not constructively discharge such employees, and treated such employees more favorably than Ms. Solis in the terms and conditions of employment.

186.    These Defendants' actions described herein were intentional, and taken with malice and with reckless indifference Ms. Solis federally protected rights.

187.    These Defendants failed to take reasonable care to prevent and to correct the unlawful discriminatory practices described herein.

188.    As a direct and proximate cause of these Defendants' discriminatory actions and conduct, Ms. Solis has suffered, and will continue to suffer damages including, but not limited to, loss of salary wages, earnings and benefits; diminution of future earning capacity; loss of accumulated benefits, emotional distress and other compensatory damages in an amount to be determined at trial; punitive damages in an amount to be determined at trial; and attorney's fees and costs.

## DEMAND FOR JURY TRIAL

189.    Plaintiffs demand a trial by jury for all issues so triable.

## PRAYER FOR RELIEF

190.   Plaintiffs respectfully requests an Order from this Court:

    a.   Certifying the FLSA opt-in classes and issuing prompt notice to members of the FLSA classes;

    b.   Certifying the Rule 23 classes and sub-classes, naming the named Plaintiffs class representatives, and naming Plaintiffs' counsel class counsel;

    c.   granting judgment in favor of all Plaintiffs and against all Defendants;

    d.   awarding Plaintiffs and the Rule 23 classes their damages and penalties under state laws;

    e.   awarding Plaintiffs and those similarly situated, unpaid minimum wage, unpaid overtime, and liquidated damages pursuant to the FLSA (29 U.S.C. §§ 201 *et seq.*);

    f.   awarding Plaintiffs and those similarly situated their costs;

    g.   awarding Plaintiffs and those similarly situated their attorney's fees;

    h.   awarding Plaintiffs and members of the classes and sub-classes all appropriate equitable and injunctive relief;

    i.   granting such other relief as this Court deems just and proper;

    j.   injunctive relief prohibiting Defendants from future discriminatory and illegal practices as described herein and requiring Defendants to adopt policies and procedures to eradicate the effects of past discriminatory and illegal practices;

     k.  compensatory damages, including for emotional distress, as allowed by

        law;

     l.  punitive, exemplary, and liquidated damages as allowed by law;

     m.  awarding Plaintiffs and those similarly situated prejudgment and post-

        judgment interest, when allowable by law.

Respectfully Submitted this 22nd day of June, 2016.

*s/ Mary Jo Lowrey*
Mary Jo Lowrey
Sarah J. Parady
1725 High Street, Suite 1
Denver, CO 80218
Phone: 303-593-2595, Fax: 303-502-9119
Email:  sarah@lowrey-parady.com
        maryjo@lowrey-parady.com

*s/Alexander Hood*
Alexander Hood
David Seligman
Towards Justice
Attorney and Director of Litigation
1535 High St., Suite 300
Denver, CO 80218
Tel.: 720-239-2606
Fax: 303-957-2289
Email: alex@towardsjustice.org
        david@towardsjustice.org

*Attorneys for Plaintiffs*