EXHIBIT A

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Case No. 1:16-cv-01329-NYW

VIOLETA SOLIS,
CESAR SALAZAR,
EDGAR CEBALLOS,
AARON SALAS,
HILDEBERTO ALDECO BALTAZAR,
JUAN RAMON RODRIGUEZ,
ADRIANA LIRA,
NANCY GUTIERREZ,
BEATRIZ MIRAMONTES,
and those similarly situated;

      Plaintiffs,

v.

THE CIRCLE GROUP, LLC,
LA DRYWALL, INC.,
L.A.G. DRYWALL, INC.,
JAVIER MARTINEZ DRYWALL, LLC,
JOSE MENDIOLA (AKA "CABALLO"),
JESUS ORNELAS (AKA "CHUY"),
JAVIER MARTINEZ, and
JEFFREY MUSTO;

      Defendants.

---

**SECOND AMENDED
CLASS AND COLLECTIVE ACTION COMPLAINT AND JURY DEMAND**

---

## INTRODUCTORY STATEMENT

1.      This case involves the mistreatment of laborers who install drywall in residential and commercial real estate projects. Many of these projects are chic, visible, and expensive developments in booming cities. For example, in Denver, Plaintiffs and some of the other

workers they seek to represent installed drywall in a large residential real estate project at 1776

Broadway, Denver, Colorado ("SkyHouse Denver"). SkyHouse Denver is one of many other

SkyHouse projects in urban centers around the country. According to one account, SkyHouse

Denver includes the "signature SkyHouse on the top floor of the building [which] includes a club

room, swimming pool, and fitness center. The building is targeting next-generation professionals

who are choosing to live in urban centers close to public transportation, employment centers, and

cultural institutions."

2.      SkyHouse Denver's targeted customers may be "next-generation professionals

who are choosing to live in urban centers," but its targeted drywall workers are low-wage,

immigrant laborers who are harmed by illegal pay and discrimination practices. Defendants

exploit these workers by refusing to pay them for all of the hours they work and, pursuant to an

apparent company-wide policy, refusing to pay them overtime premiums for hours worked in

excess of 40 per week. Because of the high-pressure nature of drywall work, these workers are

frequently required to work far more than 40 hours in a week and often more than 60 hours a

week, and yet none of those excess hours are compensated with overtime premiums. They file

this lawsuit after months of complaining in vain about their missing wages.

3.      Defendants appear to engage in these illegal practices nationwide. In a recent

media account of labor violations at the SkyHouse Denver project, one of the individual

defendants explained that he closely supervised those who working drywall at SkyHouse Denver

but that these workers, including Plaintiffs, were treated as "independent contractors" because

that is how one of the national corporate Defendants in this case has set up its business.

4.      Additionally, at SkyHouse Denver, Defendants exploited their workers by subjecting them to pervasive sex and race discrimination.  Hispanic/Mexican-born female workers were paid less while performing harder and more dangerous work than other employees. Although many drywall workers did not have experience with drywall work before they begin at the SkyHouse Denver location, male workers were given an opportunity to learn to hang and install drywall. Latina workers, on the other hand, were assigned to the role of Cleaner/Laborer, where they were tasked with cleaning, moving, and scraping debris off of the walls and the floors. While at work, they were subjected to catcalls and taunts.

5.      In addition, *all* Hispanic/Mexican-born employees were subjected to pervasive harassment, jokes, and slurs based on their race, ethnicity, and national origin, and were more likely to be underpaid than other workers.  When Plaintiff Solis asked her boss whether her employers would pay her the wages she had earned through her hard work, he laughed and called her a "poor Mexican."

## JURISDICTION AND VENUE

6.      This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1331 (federal question), and supplemental jurisdiction pursuant to 28 U.S.C. § 1367 over Plaintiffs' related claims under state law.

7.      Venue is proper pursuant to 28 U.S.C. § 1391. A substantial part of the events giving rise to Plaintiffs' claims occurred in this District, where SkyHouse Denver is located.

## ADMINISTRATIVE EXHAUSTION

8.      Plaintiff Solis filed Charges of Discrimination with the Equal Employment Opportunity Commission ("EEOC") against Defendants The Circle Group, LLC (Charge No.

541-2016-01845), Gulf Coast Construction, Inc. (Charge No. 541-2016-01848),[1] and LA

Drywall, Inc. (Charge No. 541-2016-01847) on May 31, 2016, alleging discrimination on the

basis of sex, race, national origin, and ancestry, in violation of Title VII, and sex-based

disparities in pay, in violation of the EPA.

      9.      Plaintiff Solis received Notices of Right to Sue from the EEOC on June 21, 2016

on each of her Charges of Discrimination.

      10.      Plaintiff Lira filed Charges of Discrimination with the EEOC against Defendants

The Circle Group, LLC (Charge No. 541-2016-01843), Gulf Coast Construction, Inc. (Charge

No. 541-2016-01844), and Javier Martinez Drywall, Inc. (Charge No. 541-2016-01842) on May

31, 2016, alleging discrimination on the basis of sex, race, national origin, and ancestry, in

violation of Title VII, and sex-based disparities in pay, in violation of the EPA.

      11.      Plaintiff Lira filed an additional Charge of Discrimination with the EEOC against

Defendant LA Drywall, Inc. a/k/a L.A.G. Drywall, Inc. (Charge No. 541-2016-01977) on June

20, 2016, alleging discrimination on the basis of sex, race, national origin, and ancestry, in

violation of Title VII, and sex-based disparities in pay, in violation of the EPA.

      12.      Plaintiff Aldeco Baltazar filed Charges of Discrimination with the EEOC against

Defendants The Circle Group, LLC (Charge No. 541-2016-01983), Gulf Coast Construction, Inc.

(Charge No. 541-2016-01984), and LA Drywall, Inc. a/k/a L.A.G. Drywall, Inc. (Charge No.

---

[1] Gulf Coast Construction, Inc. is not included as a Defendant in this Second Amended
Complaint for the sole reason that it has filed for bankruptcy and all claims against it are subject
to an automatic stay.  Any reference to Gulf Coast Construction, including information regarding
Charges exhausted against Gulf Coast Construction by plaintiffs whose discrimination claims
were not included in Plaintiffs' First Amended Complaint is presented for informational
purposes only.

541-2016-01985) on June 20, 2016, alleging discrimination on the basis of race, national origin, and ancestry, in violation of Title VII.

13.     Plaintiff Salas filed Charges of Discrimination with the EEOC against Defendants The Circle Group, LLC (Charge No. 541-2016-01978), Gulf Coast Construction, Inc. (Charge No. 541-2016-01979), and LA Drywall, Inc. a/k/a L.A.G. Drywall, Inc. (Charge No. 541-2016-01980) on June 20, 2016, alleging discrimination on the basis of race, national origin, and ancestry, in violation of Title VII.

14.     Plaintiffs Lira, Aldeco Baltazar, and Salas received Notices of Right to Sue from the EEOC on June 30, 2016 on each of their Charges of Discrimination.

15.     Plaintiff Rodriguez filed Charges of Discrimination with the EEOC against Defendants The Circle Group, LLC (Charge No. 541-2016-02156) and L.A.G. Drywall, Inc. a/k/a LA Drywall, Inc. (Charge No. 541-2016-02157).

16.     Plaintiff Rodriguez received his Notices of Right to Sue from the EEOC on July 26, 2016.

17.     Plaintiff Gutierrez filed Charges of Discrimination with the EEOC against Defendants The Circle Group, LLC (Charge No. 541-2016-02225) and L.A.G. Drywall, Inc. a/k/a LA Drywall, Inc. (Charge No. 541-2016- 02224).

18.     Plaintiff Miramontes filed Charges of Discrimination with the EEOC against Defendants The Circle Group, LLC (Charge No. 541-2016-02216) and L.A.G. Drywall, Inc. a/k/a LA Drywall, Inc. (Charge No. 541-2016- 02223).

19.     Plaintiffs Gutierrez and Miramontes received their Notices of Right to Sue from the EEOC on August 2, 2016.

5

20.     Plaintiffs Solis, Lira, Aldeco Baltazar, Salas, Rodriguez, Gutierrez and

Miramontes have exhausted all administrative remedies and this action is timely filed.

21.     All of the foregoing Charges were filed on behalf of the Plaintiff Charging Party

and all those similarly situated.

22.     Each Plaintiff in this Complaint is a member of the group of those similarly

situated to Plaintiffs Solis, Lira, Aldeco Baltazar, Salas, Rodriguez, Gutierrez, and/or

Miramontes for purposes of Title VII and/or the EPA.

23.     Accordingly, all Plaintiffs, and all others similarly situated, have exhausted their

administrative remedies and this action is timely filed as a Rule 23 class action on their behalf.

## PLAINTIFFS

24.     At all times material to the allegations of the complaint, Plaintiffs Aaron Salas,

Cesar Salazar, Hildeberto Aldeco Baltazar, Violeta Solis, Juan Ramon Rodriguez, Adriana Lira,

Nancy Gutierrez, and Beatriz Miramontes were domiciled in the District of Colorado. While in

Colorado, these Plaintiffs worked on the SkyHouse Denver project and were employed by

corporate entities that included The Circle Group, LLC (hereinafter "Circle Group"), LA

Drywall, Inc. and L.A.G. Drywall, Inc. (hereinafter collectively "LA Drywall"), and Javier

Martinez Drywall, LLC (hereinafter "Javier Martinez Drywall"), and Gulf Coast Construction,

Inc. (hereinafter "Gulf Coast Construction" or "Gulf Coast"). They were also employed by

individuals including, but not limited to, Jose Mendiola (aka "Caballo" or "Juan"), Jesus Ornelas

(aka "Chuy"), Javier Martinez, and Jeffrey Musto.

25.     In November 2015, Plaintiff Edgar Ceballos was domiciled in Tennessee, where

he performed drywall work as an employee of, among others, Circle Group, LA Drywall, and

Gulf Coast Construction. After leaving Nashville, Plaintiff Ceballos travelled to Denver where he began work on the SkyHouse Denver project as an employee of, among others, Circle Group, LA Drywall, Javier Martinez Drywall, Gulf Coast Construction, Jose Mendiola (aka "Caballo," "Juan"), Jesus Ornelas (aka "Chuy"), Javier Martinez, and Jeffrey Musto.

26.     Plaintiffs have each signed written consent to be named Plaintiffs in a FLSA collective action.  The signed consent forms for Ms. Violeta Solis, Mr. Cesar Salazar, Mr. Edgar Ceballo, Mr. Aaron Salas, Mr. Hildeberto Aldeco Baltazar and Mr. Juan Ramon Rodriguze are filed in this case at ECF Doc. No. 9.  The signed consent forms for Ms. Adriana Lira, Mr. Nancy Gutierrrez and Ms. Beatriz Miramontes are attached as Exhibit 1.

## DEFENDANTS

27.     Defendant Circle Group is a Georgia Limited Liability Company with its principal place of business in Georgia.

28.     Defendant Circle Group is a large, national drywall subcontractor that performs work for residential and commercial development projects around the United States. It installs tens of millions of square feet of drywall per year in projects around the country.

29.     Upon information and belief, Circle Group works with "labor brokers" to recruit employees and to transport these employees around the United States to perform work related to the installation of drywall. These "labor brokers" are middlemen or intermediaries that facilitate connections between employees and Circle Group and help Circle Group supervise employees on job sites.

30.     Defendant LA Drywall, Inc. is a Florida for Profit Corporation with its principal place of business in Florida. LA Drywall, Inc. is one of the labor brokers that frequently works

with Circle Group to recruit, transport, and supervise employees. LA Drywall, Inc.'s primary function is recruiting and supervising drywall labor.

31.      Defendant L.A.G. Drywall, Inc. is a Florida for Profit Corporation with its principal place of business in Georgia.  L.A.G. Drywall, Inc. is one of the labor brokers that frequently works with Circle Group to recruit, transport, and supervise employees.  L.A.G. Drywall, Inc.'s primary function is recruiting and supervising drywall labor.

32.      Defendants LA Drywall, Inc. and L.A.G. Drywall, Inc. are alter egos of one another with shared ownership and management. They will be collectively referred to herein as "LA Drywall."

33.      Javier Martinez Drywall, LLC (hereinafter "Javier Martinez Drywall") is a Colorado Limited Liability Company with its principal place of business in Colorado. It is one of Circle Group's labor brokers. Javier Martinez Drywall's primary function is recruiting and supervising drywall labor.

34.      Jose Mendiola, sometimes called "Caballo" and sometimes called "Juan," helped Circle Group to recruit and supervise laborers working on drywall at the SkyHouse Denver project. He is an agent of LA Drywall and/or L.A.G. Drywall.

35.      Jesus Ornelas, sometimes called "Chuy," helped Circle Group to recruit and supervise laborers working on drywall at the SkyHouse Denver project. He is an agent of LA Drywall and/or L.A.G. Drywall.

36.      In this Complaint, Defendants Mendiola and Ornelas are sometimes referred to as "agents of LA Drywall."

37.     Javier Martinez helped Circle Group to recruit and supervise laborers working on drywall at the SkyHouse Denver project. He is an agent of Javier Martinez Drywall.

38.     Jeffrey Musto was employed by Circle Group and helped Circle Group to recruit and supervise laborers working on drywall at the SkyHouse Denver project.  He is an agent of Circle Group.

39.     In this Complaint, Defendants Ornelas, Mendiola, Martinez and Musto are sometimes referred to as the "Individual Defendants."

## STATEMENT OF FACTS SUPPORTING PLAINTIFFS' WAGE-AND-HOUR CLAIMS

**A.  SkyHouse Denver Project: Plaintiffs were employed by Circle Group, LA Drywall, Javier Martinez Drywall, Gulf Coast Construction, Jose Mendiola, Jesus Ornelas, Javier Martinez, and Jeffrey Musto.**

40.     In the period between September 2015 and the present, each Plaintiff entered into an employment relationship with Circle Group, LA Drywall, Javier Martinez Drywall, Gulf Coast Construction, Jose Mendiola, Jesus Ornelas, Javier Martinez, and Jeffrey Musto to provide drywall labor at the SkyHouse Denver project.

41.     All Plaintiffs, except Ms. Lira, were recruited and hired by LA Drywall and its agents for the purpose of working on Circle Group's contract at the SkyHouse Denver site.

42.     Ms. Lira was instead recruited and hired by Javier Martinez Drywall and its agents.

43.     The role and functions of Javier Martinez Drywall at the SkyHouse Denver site considerably overlapped with the role and functions of LA Drywall. After she was recruited to work at the SkyHouse site, Ms. Lira was "switched" from Javier Martinez Drywall to LA Drywall. This formal change did not alter her day-to-day employment.

44.     Plaintiff Ceballos and other members of the putative Colorado Class were recruited by LA Drywall to travel to Denver to perform drywall labor on the SkyHouse Denver project.

45.     Plaintiffs' work involved various aspects of the drywall mounting process. This work included drywall, framing, and clean-up work related to drywall installation.

46.     While working on the SkyHouse Denver site, Plaintiffs were managed and supervised by agents of LA Drywall, Javier Martinez Drywall, and Circle Group, including the Individual Defendants.

47.     Circle Group, LA Drywall, and Javier Martinez Drywall agents together told Plaintiffs when they needed to arrive at work and when they could leave work each day. Plaintiffs were not free to come and go as they pleased.

48.     Each day Plaintiffs reported to work, they signed in on sheets provided by LA Drywall, Javier Martinez Drywall, and Circle Group.

49.     On some occasions, when Plaintiffs arrived at the worksite, they walked past a Circle Group agent (typically Defendant Musto) sitting behind two different time sheets. One time sheet was for workers whom Circle Group designated as working for LA Drywall. The other time sheet designated sign-in times for workers whom Circle Group designated as working for Circle Group. In the mornings, the Circle Group agent would decide whether Plaintiffs and others similarly situated should sign in on the Circle Group timesheet or the LA Drywall timesheet. Plaintiffs and others similarly situated did not know how the Circle Group agent assigned Plaintiffs to one time sheet as opposed to another.

50.     On other occasions, Plaintiffs and others similarly situated signed time sheets for both LA Drywall and Circle Group on the same day.

51.     Circle Group, LA Drywall, and Javier Martinez agents including the Individual Defendants jointly supervised Plaintiffs' day-to-day work, including by telling Plaintiffs what floor to work on and what their responsibilities were for any given day.

52.     The work Plaintiffs performed for Circle Group, LA Drywall, and Javier Martinez Drywall was integral to the businesses of Circle Group, LA Drywall, and Javier Martinez Drywall because the principal purpose of these businesses is the installation of drywall, which cannot be done without drywall installers like the Plaintiffs.

53.     Plaintiffs did not exercise any managerial control that affected an opportunity for profit or loss. Plaintiffs reported to work when Circle Group, LA Drywall, and Javier Martinez Drywall (and their agents including the Individual Defendants) told them to report to work, and they left work when Circle Group, LA Drywall, and Javier Martinez told them they could leave work.

54.     Jeff Musto of Circle Group has said that he was the "superintendent" of drywall work at SkyHouse. He also explained: "I'm the man who makes the final decisions. I direct everyone in my scope of work what they need to do."

55.     He has also said that most of the directions workers received "came from [his] mouth."

56.     Many Plaintiffs did not have significant experience working in drywall before beginning their work on the SkyHouse Denver project, and some Plaintiffs did not have ***any*** drywall experience before starting work on the SkyHouse Denver project.

57.     Although they were insufficient to allow for safe and effective work, most of the tools and equipment for Plaintiffs' work on the SkyHouse Denver project were, in large part, provided by Circle Group, LA Drywall, and Javier Martinez Drywall.

58.     Plaintiffs and others similarly situated complained about their wages on multiple occassions to the agents of Circle Group and LA Drywall, including Defendants Musto, Ornelas, and Mendiola. Agents of Circle Group and LA Drywall were aware that Plaintiffs were not being paid their legal wages but continued to make assurances that they would receive their legal wages while frequently becoming angry and dismissive about Plaintiffs' complaints.

59.     Circle Group, LA Drywall, and their agents reduced the wages of Plaintiffs and others similarly situated in response to their complaints about Defendants' failure to pay legal wages.

60.     When Plaintiffs received wages for their work on the SkyHouse Denver project, those wages came in the form of checks from Gulf Coast Construction.

61.     Some Plaintiffs, including Plaintiff Solis and Plaintiff Lira, received some pay checks from Gulf Coast Construction bearing the signature of a Vice President of Defendant L.A.G. Drywall.

**B.  SkyHouse Nashville Project: Plaintiff Ceballos and others similarly situated were employed by Circle Group, LA Drywall, and Gulf Coast Construction.**

62.     In 2015, Plaintiff Ceballos entered into an employment relationship with Circle Group, LA Drywall, and Gulf Coast Construction to provide drywall labor on a large development project in Nashville.

63.     LA Drywall recruited Plaintiff Ceballos for the Nashville project through Ceballos's family member.

64.     Before, during, and after his work in Nashville, Defendants suggested to Plaintiff Ceballos that he would receive legal wages.

65.     During his work in Nashville, Plaintiff Ceballos was supervised by Circle Group and LA Drywall, which provided drywall labor for the SkyHouse Nashville project. Circle Group instructed him where and when to show up and what tasks to perform each day.

66.     During his work in Nashville, Plaintiff Ceballos did not have control over his hours or his work. He was dependent on Circle Group and LA Drywall for his assignments, instructions, and pay.

67.     Circle Group and LA Drywall closely and directly supervised Plaintiff Ceballos's work in Nashville.

68.     After he completed his work in Nashville, LA Drywall and Circle Group told Plaintiff Ceballos that he could report to Denver for more work.

69.     Plaintiff Ceballos was not paid for all hours worked in Tennessee and was not paid any overtime premiums for hours worked over 40.

70.     For example, during the week ending on November 20, 2015, Plaintiff Ceballos worked approximately 56 hours, but was paid for only 45 hours of work.  Moreover, he was paid entirely at straight pay, with no overtime premium for hours worked over 40.

71.     When Plaintiff had not received all of his wages for his work in Tennessee, he was told he should complain to LA Drywall and its agents.

72.     He complained to Defendants Mendiola and Ornelas, but he was never paid all of his legal wages.

73.     When Plaintiff Ceballos received wages for his work on the Nashville project those wages came in the form of a check from Gulf Coast Construction.

**C. Defendants' Failure to Pay for All Hours Worked & Failure to Pay Overtime for Hours Worked in Excess of 40 Hours Per Week**

74.     In the course of their work for Defendants in both Colorado and Tennessee, Plaintiffs frequently worked more than 40 hours per week, sometimes far in excess of 40 hours per week.  Plaintiffs worked at least 6 days per week and often worked 7 days per week for long hours each day.

75.     No matter how many hours they worked, Plaintiffs were never paid overtime premiums for hours worked in excess of 40 hours per week. When they were paid for their work, they were paid the same wage for every hour they worked during the week.

76.     Plaintiffs were also frequently denied pay entirely for some of the hours they worked.

77.     As one example, during the week ending on October 25, 2015, Plaintiff Solis worked 56 hours but was paid for only 46 hours of work.  During this same week, Plaintiff Solis was not paid *any* overtime pay.  Instead, she was paid at straight pay for all hours worked.

78.     As another example, during the week ending on October 25, 2015, Plaintiff Salazar worked 64 hours but was paid for only 59 hours of work.  During this same week, Plaintiff Salazar was not paid *any* overtime pay.  Instead, he was paid at straight pay for all hours worked.

79.     As another example, during the week ending on January 8, 2016, Plaintiff Ceballos worked 58 hours but was paid for only 35 hours of work.  Of course, Plaintiff Ceballos

received no overtime pay for his hours worked over 40, because he was not paid for these hours at all.

80.    As another example, during the week ending on October 25, 2015, Plaintiff Salas worked for 56 hours but was paid for only 46 hours of work at straight pay, and was not paid time and a half for any hours worked over 40.   Plaintiff Salas was routinely underpaid by 10 hours for work performed during the course of a week on the SkyHouse Denver project.

81.    As another example, for the week ending on October 11, 2015, Plaintiff Aldeco Baltazar worked 56 hours but was paid for only 30 hours.  Similarly, during the week ending on September 27, 2015, Plaintiff Aldeco Baltazar worked for 56 hours, but was paid for only 48 hours of work at straight pay and was not paid time and a half for any hours worked over 40.

82.    As another example, for the week ending on October 3, 2015, Plaintiff Rodriguez was paid short 10 hours and was paid only at straight pay despite working 57 hours.

83.    As another example, Plaintiff Lira worked 64 hours per week one week, but was only paid for 44 hours of work.  During the week ending on February 19, 2016, she was paid for 44 hours of work at straight pay but was not paid time and a half for any hours worked over 40.

84.    As another example, for the week ending on February 26, 2016, Plaintiff Gutierrez worked at least 60 hours, but was paid for only 48 hours of work at straight pay and was not paid time and a half for any hours worked over 40.

85.    As another example, for the week ending on February 5, 2016, Plaintiff Miramontes worked at least 58 hours, but was paid for only 45 hours of work at straight pay and was not paid time and a half for any hours worked over 40.

86.     Defendant Musto has stated publicly that the drywall workers at SkyHouse who were also employed by LA Drywall, including all of the Plaintiffs, were treated as independent contractors and not as employees because "[t]hat's the way their business is set up."

87.     Defendant Musto has admitted that drywall workers did not always get paid for all hours worked at the SkyHouse Denver project, stating that he "went back" and paid workers for some missed hours himself.

88.     When Plaintiffs complained to Circle Group, LA Drywall, and Javier Martinez Drywall about their failure to pay wages, Circle Group, LA Drywall, and Javier Martinez Drywall repeatedly informed Plaintiffs that they would receive pay soon. In many cases, however, Plaintiffs did not receive their pay. And when they did receive wages, they never received overtime wages for hours worked in excess of 40 hours per week.

89.     On at least one occasion, Defendant Ornelas, an LA Drywall agent, informed Plaintiff Salazar that "they" had 1000 employees and "only one person doing payroll." Therefore, Ornelas explained, Plaintiff would have to be patient but would ultimately receive his wages. Plaintiff never received all of his wages and never received *any* overtime pay notwithstanding that he frequently worked more than 40 hours per week.

90.     Defendant Ornelas seems to have been referring to Circle Group's payroll practices.

**D.  Defendants' Businesses**

91.     Defendants each have an annual revenue of more than $500,000 per year and collectively were an enterprise with annual revenue of more than $500,000 per year.

16

92.     During their work for Defendants, Plaintiffs' work involved interstate commerce. Plaintiffs handled goods, tools, and materials transmitted in interstate commerce, and worked with employees who had moved for the purpose of working for Defendants or had themselves moved to work for Defendants.

93.     Defendants' operations are highly interrelated, because Defendants work together on multiple construction projects around the U.S., for which they jointly recruit and supervise employees to perform drywall services (Defendants' primary business). Defendants' control of labor relations is centralized, with payroll for all employees of Defendants coming from Gulf Coast Construction. Defendants share common managers who jointly supervise the work of employees and who direct that work on behalf of all Defendants interchangeably.

94.     Defendants are joint employers of all Plaintiffs, except that Defendant Javier Martinez Drywall, Defendant Javier Martinez and Defendant Jeffrey Musto are not joint employers of Plaintiffs or class members working outside Colorado. Each Defendant had a major role in controlling Plaintiffs' work on a day-to-day basis, including hiring, work assignments, provision of housing, tools, safety training, and transportation, direction of work through supervisors, and decisions about how many of Plaintiffs' hours of work would be compensated and how and when Plaintiffs would be paid.

**E.  Defendants Knew or Should Have Known That Plaintiffs Were Entitled to Minimum Wage, Overtime, and Pay for all of the Hours they Worked**

95.     Defendants knew or should have known that Plaintiffs were entitled to minimum wage, overtime, and pay for all of the hours they worked.

17

96.     Plaintiffs were subject to the daily and direct supervision and control of Defendants. But Plaintiffs did not receive pay for all of the hours they worked and never received overtime pay.

97.     Several Plaintiffs and putative class members complained to Defendants about the underpayment of wages. Notwithstanding these complaints, Defendants continued to deny Plaintiffs and putative class members pay for all of the hours they worked and, as a routine policy, denied Plaintiffs overtime pay for hours worked in excess of 40 hours per week.

98.     Plaintiffs Solis, Salazar, Ceballos, Salas, Baltazar, and Rodriguez, along with others similarly situated, each complained to Defendants about their missed pay.

99.     In addition, Defendants' intentional failure to pay overtime is demonstrated by the scheme they utilized to avoid paying overtime hours.

100.     Pursuant to this scheme, Defendants arbitrarily split Plaintiffs' hours and the hours of others similarly situated between Circle Group and one of the other entity Defendants, so that the Plaintiff's pay stub did not reflect more than 40 hours worked for either entity.

101.     Instead, Plaintiffs' pay stubs would reflect less than 40 worked for Defendant Circle Group and, on a separate line, less than 40 hours worked for another Defendant, all paid at straight pay.

102.     Defendants did this in an intentional attempt to avoid paying overtime.

103.     When they did this, Defendants knew that Plaintiffs were in fact working for all of them as joint employers and were not working two separate jobs, and also knew that they owed Plaintiffs overtime pay for all hours worked over 40 regardless of which Defendant the hours were arbitrarily assigned to.

18

**F. Defendants Retaliated Against Plaintiffs and Others Similarly Situated for Their Complaints About Missing Wages.**

104.    On some occasions Defendants even punished Plaintiffs or others similarly situated who complained about not receiving wages by paying those workers less.

105.    Defendants lowered the pay rate of all of the female Cleaner/Laborer employees including Plaintiffs Lira, Gutierrez and Miramontes after a similarly situated female employee named Leslie Rivera complained about their unpaid wages in early 2016.

106.    Defendants also terminated the employment of some Plaintiffs and others similarly situated when they complained about not receiving wages.

107.    In or around late October of 2015, Defendant Musto, acting as an agent of Defendant Circle Group, terminated Plaintiff Salazar's employment because of his complaints about unpaid wages.

108.    That day, Defendant Musto approach Plaintiff Salazar as he worked and began yelling at Salazar.

109.    Plaintiff Salazar defended himself by telling Defendant Musto, "You guys don't even pay me."

110.    Salazar had previously complained to Musto about his lost wages on multiple occasions.

111.    After Plaintiff Salazar made this comment, Defendant Musto grabbed a tool he was using and threw it down the hall, while cursing at Plaintiff Salazar and threatening to kick and beat him.

112.    Defendant Musto then told Plaintiff Salazar, "Get the fuck out of here."

113.    Plaintiff Salazar's employment was terminated and he did not return to work after this day.

114.    Plaintiff Rodriguez was constructively discharged by Defendants in retaliation for his wage complaints.

115.    In about February of 2016, Plaintiff Rodriguez told Defendant Musto that he was leaving because they owed him a lot of money and had reduced his hourly rate.

116.    Defendant Musto exploded, screaming at Plaintiff Rodriguez that he would call the police and immigration about him, and violently pushed Plaintiff Rodriguez.

117.    Defendants also terminated the employment of a worker named Alejandro [Last Name Unknown] after he complained about missing wages.

118.    Defendants also terminated the employment of a worker named Felipe [Last Name Unknown] after he complained about missing wages.

**STATEMENT OF FACTS SUPPORTING PLAINTIFFS' DISCRIMINATION CLAIMS**

119.    Plaintiffs Solis, Lira, Gutierrez and Miramontes (collectively the "Female Named Plaintiffs") worked as Cleaner/Laborers for Defendants at SkyHouse Denver.

120.    The Female Named Plaintiffs are Hispanic women of Mexican national origin and ancestry.

121.    The Female Named Plaintiffs and other female workers were assigned to "Cleaner/Laborer" positions when they applied for work, and were not given the opportunity to work as Drywallers.

122.    Plaintiff Solis was hired by Defendant Ornelas.

123.     Plaintiff Lira was hired by Defendant Javier Martinez but later worked for Defendant Mendiola.

124.     Plaintiffs Gutierrez and Miramontes were hired by Defendant Mendiola.

125.     Initially, Plaintiff Lira received pay checks from Defendant Javier Martinez Drywall, but then began to receive pay checks from Gulf Coast Construction. Plaintiffs Solis, Gutierrez and Miramontes received pay checks from Gulf Coast Construction.

126.     Plaintiff Lira was promised by Defendants that she would be trained to use a screw gun and eventually work as a Drywaller.  However, she was quickly assigned to work as a Cleaner/Laborer, and was never trained to use a screw gun or become a Drywaller.

127.     Plaintiffs Solis, Gutierrez and Miramontes were assigned to work as Cleaner/Laborers and never given the option to work as Drywallers even though they would have preferred that assignment.

128.     Upon information and belief, no women worked as Drywallers at SkyHouse Denver project, because Defendants refused to hire women to work as Drywallers.

129.     Male employees without drywall experience were hired by Defendants to work as Drywallers at SkyHouse Denver project.

130.     The Female Named Plaintiffs were supervised by Defendant Jeffrey Musto, Rhonda (last name unknown), and Chre Houston. Sometimes, they were supervised by Defendants Martinez, Ornelas, or Mendiola and by a man named Stuart (last name unknown). Upon information and belief, Defendant Musto, Rhonda, Ms. Houston, and Stuart were employed by Defendant Circle Group.

131.     The Female Named Plaintiffs received paychecks from Gulf Coast Construction.

132.    Cleaner/Laborer employees including the Female Named Plaintiffs were paid less than Drywallers.

133.    Working as a Cleaner/Laborer was heavier, more physically demanding work than working as a Drywaller. Cleaner/Laborers had to lift heavy pieces of drywall and other debris and make constant trips to throw the debris into the dumpster. They also had to scrape debris off the floor.

134.    Defendant Musto told the Female Named Plaintiffs and other employees that women were better at hard work than men, and that was why he assigned women to Cleaner/Laborer positions, which he felt were the best place for women.

135.    Although most Cleaner/Laborers were female, a handful of men were assigned to work as Cleaner/Laborers as well.

136.    These men had identical duties to the Female Named Plaintiffs.

137.    Upon information and belief, these men would have been allowed to work as Drywallers if they chose.

138.    Upon information and belief, male Cleaner/Laborers were paid more per hour and were paid their correct wages more often than the Female Named Plaintiffs.

139.    Upon information and belief, white female Cleaner/Laborers were paid more per hour and were paid their correct wages more often than the Female Named Plaintiffs.

140.    The Female Named Plaintiffs were also harassed based on their sex and because they are Hispanic/Mexican-born women.

141.    In a meeting of all employees working on drywall (including Drywallers, Cleaner/Laborers, and supervisors), a supervisor named Stuart (last name unknown) said that based on his religion, women shouldn't be working in construction.

142.    Plaintiff Gutierrez spoke up in the meeting and said that this comment was discriminatory against women, but nothing was done in response to her complaint.

143.    Defendant Musto said in another meeting that he thought Cleaner/Laborer positions were the best place for women because women were better at hard labor than men.

144.    The Female Named Plaintiffs and other female workers were catcalled and asked on dates by men at SkyHouse Denver project.

145.    Defendant Mendiola attempted to date Plaintiff Gutierrez and sent her unwanted text messages, which made her very uncomfortable.  Plaintiff Gutierrez is married.

146.    A male coworker made sexual comments to Plaintiff Gutierrez including "que mamacita" and "a mi me vale verga."

147.    Plaintiff Gutierrez complained to the safety manger, Roberto (last name unknown).

148.    After she complained, the coworker who was the subject of Plaintiff Gutierrez's complaint approached her and angrily asked why she complained about him.

149.    Nothing else was done about Plaintiff Gutierrez's complaint.

150.    Defendant Musto mocked Plaintiff Solis for being a "poor Mexican" when she demanded wages owed to her.

151.    Defendant Musto frequently had angry and violent outbursts towards Hispanic/Mexican-born workers.

152.     Ms. Houston often called Hispanic/Mexican-born workers "stupid," "mensa," "tonto," or "donkeys," yelled at them, and made fun of them for not speaking English.

153.     Plaintiffs Lira, Gutierrez and Miramontes ultimately left their employment because of this treatment combined with the nonpayment of wages owed to them.

154.     Plaintiffs Salazar, Ceballos, Salas, Aldeco Baltazar, and Rodriguez (collectively the "Male Named Plaintiffs") worked as Drywallers for Defendants at SkyHouse Denver.

155.     The Male Named Plaintiffs are Hispanic men of Mexican national origin and ancestry.

156.     Plaintiff Salazar and Salas were hired by Defendants Ornelas and Musto.

157.     Plaintiff Ceballos was hired by Defendant Mendiola.

158.     Plaintiff Aldeco Baltazar was hired by Defendant Ornelas.

159.     The Male Named Plaintiffs were supervised by Defendants Musto, Ornelas, and Mendiola.

160.     Plaintiff Rodriguez was also sometimes supervised by a man named Yardel.

161.     The Male Named Plaintiffs received paychecks from Gulf Coast Construction.

162.     Upon information and belief, non-Hispanic, non-Mexican Drywallers were paid more per hour and were paid their correct wages more often than the Male Named Plaintiffs.

163.     The Male Named Plaintiffs were also harassed based on their race, national origin, and ancestry.

164.     Defendant Musto frequently lost his temper and screamed loudly at the Male Named Plaintiffs and other Hispanic or Mexican workers.

165.   Defendant Musto threatened to "kick and beat" Plaintiff Salazar and threw a tool he had been using across the room.

166.   Defendant Musto failed to pick Plaintiff Salazar up for work on certain days.

167.   Defendant Musto called Latino workers names like "stupid," "idiot," "pinche," and "pendejo," and said that Mexicans are lazy and don't know how to work hard.

168.   Defendant Musto made racial jokes about Mexicans directed at the Male Named Plaintiffs and other Mexican workers.

169.   These jokes were offensive and unwelcome.

170.   Plaintiff Salazar was terminated by Defendant Musto as the culmination of the hostile work environment he created.

171.   The remaining Male Named Plaintiffs ultimately left their employment because of this treatment combined with the nonpayment of wages owed to them.

### 29 U.S.C. § 216(b) COLLECTIVE ACTION ALLEGATIONS

172.   Plaintiffs incorporate by reference all previous paragraphs of this Complaint as if fully re-written herein.

173.    Plaintiffs bring their FLSA claim for unpaid wages and overtime (Count I) as a collective action, pursuant to 29 U.S.C. § 216(b), on behalf of themselves and on behalf of all other similarly situated current and former employees of Defendants.

174.   Pending any modifications necessitated by discovery, Plaintiffs preliminarily define the "216(b) Class" as follows:

> ALL CURRENT AND FORMER EMPLOYEES OF CIRCLE
> GROUP OR LA DRYWALLWHO PERFORMED DRYWALL,
> CLEANING, OR LABOR WORK

25

175.     Pending any modifications necessitated by discovery, Plaintiffs preliminarily define the "216(b) Colorado Class" as follows:

> ALL CURRENT AND FORMER EMPLOYEES OF CIRCLE GROUP, LA DRYWALL, OR JAVIER MARTINEZ DRYWALL WHO PERFORMED DRYWALL, CLEANING, OR LABOR WORK IN COLORADO

176.     Pending any modifications necessitated by discovery, Plaintiffs preliminarily define the "216(b) Tennessee Class" as follows:

> ALL CURRENT AND FORMER EMPLOYEES OF CIRCLE GROUP OR LA DRYWALL WHO PERFORMED DRYWALL, CLEANING, OR LABOR WORK IN TENNESSEE

177.     All potential FLSA Class Members are similarly situated because, among other things, they were all hourly employees of Defendants and the members of the Sub-Classes were additionally all employed by Defendants. Moreover, all members of the Class and Sub-Classes suffered from the same policies of Defendants, including:

a.   failing to pay overtime premiums;

b.   failing to compensate employees for all of the time they worked; and

c.   failing to pay class members at least statutory minimum wage on each pay day as mandated by the FLSA.

178.     The Female Named Plaintiffs bring their Claim for Relief under the Fair Labor Standards Act and Equal Pay Act (Count II) as a collective action, pursuant to 29 U.S.C. § 216(b), on behalf of herself and on behalf of all similarly situated employees currently and formerly employed by Defendants. Pending any modifications necessitated by discovery, Plaintiff preliminarily defines this "216(b) EPA Class" as follows:

> ALL FEMALE WORKERS EMPLOYED BY DEFENDANTS
> AS HOURLY EMPLOYEES AT THE SKYHOUSE DENVER
> SITE

179.   All potential 216(b) EPA Class Members are similarly situated because they

worked for Defendants as hourly employees and are or were subject to Defendants' common

policy of paying female workers less than male workers for the same work.

180.   Plaintiffs bring their FLSA claim for retaliation (Count XI) as a collective action,

pursuant to 29 U.S.C. § 216(b), on behalf of themselves and on behalf of all other similarly

situated current and former employees of Defendants.  Pending any modifications necessitated

by discovery, Plaintiff preliminarily defines this "216(b) Retaliation Class" as follows:

> ALL CURRENT AND FORMER EMPLOYEES OF CIRCLE GROUP, LA
> DRYWALL, OR JAVIER MARTINEZ DRYWALL WHO PERFORMED
> DRYWALL, CLEANING, OR LABOR WORK ON THE SKYHOUSE DENVER
> CONSTRUCTION PROJECT

181.   All potential 216(b) Retaliation Class Members are similarly situated because

they worked for Defendants as hourly employees and are or were subject to Defendants'

common policy of retaliating against workers who complained about lost pay and those

associated with them, including by further reducing their pay.

## **RULE 23 WAGE AND HOUR CLASS ALLEGATIONS**

182.   Plaintiffs incorporate by reference all previous paragraphs of this Complaint as if

fully rewritten herein.

183.   Plaintiffs assert their Counts III-VII as a Fed R. Civ P. 23 class action on their

own behalf and on behalf of classes for which they seek certification.

184.   Pending any modifications necessitated by discovery, Plaintiffs preliminarily

define a class (the "Rule 23 Nationwide Class") as follows:

> ALL CURRENT AND FORMER EMPLOYEES OF CIRCLE
> GROUP OR LA DRYWALL WHO PERFORMED DRYWALL,
> CLEANING, OR LABOR WORK

185.    Pending any modifications necessitated by discovery, Plaintiffs preliminarily

define a sub-class (the "Colorado Class") as follows:

> ALL CURRENT AND FORMER EMPLOYEES OF CIRCLE
> GROUP, LA DRYWALL, OR JAVIER MARTINEZ DRYWALL
> WHO PERFORMED DRYWALL, CLEANING, OR LABOR
> WORK IN COLORADO

186.    Pending any modifications necessitated by discovery, Plaintiffs preliminarily

define a sub-class (the "Tennessee Class") as follows:

> ALL CURRENT AND FORMER EMPLOYEES OF CIRCLE
> GROUP OR LA DRYWALL WHO PERFORMED DRYWALL,
> CLEANING, OR LABOR WORK IN TENNESSEE

187.    Plaintiffs bring their CWCA claim for retaliation (Count XI) as a class action, on

behalf of themselves and on behalf of all other similarly situated current and former employees

of Defendants.  Pending any modifications necessitated by discovery, Plaintiff preliminarily

defines this "Rule 23 Retaliation Class" as follows:

> ALL CURRENT AND FORMER EMPLOYEES OF CIRCLE GROUP, LA
> DRYWALL, OR JAVIER MARTINEZ DRYWALL WHO PERFORMED
> DRYWALL, CLEANING, OR LABOR WORK ON THE SKYHOUSE DENVER
> CONSTRUCTION PROJECT

188.    All potential 216(b) Retaliation Class Members are similarly situated because

they worked for Defendants as hourly employees and are or were subject to Defendants'

common policy of retaliating against workers who complained about lost pay and those

associated with them, including by further reducing their pay.

189.    The classes are so numerous that joinder of all potential class members is impracticable.  Plaintiffs do not know the exact size of the classes because that information is within the control of Defendants. However, Plaintiffs estimate that the Rule 23 Nationwide Class includes over 1,000 members because of statements made by Defendants' agents to Plaintiffs and frequent turnover of drywall, cleaning, and labor employees.

190.    The sub-classes make up a subset of these Plaintiffs. Based on Plaintiffs' experiences, the Colorado Class and Rule 23 Retaliation Class include at least 50 members and the Tennessee Class includes at least 50 members. The exact size of the classes should be easily ascertainable from Defendants' records.

191.    There are questions of law or fact common to the classes that predominate over any individual issues that might exist. Common questions of law and fact include: Defendants' pay practices; Defendants' failure to pay employees for some of their work; Defendants' failure to pay employees overtime wages for hours worked in excess of 40 hours per week.

192.    The class claims asserted by Plaintiffs are typical of the claims of all of the potential Class Members because Plaintiffs experienced the same or similar working conditions and pay practices as the Defendants' other employees. A class action is superior to other available methods for the fair and efficient adjudication of this controversy because numerous identical lawsuits alleging similar or identical causes of action would not serve the interests of judicial economy. This is especially true in the case of low-wage immigrant construction workers, like the class members here, who do not have experience with the American legal system, and are unlikely to seek, or be able to retain, legal representation on their own.

193.     Plaintiffs will fairly and adequately protect and represent the interests of the class. They were Defendants' employees and were victims of the same violations of law as the other class members, including numerous violations of federal and state wage-and-hour laws.

194.     Plaintiffs are represented by counsel experienced in litigation on behalf of low-wage workers and in wage-and-hour class actions.

195.     The prosecution of separate actions by the individual putative class members would create a risk of inconsistent or varying adjudications with respect to individual potential class members that would establish incompatible standards of conduct for Defendants.

196.     Each Class Member's claim is relatively small. Thus, the interest of potential Class Members in individually controlling the prosecution or defense of separate actions is slight. In addition, public policy supports the broad remedial purposes of class actions in general and that the pertinent state laws are appropriate vehicles to vindicate the rights of those employees with small claims as part of the larger class.

197.     Plaintiffs are unaware of any members of the putative classes who are interested in presenting their claims in a separate action.

198.     Plaintiffs are unaware of any pending litigation commenced by putative class members.

199.     It is desirable to concentrate this litigation in this forum because some of the employment contracts at issue were entered into in this jurisdiction and many Plaintiffs are domiciled in this jurisdiction.

200.    This class action will not be difficult to manage due to the uniformity of claims

among putative class members and the susceptibility of wage claims to both class litigation and

the use of representative testimony and representative documentary evidence.

201.    The contours of the class will be easily defined by reference to the payroll

documents Defendants were legally required to create and maintain. 29 C.F.R. § 516, *et seq.*

**RULE 23 DISCRIMINATION CLASS ALLEGATIONS**

202.    Plaintiffs incorporate by reference all previous paragraphs of this Complaint as if

fully rewritten herein.

203.    Plaintiffs assert their Counts VIII-X as a Fed R. Civ P. 23 class action on their

own behalf and on behalf of classes for which they seek certification.

204.    Pending any modifications necessitated by discovery, Plaintiffs preliminarily

define a class (the "Colorado Discrimination Class") as follows:

> ALL CURRENT AND FORMER EMPLOYEES OF CIRCLE
> GROUP, LA DRYWALL, OR JAVIER MARTINEZ DRYWALL
> WHO PERFORMED DRYWALL, CLEANING, OR LABOR
> WORK IN COLORADO

205.    The class is so numerous that joinder of all potential class members is

impracticable.  Plaintiffs do not know the exact size of the class because that information is

within the control of Defendants. However, Plaintiffs estimate that the Colorado Discrimination

Class includes at least 50 members. The exact size of the class should be easily ascertainable

from Defendants' records.

206.    There are questions of law or fact common to the class that predominate over any

individual issues that might exist. Common questions of law and fact include: Defendants' policy

and practice of refusing to hire women as drywallers; Defendants' practice of harassing

Mexican-born, Hispanic, and female workers based on their race, national origin, ancestry, sex, and "sex plus" these traits; Defendants' policy and practice of paying female employees less pay for the same work and assigning them to Cleaner/Laborer positions; Defendants' policy and practice of paying female workers less than male workers; Defendants' policy and practice of paying female Hispanic/Mexican-born workers less than other workers; and Defendants' policy and practice of paying Hispanic/Mexican-born workers less than other workers.

207.    The class claims asserted by Plaintiffs are typical of the claims of all of the potential Class Members because Plaintiffs experienced the same or similar working conditions and pay practices as the Defendants' other employees. A class action is superior to other available methods for the fair and efficient adjudication of this controversy because numerous identical lawsuits alleging similar or identical causes of action would not serve the interests of judicial economy. This is especially true in the case of low-wage immigrant construction workers, like the class members here, who do not have experience with the American legal system, and are unlikely to seek, or be able to retain, legal representation on their own.

208.    Plaintiffs will fairly and adequately protect and represent the interests of the class. They were Defendants' employees and were victims of the same violations of law as the other class members, including numerous violations of the federal anti-discrimination laws.

209.    Plaintiffs are represented by counsel experienced in litigating discrimination claims.

210.    The prosecution of separate actions by the individual putative class members would create a risk of inconsistent or varying adjudications with respect to individual potential class members that would establish incompatible standards of conduct for Defendants.

211.    Each Class Member's claim is relatively small. Thus, the interest of potential Class Members in individually controlling the prosecution or defense of separate actions is slight. In addition, public policy supports the broad remedial purposes of class actions in general and that the pertinent federal laws are appropriate vehicles to vindicate the rights of those employees with small claims as part of the larger class.

212.    Plaintiffs are unaware of any members of the putative classes who are interested in presenting their claims in a separate action.

213.    Plaintiffs are unaware of any pending litigation commenced by putative class members.

214.    It is desirable to concentrate this litigation in this forum because some of the employment contracts at issue were entered into in this jurisdiction and many Plaintiffs are domiciled in this jurisdiction.

215.    This class action will not be difficult to manage due to the uniformity of claims among putative class members and the susceptibility of these discrimination claims to both class litigation and the use of representative testimony and representative documentary evidence. These claims involve conduct that was directed towards all female and Hispanic/Mexican drywall employees at SkyHouse Denver, as described above.

216.    The contours of the class will be easily defined by reference to the payroll documents Defendants were legally required to create and maintain, 29 C.F.R. § 516, *et seq*, and other employee records maintained by Defendants.

**COUNT I:**
**BREACH OF THE FAIR LABOR STANDARDS ACT ("FLSA"),**
**29 U.S.C. §§ 201 ET SEQ.**
**(Plaintiffs and the 216(b) Class and 216(b) Colorado Class against All Defendants;**
**Plaintiff Ceballos and the 216(b) Tennessee Class against Defendants Circle**
**Group, LA Drywall, L.A.G. Drywall, Ornelas, and Mendiola)**

217.    Plaintiffs incorporate by reference all previous and subsequent paragraphs of this Complaint.

218.    Plaintiffs bring their FLSA claim as a collective action, pursuant to 29 U.S.C. § 216(b), on behalf of themselves and on behalf of all other similarly situated current and former employees of Defendants.

219.    Defendants employed all Plaintiffs on the SkyHouse Denver project and, with the exception of Javier Martinez Drywall, Javier Martinez, and Jeffrey Musto, also employed Plaintiff Ceballos in Tennessee.

220.    Each of the Defendants were, or were members of, of an enterprise that had annual revenues in excess of $500,000 during Plaintiffs' employment and had two or more employees that handled goods or materials that had been moved in or produced for interstate commerce. Defendants were therefore an enterprise or enterprises engaged in commerce pursuant to 29 U.S.C. § 203(s)(1).

221.    During their employment, Plaintiffs and those similarly situated were also engaged in commerce pursuant to 29 U.S.C. § 203(b).

222.    As employers of Plaintiffs and those similarly situated, Defendants named in this claim were required to pay the Plaintiffs and those similarly situated minimum wage and overtime pursuant to 29 U.S.C. §§ 206, 207 and failed to do so.

223.    The failure to pay minimum wage and overtime was willful pursuant to 29 U.S.C.

§ 255(a) because Defendants knew or showed reckless disregard for the fact Plaintiffs and those

similarly situated were non-exempt employees covered by the FLSA and therefore entitled to

minimum wage and overtime.

224.    Plaintiffs and those similarly situated are therefore entitled to the following

pursuant to 29 U.S.C. § 216: unpaid minimum wage and overtime, statutory liquidated damages,

reasonable attorney's fees, and costs.

225.    As joint employers, Defendants are joint and severally liable to the Plaintiffs and

the 216(b) Class.

226.    As joint employers, Defendants are joint and severally liable to Plaintiffs and the

216(b) Colorado Class.

227.    As joint employers, Defendants are joint and severally liable to Plaintiff Ceballos

and the 216(b) Tennessee Class.

228.    By reason of Defendants' actions, Plaintiffs are entitled to all legal and equitable

remedies available for violations of the FLSA, including liquidated damages for all willful

violations, attorney's fees, costs, and other compensation pursuant to 29 U.S.C. § 216(b).

**COUNT II:**
**VIOLATION OF THE FLSA AS AMENDED BY THE EQUAL PAY ACT ("EPA"),**
**29 U.S.C. § 206(d)**
**(Plaintiffs Solisn Lira, Gutierrez, Miramontes and the 216(b) EPA Class against All**
**Defendants)**

229.    Plaintiffs incorporate by reference all previous and subsequent paragraphs of this

Complaint.

230.    Ms. Solis, Ms. Lira, Ms. Gutierrez and Ms. Miramontes (the "Female Named Plaintiffs"), and all Plaintiffs who "opt in" to this action (collectively, the "Female Plaintiffs"), are female and are within the class protected by the EPA.

231.    The Female Named Plaintiffs bring this claim as a collective action, pursuant to 29 U.S.C. § 216(b), on behalf of themselves and on behalf of all other similarly situated current and former employees of Defendants.

232.    All Defendants were joint employers of the Female Plaintiffs.  All Defendants shared control of the terms, conditions, and performance of their employment.

233.    All Defendants shared payroll, shared the supervision and management of employees including the Female Plaintiffs, employed joint supervisors and managers, and shared hiring and firing duties.

234.    Defendants have discriminated against the Female Plaintiffs within the meaning of the EPA and in violation of the FLSA, by providing them with lower pay than similarly situated male colleagues on the basis of their gender, female, even though the Female Plaintiffs performed similar duties requiring the same skill, effort, and responsibility of male counterparts.

235.    The Female Plaintiffs and similarly situated male employees all perform similar job duties and functions as cleaner/laborers. The Female Plaintiffs and similarly situated males all performed jobs that required equal skill, effort, and responsibility, and are or were performing under similar working conditions.

236.    Defendants discriminated against the Female Plaintiffs by subjecting them to discriminatory pay, discriminatory denial of promotions, and other forms of discrimination in compensation in violation of the EPA.

237.    The differential in pay between male and female employees was not due to seniority, merit, quantity or quality of production, or any factor other than sex.

238.    Defendants caused, attempted to cause, contributed to, or caused the continuation of wage rate discrimination based on gender, in violation of the EPA.

239.    The foregoing conduct constitutes a willful violation of the EPA within the meaning of 29 U.S.C. § 255(a).

240.    As a result of Defendants' conduct as alleged in this Complaint, the Female Plaintiffs have suffered and continues to suffer harm, including but not limited to: lost earnings, lost benefits, and other financial loss, as well as humiliation, embarrassment, emotional and physical distress, and mental anguish.

241.    By reason of Defendants' discrimination, the Female Plaintiffs are entitled to all legal and equitable remedies available for violations of the EPA, including liquidated damages for all willful violations, attorney's fees, costs, and other compensation pursuant to 29 U.S.C. § 216(b).

## COUNT III:
### VIOLATION OF STATE MINIMUM WAGE, OVERTIME, AND WAGE-PAYMENT LAWS OF THE STATES WHERE THE RULE 23 CLASS WORKED
#### (Plaintiffs and Rule 23 Nationwide Class against All Defendants)

242.    Plaintiffs incorporate by reference all previous and subsequent paragraphs of this Complaint as if fully re-written herein.

243.    Defendants employed Plaintiffs and the Rule 23 Nationwide Class.

244.    Defendants failed to pay Plaintiffs and the Rule 23 Nationwide Class overtime premiums and failed to pay them at all for all of the hours they worked.

245.     Plaintiffs and the Nationwide Class seek recovery of these wages and additional damages, costs, and attorney's fees pursuant to the laws of the states in which they worked.

246.     As joint employers, Defendants are joint and severally liable to Plaintiffs and the Rule 23 Nationwide Class.

**COUNT IV:**
**BREACH OF FIDUCIARY DUTY AND CIVIL THEFT**
**UNDER THE COLORADO TRUST FUND ACT,**
**C.R.S. §§ 38-22-127, 184-401, 18-4-405**
**(Plaintiffs and Colorado Class against Defendants Circle Group, LA Drywall, L.A.G.**
**Drywall, and Javier Martinez Drywall)**

247.     Plaintiffs incorporate by reference all previous and subsequent paragraphs of their Complaint.

248.     Defendants entered into the employment agreements with Plaintiffs and those similarly situated.

249.     Defendants entered into several contracts under which Plaintiffs and those similarly situated were to perform construction services under their employment agreements on real property in Colorado.

250.     Some of these contracts were for construction services on privately owned real property.

251.     Under the employment agreements, Plaintiffs and those similarly situated performed construction services improving privately owned real properties located in Colorado. They were not paid for their work.

252.     Upon information and belief, funds were disbursed to Defendants as payment for labor performed by Plaintiffs and those similarly situated on the improvements.

253.    Defendants failed to hold the disbursed funds in trust for Plaintiffs and those similarly situated, and intended to permanently deprive Plaintiffs and those similarly situated of the disbursed funds or used the disbursed funds in a manner practically certain to deprive Plaintiffs and those similarly situated of the disbursed funds.

254.    Plaintiffs and the Colorado Class are therefore entitled by statute to treble damages, costs, and attorney's fees.

## COUNT V:
### FAILURE TO PAY EARNED, VESTED & DETERMINABLE WAGES IN VIOLATION OF THE COLORADO WAGE CLAIM ACT ("CWCA"), C.R.S. § 8-4-109
### (Plaintiffs and Rule 23 Colorado Class against All Defendants)

255.    Plaintiffs incorporate by reference all previous and subsequent paragraphs of their Complaint.

256.    Defendants were Plaintiffs' "employer" as that term is defined by the CWCA because they employed Plaintiffs in Colorado. C.R.S. § 8-4-101(5).

257.    Plaintiffs were Defendants' employees as that term is defined by the CWCA because they performed labor for the benefit of Defendants in which Defendants commanded when, where, and how much labor or services would be performed. C.R.S. § 8-4-101(4).

258.    The overtime premiums and wages Defendants denied Plaintiffs constitute earned wages or other compensation owed Plaintiffs. C.R.S. § 8-4-109.

259.    None of Plaintiffs continue to work for Defendants.

260.    Plaintiffs are entitled to recover in this civil action the unpaid balance of the full amount of wages they are owed, including overtime premiums, together with penalties and reasonable attorney's fees and court costs.  C.R.S. §§ 8-4-109, 8-4-110, 8-6-118; 7 C.C.R 1103-

1(18).  Plaintiffs sent written wage demands for unpaid wages and overtime to Defendants Circle

Group, LA Drywall, Inc., and Javier Martinez Drywall on June 7, 2016 and to Defendant L.A.G.

Drywall on June 23, 2016. As of the date of the filing of this Second Amended Complaint, none

of these Defendants have responded to Plaintiffs' wage demands. C.R.S. § 8-4-109(3).

261.     As joint employers, Defendants are joint and severally liable to Plaintiffs and the

Colorado Class.

### COUNT VI:
### QUANTUM MERUIT UNDER TENNESSEE LAW
**(Plaintiff Ceballos and the Tennessee Class against Circle Group, LA Drywall, and L.A.G. Drywall)**

262.     Plaintiffs incorporate by reference all previous and subsequent paragraphs of this

Complaint.

263.     There was no legally enforceable contract between the parties.

264.     Plaintiff Ceballos and the Tennessee Class provided valuable labor and services to

Defendants in Tennessee. Defendants retained the benefits of this labor and these services

without compensating Plaintiff Ceballo and the Tennessee Class for the value of this labor and

services, which includes hourly wages and overtime premiums required by law for hours worked

in excess of 40 hours per week.

265.     Under the circumstances, the parties reasonably understood that Plaintiff Ceballo

and the Tennessee Class expected to be paid their legal wages.

266.     It would be unjust for Defendants to retain the benefits of the value of this labor

and these services without compensating Plaintiff Ceballo and the Tennessee Class for them.

**COUNT VII:**
**BREACH OF CONTRACT UNDER TENNESSEE LAW**
**(Plaintiff Ceballos and the Tennessee Class against Defendants Circle Group, LA Drywall, L.A.G. Drywall, Ornelas, and Mendiola)**

267.    Plaintiffs incorporate by reference all previous and subsequent paragraphs of this Complaint.

268.    In the alternative to Count VI (Quantum Meruit under Tennessee Law), Plaintiff Ceballos and the Tennessee Class allege that they entered into an implied-in-fact contract, under Tennessee law, with Defendants who employed them in Tennessee.

269.    Pursuant to this agreement, Defendants who employed Plaintiff Ceballos and the Tennessee Class in Tennessee agreed to pay Plaintiffs the wages and overtime premiums to which they were entitled by law.

270.    By failing to pay Plaintiff Ceballos and the Tennessee Class the wages and overtime premiums to which they were entitled by law, these Defendants breached their contract with Plaintiff Ceballos and the Tennessee Class.

**COUNT VIII:**
**DISCRIMINATION ON THE BASIS OF SEX, RACE, NATIONAL ORIGIN, ANCESTRY, AND SEX PLUS RACE/NATIONAL ORIGIN/ANCESTRY, TITLE VII, 42 U.S.C. § 2000E *ET SEQ.***
**(Plaintiffs Solis, Lira, Gutierrez, Miramontes and the Rule 23 Nationwide and Colorado Discrimination Classes against Defendants Circle Group, LA Drywall, and L.A.G. Drywall, and Plaintiff Lira against Defendant Javier Martinez Drywall)**

271.    Plaintiffs incorporate by reference all previous and subsequent paragraphs of this Complaint.

272.    Ms. Solis, Ms. Lira, Ms. Gutierrez and Ms. Miramontes (the "Female Named Plaintiffs") are female and are within the class protected by Title VII.

41

273.    The Female Named Plaintiffs are Hispanic and of Mexican national origin and ancestry and are within the class protected by Title VII.

274.    Defendants Circle Group, LA Drywall, and L.A.G. Drywall are each an employer for purposes of Title VII.

275.    Each of these Defendants employed the Female Named Plaintiffs.

276.    Each of these Defendants shared payroll, shared the supervision and management of employees including the Female Named Plaintiffs, employed joint supervisors/managers, and shared hiring and firing duties.

277.    Each of these Defendants were joint employers of the Female Named Plaintiffs. They shared control of the terms, conditions, and performance of their employment.

278.    Defendant Javier Martinez Drywall is an employer for purposes of Title VII.

279.    Defendant Javier Martinez Drywall employed Ms. Lira.

280.    Each of these Defendants created, condoned, and failed to prevent and correct a hostile work environment for the Female Named Plaintiffs during their employment, because of their sex.

281.    Each of these Defendants created, condoned, and failed to prevent and correct a hostile work environment for the Female Named Plaintiffs during their employment, because of their race, national origin, ancestry, and "sex plus" each of these traits.

282.    Each of these Defendants discriminated against the Female Named Plaintiffs in the terms and conditions of their employment, including pay, work assignment, opportunities for promotion and training, and exposure to risks of physical harm, because of their sex.

283.    Each of these Defendants discriminated against the Female Named Plaintiffs in the terms and conditions of their employment, including pay, work assignment, opportunities for promotion and training, and exposure to risks of physical harm, because of their race, national origin, ancestry, and "sex plus" each of these traits.

284.    Each of these Defendants constructively discharged Plaintiffs Lira, Gutierrez and Miramontes because of their sex.

285.    Each of these Defendants constructively discharged Plaintiffs Lira, Gutierrez and Miramontes because of their race, national origin, ancestry, and "sex plus" each of these traits.

286.    Creation of a hostile work environment, discrimination in terms and conditions, and constructive discharge are adverse employment actions.

287.    These Defendants did not create a hostile work environment for male employees, did not constructively discharge similarly situated male employees, and treated male employees more favorably than the Female Named Plaintiffs in the terms and conditions of employment.

288.    These Defendants also did not create a hostile work environment for employees who were not Hispanic/Mexican-born females, did not constructively discharge such employees, and treated such employees more favorably than the Female Named Plaintiffs in the terms and conditions of employment.

289.    These Defendants' actions described herein were intentional, and taken with malice and with reckless indifference the Female Named Plaintiffs' federally protected rights.

290.    These Defendants failed to take reasonable care to prevent and to correct the unlawful discriminatory practices described herein.

291.     As a direct and proximate cause of these Defendants' discriminatory actions and conduct, the Female Named Plaintiffs have suffered, and will continue to suffer damages including, but not limited to, loss of salary wages, earnings and benefits; diminution of future earning capacity; loss of accumulated benefits, emotional distress and other compensatory damages in an amount to be determined at trial; punitive damages in an amount to be determined at trial; and attorney's fees and costs.

**COUNT IX:**
**RACE, NATIONAL ORIGIN, AND ANCESTRY DISCRIMINATION**
**TITLE VII, 42 U.S.C. § 2000E *ET SEQ.***
**(Plaintiffs Lira, Solis, Aldeco Baltazar, Salas, Rodriguez, Gutierrez, Miramontes and the Rule 23 Nationwide and Colorado Discrimination Classes against Defendants Circle Group, LA Drywall, and L.A.G. Drywall)**

292.     Plaintiffs incorporate by reference all previous and subsequent paragraphs of this Complaint.

293.     Ms. Lira, Ms. Solis, Mr. Aldeco Baltazar, Mr. Salas, Mr. Rodriguez, Ms. Gutierrez, and Ms. Miramontes (the "Charging Party Plaintiffs") are Hispanic and of Mexican national origin and ancestry and are within the class protected by Title VII.

294.     Defendants Circle Group, LA Drywall, and L.A.G. Drywall are each an employer for purposes of Title VII.

295.     Each of these Defendants employed the Charging Party Plaintiffs.

296.     Each of these Defendants shared payroll, shared the supervision and management of employees including the Charging Party Plaintiffs, employed joint supervisors/managers, and shared hiring and firing duties.

297.     Each of these Defendants were joint employers of the Charging Party Plaintiffs. They shared control of the terms, conditions, and performance of their employment.

298.     Each of these Defendants created, condoned, and failed to prevent and correct a hostile work environment for the Charging Party Plaintiffs during their employment, because of their race, national origin, and ancestry.

299.     Each of these Defendants discriminated against the Charging Party Plaintiffs in the terms and conditions of their employment, including pay, because of their race, national origin, and ancestry.

300.     Each of these Defendants terminated or constructively discharged Ms. Lira, Mr. Aldeco Baltazar, Mr. Salas, Mr. Rodriguez, Ms. Gutierrez, and Ms. Miramontes because of their race, national origin, and ancestry.

301.     Creation of a hostile work environment, discrimination in terms and conditions, termination, and constructive discharge are adverse employment actions.

302.     Defendants did not create a hostile work environment for non-Hispanic or Mexican employees, did not terminate or constructively discharge similarly situated non-Hispanic or Mexican employees, and treated such employees more favorably than the Charging Party Plaintiffs in the terms and conditions of employment.

303.     Defendants' actions described herein were intentional, and taken with malice and with reckless indifference the Charging Party Plaintiffs' federally protected rights.

304.     Defendants failed to take reasonable care to prevent and to correct the unlawful discriminatory practices described herein.

305.     As a direct and proximate cause of Defendants' discriminatory actions and conduct, the Charging Party Plaintiffs have suffered, and will continue to suffer damages including, but not limited to, loss of salary wages, earnings and benefits; diminution of future earning capacity; loss of accumulated benefits, emotional distress and other compensatory damages in an amount to be determined at trial; punitive damages in an amount to be determined at trial; and attorney's fees and costs.

### COUNT X:
### RACE, NATIONAL ORIGIN, AND ANCESTRY DISCRIMINATION
### 42 U.S.C. § 1981 ("Section 1981")
### (All Plaintiffs and the Rule 23 Nationwide and Colorado Discrimination Classes against Defendants Circle Group, LA Drywall, and L.A.G. Drywall)

306.     Plaintiffs incorporate by reference all previous and subsequent paragraphs of this Complaint.

307.     Plaintiffs are Hispanic and of Mexican national origin and ancestry and are within the class protected by Section 1981.

308.     Defendants Circle Group, LA Drywall, and L.A.G. Drywall are each an employer for purposes of Section 1981.

309.     Each of these Defendants employed Plaintiffs.

310.     Each of these Defendants shared payroll, shared the supervision and management of employees including Plaintiffs, employed joint supervisors/managers, and shared hiring and firing duties.

311.     Each of these Defendants were joint employers of Plaintiffs.  They shared control of the terms, conditions, and performance of their employment.

312.    Each of these Defendants created, condoned, and failed to prevent and correct a hostile work environment for Plaintiffs during their employment, because of their race, national origin, and ancestry.

313.    Each of these Defendants discriminated against Plaintiffs in the terms and conditions of their employment, including pay, because of their race, national origin, and ancestry.

314.    Each of these Defendants terminated or constructively discharged Plaintiffs Salazar, Salas, Aldeco Baltazar, Rodriguez, Ceballos and Lira because of their race, national origin, and ancestry.

315.    Creation of a hostile work environment, discrimination in terms and conditions, termination, and constructive discharge are adverse employment actions.

316.    Defendants did not create a hostile work environment for non-Hispanic or Mexican employees, did not terminate or constructively discharge similarly situated non-Hispanic or Mexican employees, and treated such employees more favorably than Plaintiffs in the terms and conditions of employment.

317.    Defendants' actions described here were intentional, and taken with malice and with reckless indifference to Plaintiffs' federally protected rights.

318.    Defendants failed to take reasonable care to prevent and to correct the unlawful discriminatory practices described herein.

319.    As a direct and proximate cause of Defendants' discriminatory actions and conduct, Plaintiffs have suffered, and will continue to suffer damages including, but not limited to, loss of salary wages, earnings and benefits; diminution of future earning capacity; loss of

accumulated benefits, emotional distress and other compensatory damages in an amount to be determined at trial; punitive damages in an amount to be determined at trial; and attorney's fees and costs.

**COUNT XI:**
**RETALIATION IN VIOLATION OF THE FLSA AND CWCA**
**29 U.S.C. § 215(a)(3) & C.R.S. § 8-4-120**
**(Plaintiffs Solis, Rodriguez, Lira, Salazar, Gutierrez, Miramontes and the 216(b)**
**Retaliation Class and Rule 23 Retaliation Class against All Defendants)**

320.     Plaintiffs incorporate by reference all previous and subsequent paragraphs of this Complaint.

321.     Plaintiffs bring their FLSA retaliation claim as a collective action, pursuant to 29 U.S.C. § 216(b), on behalf of themselves and on behalf of all other similarly situated current and former employees of Defendants.

322.     Defendants employed all Plaintiffs on the SkyHouse Denver project.

323.     Each of the Defendants were, or were members of, of an enterprise that had annual revenues in excess of $500,000 during Plaintiffs' employment and had two or more employees that handled goods or materials that had been moved in or produced for interstate commerce. Defendants were therefore an enterprise or enterprises engaged in commerce pursuant to 29 U.S.C. § 203(s)(1).

324.     During their employment, Plaintiffs and those similarly situated were also engaged in commerce pursuant to 29 U.S.C. § 203(b).

325.     Plaintiffs Solis, Rodriguez, and Salazar complained to Defendants about their missing pay.

326.    Another employee complained about missing pay on behalf of Plaintiffs Lira, Gutierrez and Miramontes, as described herein.

327.    Defendants retaliated against Plaintiffs by reducing the pay of Plaintiffs Solis, Rodriguez, Lira, Gutierrez and Miramontes, and by constructively discharging Plaintiff Rodriguez and terminating Plaintiff Salazar.

328.    Reductions in pay, constructive discharge, and termination are adverse actions within the meaning of the FLSA.

329.    Defendants' retaliatory acts were motivated by Plaintiffs' protected complaints regarding their missed pay.

330.    Defendants' retaliatory actions were willful pursuant to 29 U.S.C. § 255(a) because Defendants knew or showed reckless disregard for the fact Plaintiffs and those similarly situated were entitled to speak up about their lost pay without losing additional pay or even their jobs as a result.

331.    Plaintiffs and those similarly situated are therefore entitled to the following pursuant to 29 U.S.C. § 216: unpaid minimum wage and overtime, statutory liquidated damages, reasonable attorney's fees, and costs.

332.    As joint employers, Defendants are joint and severally liable to the Plaintiffs and the 216(b) Retaliation Class and Rule 23 Retaliation Class.

333.    By reason of Defendants' retaliation, Plaintiffs are entitled to all legal and equitable remedies available for violations of the FLSA, including liquidated damages for all willful violations, damages for mental and emotional distress, lost wages, attorney's fees, costs, and other compensation pursuant to 29 U.S.C. § 216(b) and the CWCA

## DEMAND FOR JURY TRIAL

334.   Plaintiffs demand a trial by jury for all issues so triable.

## PRAYER FOR RELIEF

335.   Plaintiffs respectfully request an Order from this Court:

      a.   Certifying the FLSA opt-in classes and issuing prompt notice to members of the FLSA classes;

      b.   Certifying the Rule 23 classes and sub-classes, naming the named Plaintiffs class representatives, and naming Plaintiffs' counsel class counsel;

      c.   granting judgment in favor of all Plaintiffs and against all Defendants;

      d.   awarding Plaintiffs and the Rule 23 classes their damages and penalties under state laws;

      e.   awarding Plaintiffs and those similarly situated, unpaid minimum wage, unpaid overtime, and liquidated damages pursuant to the FLSA (29 U.S.C. §§ 201 *et seq.*);

      f.   awarding Plaintiffs and those similarly situated their costs;

      g.   awarding Plaintiffs and those similarly situated their attorney's fees;

      h.   awarding Plaintiffs and members of the classes and sub-classes all appropriate equitable and injunctive relief;

      i.   granting such other relief as this Court deems just and proper;

      j.   injunctive relief prohibiting Defendants from future discriminatory and illegal practices as described herein and requiring Defendants to adopt

policies and procedures to eradicate the effects of past discriminatory and illegal practices;

k.  compensatory damages, including for emotional distress, as allowed by law;

l.  punitive, exemplary, and liquidated damages as allowed by law;

m.  awarding Plaintiffs and those similarly situated prejudgment and post-judgment interest, when allowable by law.

Respectfully submitted this <u>2nd</u> day of August, 2016.

*s/ Sarah J. Parady*
Mary Jo Lowrey
Sarah J. Parady
1725 High Street, Suite 1
Denver, CO 80218
Phone: 303-593-2595
Fax: 303-502-9119
Email:  sarah@lowrey-parady.com
        maryjo@lowrey-parady.com

*s/David Seligman*
Alexander Hood
David Seligman
Towards Justice
1535 High St., Suite 300
Denver, CO 80218
Tel.: 720-239-2606
Fax: 303-957-2289
Email: alex@towardsjustice.org
        david@towardsjustice.org
        *Attorneys for Plaintiffs*

# EXHIBIT 1

## CONSENTIMIENTO PARA ACCIÓN FLSA

Por este medio doy mi consentimiento para que se haga una demanda por salarios que puede que me deben bajo la Ley de Normas Justas de Trabajo. Yo les autorizo a mis abogados a que me representen ante cualquier tribunal o agencia sobre estas reclamaciones, incluyendo la presentación de un caso el cual yo soy la parte Demandante en una acción colectiva de conformidad con 29 U.S.C. § 216.

NOMBRE     _Adriana Lira_

FIRMA      _____

FECHA      _05-13-16_

## FLSA CONSENT FORM

I hereby give my consent to sue for wages that may be owed to me under the Fair Labor Standards Act. I hereby authorize my attorneys to represent me before any court or agency on these claims, including filing a case where I am the party Plaintiff in a collective action pursuant to 29 U.S.C. § 216.

NAME        _____

SIGNATURE   _____

DATE        _____

8

## CONSENTIMIENTO PARA ACCIÓN FLSA

Por este medio doy mi consentimiento para que se haga una demanda por salarios que puede que me deben bajo la Ley de Normas Justas de Trabajo. Yo les autorizo a mis abogados a que me representen ante cualquier tribunal o agencia sobre estas reclamaciones, incluyendo la presentación de un caso el cual yo soy la parte Demandante en una acción colectiva de conformidad con 29 U.S.C. § 216.

NOMBRE _Beatriz Miramontes_

FIRMA _05-13-16 Beatriz Miramontes_

FECHA _05-13-16_

## FLSA CONSENT FORM

I hereby give my consent to sue for wages that may be owed to me under the Fair Labor Standards Act. I hereby authorize my attorneys to represent me before any court or agency on these claims, including filing a case where I am the party Plaintiff in a collective action pursuant to 29 U.S.C. § 216.

NAME _____

SIGNATURE _____

DATE _____

8

## CONSENTIMIENTO PARA ACCIÓN FLSA

Por este medio doy mi consentimiento para que se haga una demanda por salarios que puede que me deben bajo la Ley de Normas Justas de Trabajo. Yo les autorizo a mis abogados a que me representen ante cualquier tribunal o agencia sobre estas reclamaciones, incluyendo la presentación de un caso el cual yo soy la parte Demandante en una acción colectiva de conformidad con 29 U.S.C. § 216.

NOMBRE   Nancy Gutierrez

FIRMA   _____

FECHA   5-13-2016

## FLSA CONSENT FORM

I hereby give my consent to sue for wages that may be owed to me under the Fair Labor Standards Act. I hereby authorize my attorneys to represent me before any court or agency on these claims, including filing a case where I am the party Plaintiff in a collective action pursuant to 29 U.S.C. § 216.

NAME   _____

SIGNATURE   _____

DATE   _____

8