**IN THE UNITED STATES DISTRICT COURT
DISTRICT OF COLORADO**

Civil Action No. 16-cv-01329-RBJ

VIOLETA SOLIS,
CESAR SALAZAR,
EDGAR CEBALLOS,
AARON SALAS,
HILDEBERTO ALDECO BALTAZAR,
JUAN RAMON RODRIGUEZ,
ADRIAN LIRA,
NANCY GUTIERREZ,
BEATRIZ MIRAMONTES,
and those similarly situated,

                    Plaintiffs

    v.

THE CIRCLE GROUP, LLC,
LA DRYWALL, INC.,
L.A.G. DRYWALL, INC.
JAVIER MARTINEZ DRYWALL, LLC,
GULF COAST CONSTRUCTION, INC.,
JOSE MENDIOLA (AKA "CABALLO"),
JESUS ORNELAS (AKA "CHUY"), and
JAVIER MARTINEZ, and
JEFFREY MUSTO,

                    Defendants.

---

**DEFENDANTS THE CIRCLE GROUP, LLC AND JEFFREY MUSTO's
MOTION TO DISMISS**

---

      Defendants The Circle Group, LLC and Jeffrey Musto ("Defendants"), by and through

their attorneys, Lewis Brisbois Bisgaard & Smith LLP, hereby submit this Motion to Dismiss all

claims set forth in the Complaint under Fed. R. Civ. P. 12(b)(6).  As grounds therefore, the

Defendants state as follows:

1

# I.      INTRODUCTION AND BACKGROUND

Plaintiffs  allege they suffered various workplace employment violations  in the course of their work as dry-wall laborers at the "SkyHouse Denver" apartment project.  The lawsuit alleges that all nine individual and entity Defendants including The Circle Group, LLC  ("The Circle Group") and Jeffrey Musto ("Musto")  were Plaintiffs' "employers" and  therefore  liable under various state and federal causes of action.

The complaint is purposefully vague and conclusory in an attempt to blur the lines between separate corporate entities and individuals.[1]  The actual facts alleged (and the  true situation at the jobsite) establish that all Plaintiffs were the employees of Defendant LA Drywall only.  There is no allegation any of the Plaintiffs were hired by The Circle Group, nor did The Circle Group place them on the job site. None of the Plaintiffs allege they  received a single paycheck from The Circle Group.   All Plaintiffs instead acknowledge they were hired by LA Drywall[2] and concede that Gulf Coast Construction (the entity LA Drywall utilized to outsource

---

[1]  Plaintiffs allege that "Circle Group is a large, national drywall subcontractor that performs work for residential and  commercial development projects around the United States."  SAC p. 7 ¶ 27.  Plaintiffs allege Circle Group uses "labor brokers"  including LA Drywall and to recruit "employees" "to perform work related to the installation of drywall." SAC p. 7 ¶ 29.  In actuality, LA Drywall is a separate drywall installation company that sub-contracted with The Circle Group to perform the drywall installation work, and expressly agreed to provided its own employees and perform all employment functions separate from Circle Group. *See* Attached Exhibit 1.

[2]  **Solis**: hired by Ornelas (agent of LA Drywall, SAC p. 8 ¶ 35), SAC p. 20 ¶ 122; **Lira**: hired by Javier Martinez (Javier Martinez Drywall, LLC, SAC p. 8 ¶ 33), later worked for Mendiola (agent of LA Drywall, SAC p. 8 ¶ 34); **Gutierrez**: hired by Mendiola (agent of LA Drywall, SAC p. 8 ¶ 34), SAC p. 21 ¶ 124; **Miramontes**: hired by Mendiola (agent of LA Drywall, SAC p. 8 ¶ 34) SAC p. 21 ¶ 124; **Salazar**: hired by Ornelas (agent of LA Drywall, SAC p. 8 ¶ 35) and Musto; SAC p. 24 ¶ 156; **Ceballos:** hired by Mendiola (agent of LA Drywall, SAC p. 8 ¶ 34); (footnote continued)

payroll and labor relations) "controlled payroll and managed labor relations."[3]  All Plaintiffs acknowledge they received paychecks from Gulf Coast Construction only (and/or Javier Martinez Drywall, LLC, briefly).[4]  Gulf Coast Construction, the entity LA Drywall hired to manage its labor relations and payroll, recently filed bankruptcy.[5]

Plaintiffs  admit The Circle Group had its own separate employees on the job site, including Jeffrey Musto[6], who is generally alleged to have been the superintendent of drywall installation for the entire project.  However, the complaint is purposefully vague or silent concerning which of the nine separate entities actually "supervised" the Plaintiffs' daily work, other than conclusory allegations that _all_ of the Plaintiffs were "supervised" by _all_ nine Defendants.[7]  Most importantly, Plaintiffs fail to allege which of the nine Defendants had the "right to terminate the employment relationship."  None of the Plaintiffs, other than Salazar,

---

SAC p. 24 ¶ 157; **Salas:** hired by Ornelas (agent of LA Drywall, SAC p. 8 ¶ 35)  and Musto; SAC p. 24 ¶ 156; **Aldeco-Baltazar:** hired by Ornelas (agent of LA Drywall, SAC p. 8 ¶ 35) SAC p. 24 ¶ 156; **Rodriguez:** Does not say.

[3]   SAC p. 17 ¶ 93.

[4]   SAC, p. 21 ¶ 121, p. 24 ¶ 161.

[5]   SAC,  p. 4 fn. 1.

[6]   SAC p. 9 ¶ 38 ("Jeffrey Musto was employed by Circle Group and helped Circle Group to recruit and supervise laborers working on drywall at the SkyHouse Denver project.  He is an agent of Circle Group.")

[7]   Examples of the purposefully vague and conclusory descriptions of the alleged "supervision." SAC, p.21 ¶ 130 ( "The Female Named Plaintiffs were supervised by Defendant Jeffrey Musto, Rhonda (last name unknown), and Chre Houston.  Sometime they were supervised by Defendants Martinez, Ornelas, or Mendiola and by a man named Stuart (last name unknown). Upon information and belief, Defendant Musto, Rhonda, Ms. Houston, and Stuart were employed by Defendant Circle Group."); SAC, p. 24 ¶ 159 ("The Male Named Plaintiffs were supervised by Defendants Musto, Ornelas, and Mendiola."); SAC, p. 24 ¶ 160 ("Plaintiff Rodriguez was also sometimes supervised by a man named Yardel.")

allege that they were fired by any specific entity or that they were actually fired.[8]   Although

Salazar blames Musto for an altercation that led to his "termination," the complaint is unclear

whether he was actually fired, whether Musto or The Circle Group even had the power to fire

him, or whether he  left the job of his own accord following the altercation.[9]

Plaintiffs' barebones allegations regarding "joint employers" and who and what entity

actually employed them are insufficient to survive Defendants' motion to dismiss.  Plaintiffs

likewise fail to allege administrative exhaustion for their CWCA claims against Musto, and

cannot prevail on their Tennessee claims based upon a clear reading of the case law.  Defendants

respectfully request that the motion to dismiss be granted in its entirety.

## II.      STANDARD FOR DISMISSAL UNDER F.R.C.P. 12(b) (6)

Under Federal Rule of Civil Procedure 8(a)(2), a pleading must contain "a short and plain

statement of the claim showing that the pleader is entitled to relief."  The Supreme Court

clarified this standard in *Bell Atlantic v. Twombly*, 550 U.S. 544 (2007) and *Ashcroft v. Iqbal*,

556 U.S. 662 (2009); to withstand a Rule 12(b)(6) motion to dismiss, a complaint must contain

enough allegations of fact, taken as true, "to state a claim to relief that is plausible on its face."

Aside from  conclusory allegations, Plaintiffs have failed to allege sufficient facts to

allege plausible claims pursuant to F.R.C.P. 12(b)(6).  Generally a plaintiff must "nudge [his]

claims across the line from conceivable to plausible" in order to survive a motion to dismiss."

---

[8]  SAC p. 49 ¶ 327 "Defendants retaliated against Plaintiffs by reducing the pay of Plaintiffs Solis, Rodriguez, Lira, Gutierrez and Miramontes, and by constructively discharging Plaintiff Rodriguez and terminating Plaintiff  Salazar."

[9]  Salazar does not allege that he was actually fired by any entity or individual, but rather, that he was "terminated as the culmination of the hostile work environment that [Musto] created." SAC p. 25 ¶ 120.

*Id.*; *Khalik v. Unites Air Lines*, 671 F.3d 1188 (10th Cir., 2012) ("We agree with the district court that Plaintiff's allegations are the type of conclusory and formulaic recitations disregarded by the Court in *Iqbal*."); *Matthews v. LaBarge, Inc.*, 407 Fed. Appx. 277, 280 (10th Cir. 2011) (unpublished opinion) (citing *Iqbal*, (supra) 556 U.S. at 679) ("A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.")  The complaint need not recite "detailed factual allegations, but the factual allegations must be enough to raise the right to relief above the speculative level." *Hall v. Witteman*, 584 F.3d 859, 863 (10th Cir.2009)

Documents referenced in the complaint may be reviewed by the Court in deciding a motion to dismiss pursuant to F.R.C.P. 12(b)(6) without converting it to a motion for summary judgment pursuant to F.R.C.P. 56.  2011 WL 2610661 at p. 3 (SDNY, June 27, 2011) (citing myriad cases) ("Extrinsic evidence may be considered part of a complaint when it is (1) attached to the pleading, (2) incorporated by reference in the pleading, or (3) the court deems the evidence integral to at least one claim in the pleading."); *Rosenfield v. HSBC Bank, USA*, 681 F.3d 1172, 1178 (10th Cir., 2012) ("In addition to the allegation contained in the complaint, the court may consider attached exhibits and documents incorporated into the complaint, so long as the parties do not dispute the documents' authenticity.)

### III.    SUMMARY OF ARGUMENTS

### Dismissal of Claims Against Jeffrey Musto

Plaintiffs allege five causes of action against Jeffrey Musto individually arising out of his general supervision of drywall installation at the SkyHouse Denver project on behalf of The Circle Group.   Plaintiffs concede Musto worked as an "employee" and "agent" of The Circle

Group,  yet seek to hold him personally liable under Claim I (Breach of the FLSA), Claim II (Breach of FLSA as amended by EPA); Claim III (Violation of State Wage Laws); Claim V (Violations of the Colorado Wage Claim Act); and Claim XI (Retaliation in Violation of FLSA, CWCA, 29 USC § 215(a); C.R.S. § 8-4-120).   Plaintiffs have failed to plead viable claims against Musto as a matter of law, and they should be dismissed accordingly.

**Dismissal of Claims Against The Circle Group**

Plaintiffs allege eleven causes of actions against The Circle Group, all premised on the concept that The Circle Group was the "joint employer" of the Plaintiffs, even though each Plaintiff was directly hired, supervised, and paid by other entities.   The concept of "joint employer" has limited application in the context of the FLSA and Title VII, particularly in the Tenth Circuit and Colorado, and no recognized application in the remainder of the claims. Further, many of the claims require Plaintiffs to possess a contractual relationship with The Circle Group.  Plaintiffs fail to allege sufficient facts to support their claims meriting dismissal.

## IV.   ARGUMENTS

### A.   DISMISSAL OF "JOINT EMPLOYER" CLAIMS

### 1.   The Circle Group is Not an "Employer" Under Title VII

Plaintiffs allege The Circle Group, along with eight other Defendants, are Plaintiffs' "employers."[10]  Plaintiffs further allege Defendants The Circle Group, LA Drywall, and L.A.G.

---

[10]  SAC, p. 6 ¶ 24: "Plaintiffs worked on the SkyHouse Denver project and were employed by corporate entities that included The Circle Group, LLC (hereinafter "Circle Group"), LA Drywall, Inc. and L.A.G. Drywall, Inc. (hereinafter collectively "LA Drywall"), and Javier Martinez Drywall, LLC (hereinafter "Javier Martinez Drywall"), and Gulf Coast Construction, Inc. (hereinafter "Gulf Coast Construction" or "Gulf Coast"). They were also employed by (footnote continued)

Drywall, were "joint employers" with respect to two claims asserted pursuant to Title VII, 42 U.S.C. § 2000E.[11]  Aside from vague, conclusory, and contradictory allegations, the actual facts alleged in the complaint do not support a finding of "joint employer" status for The Circle Group.  Plaintiffs fail to identify a single entity as their actual employer, but rather refer to all nine Defendants in this lawsuit as their "joint" employers, without differentiation as to each Defendant and its conduct.  SAC, p. 17 ¶ 94; *Park v. Fiserv Trust Co.,* 2010 U.S. Dist. LEXIS 129600, p. 6 ("There are no facts set forth in the TAC to support Ms. Park's joint employer argument.  Ms. Park makes reference to Defendants throughout the TAC without differentiation as to each Defendant and its conduct.  Ms. Park has not alleged that any of the Defendants, as separate entities, co-determined the essential terms and conditions of her employment.")

In the standard "joint employer" case, the plaintiff acknowledges that he is employed by one entity, but seeks to hold a second entity liable for Title VII violations.  *Bristol v. Bd. Of County Comm'Rs*, 312 F.3d 1213, 1217 (10th Cir., 2002) ("a plaintiff who is the employee of one entity may seek to hold another entity liable by claiming that the two entities are joint employers. This joint-employer test acknowledges that the two entities are separate, but looks to whether they co-determine the essential terms and conditions of employment.")[12]  Here, Plaintiffs do not

---

individuals including, but not limited to, Jose Mendiola (aka "Caballo" or "Juan"), Jesus Ornelas (aka "Chuy"), Javier Martinez, and Jeffrey Musto."

[11]  *See* SAC, pp. 41 to 46; In general "[t]o present a prima facie case of Title VII… Plaintiff must prove that it was her *employer*." *Knitter v Corvias Military Living, LLC*, 758 F.3d 1214, 1225 (10th Cir., 2014); *Williams v. Meese*, 926 F.2d 994, 997 (10th Cir., 1991) ( The protections of Title VII apply only to discrimination against an employee by that person's employer.)

[12]  *See also Basulto v. Exact Staff, Inc.*, 2016 U.S. Dist. LEXIS 1739 (D. Colo., Jan. 6, 2016) ("Plaintiff asserts that he was employed by both Electronic Recyclers and Exact Staff; and Exact Staff concedes in the Motion to Dismiss that it hired Plaintiff into a temporary associate position (footnote continued)

allege that they were the formal employees of any single entity or individual, but rather assert blanket allegations that they were "employees" of all nine Defendants.  Undersigned counsel could not locate any case from this district or any other in which nine separate entities and individuals have been found to be "joint employers."

The conclusory allegations in the complaint are also insufficient to establish The Circle Group exercised "sufficient control over the terms and conditions of employment" of the Plaintiffs to be considered a "joint employer."  *Knitter v. Corvias Military Living, LLC*, 758 F.3d 1214 (10th Cir., 2014) .  For instance, the complaint is devoid of allegations that The Circle Group had "the right to terminate employment under certain circumstances."  The complaint does not allege that any of  the Plaintiffs were actually terminated from the job.  All Plaintiffs instead claim that they quit.  *Knitter*, 758 F.3d at 1226 ("The most important fact to determining control over the terms and conditions of employment is "the right to terminate it under certain circumstances.")[13]

Plaintiffs' assertion that The Circle Group "supervised" their work, standing alone as the only basis for "joint employer" status is also insufficient, considering the conclusory nature of the allegations in the complaint.  All actual details of what constituted the alleged "supervision"

---

and later arranged for him to interview with Electronic Recyclers.  Therefore, for the purposes of considering the instant Motion to Dismiss, the court will accept as true that Exact Staff and Electronic Recyclers are joint employers.");  *Hopper v. RE/Max Props., Inc.*, 2015 U.S. Dist. Lexis 96925, p. 17 (D. Colo., 2015) (RE/Max "joint employer" under Title VII where RE/Max had the authority to supervise, discipline, and terminate her.)

[13]  Other factors that may be applied to the "joint employer" determination include  "the ability to promulgate work rules and assignments, and set conditions of employment, including compensation, benefits , and hours…. day to day supervision of employees, including employee discipline; and …control of employee records, including payroll, insurance, taxes and the like."  *Knitter*, 758 F.3d at 1226.

are omitted from the complaint, even  though such information is within the Plaintiffs'

knowledge and control.  Defendants Ornelas and Mendiola of LA Drywall and Javier Martinez

of Martinez Drywall, LLC are also alleged to have supervised all Plaintiffs, which combined

with the other factors already acknowledged in the complaint, establishes LA Drywall and Javier

Martinez Drywall were Plaintiffs' sole employers within the meaning of Title VII.[14]

**2.      The Circle Group and Musto Are Not "Employers" under the FLSA**

Plaintiffs allege all Defendants, including Musto, and The Circle Group,  were "joint

employers" within the Fair Labor Standards Act ("FLSA") and violated provisions concerning

overtime pay.[15]  The Tenth Circuit has not expressly addressed the issue of "joint employment"

under the FLSA.  Some courts within the Tenth Circuit have applied the *Bonnette* factors as

applied in the First and Ninth Circuits to determine whether two entities were "joint employers"

under the FLSA, however, few courts within the Tenth Circuit have addressed allegations that

---

[14]  *See Covas-Alvarez v. Western Stock  Show Ass'n*, 2010 U.S. Dist. LEXIS; 2010 WL 7370703
(Sept. 17, 2010) (Finding Western Stock Show Ass'n was not "joint employer" under Title VII
where  1) agreement among two entities plainly divested alleged joint employer of any right to
control second entity ("West") employees 2) West placed employee onsite and controlled her
responsibilities 3) West paid the employee's salary 4) West retained sole authority to terminate
employee and in fact terminated her."); *See also Knitter* (supra) (Affirming Picerne was not
Title VII "joint employer" where "Picerne did not have authority to terminate Ms. Knitter's
employment; (ii) Picerne did not pay Ms. Knitter directly; and (iii) Picerne did not have authority
to supervise and discipline Ms. Knitter beyond the confines of a vendor-client relationship.")

[15]  "The FLSA defines "employer", somewhat circularly as "any person acting directly or
indirectly in the interest of an employer in relation to an employee…" 29 U.S.C. § 203(d)."
*Perez v. Pinon Mgmt.,* 2013 U.S. Dist. LEXIS 37806  p. 21 (Aug. 9, 2016) ("To prove a claim
for violation of the FLSA's overtime pay requirements, Ms. Perez must allege: (i) that the
Defendant is an employer as defined by the Act; (ii) that she is an employee as defined by the
Act: (iii) that the Defendant employed her services; (iv) for more than 40 hours in a single work
week; and (v) that she did not receive compensation at a rate 1.5 times her normal hourly rate for
the hours she worked over 40 in that week. 29 U.S.C. § 207(a)(1); *Figueroa v. District of
Columbia Metropolitan Police Dept.,*633 F.3d 1129, 1134-35 (D.C. Cir., 2011)."

multiple entities and individuals are "joint employers" under the FLSA for the same employee. *See Zachary v. Rescare Okla., Inc.,* 427 F. Supp. 2d 1175, 1178 (D. Okla, Nov. 30, 2006) ("[W]hether an alleged employer: 1) had the power to hire and fire the employees, 2) supervised and controlled employee work schedules and conditions of employment, 3) determined the rate and method of payment, or 4) maintained employment records.)

Courts from other federal districts that have been faced with claims against numerous entities and individuals based on a "joint employer" or "single integrated enterprise" theory, have generally dismissed claims against all entities that did not directly hire and supervise the employee involved.   Those courts likewise dismiss claims against individual  managers absent allegations  the manager exercised direct control of payroll decisions on behalf of the corporation and maliciously refused to pay employees knowing that the corporation faced  insolvency.

For instance, the Court in *Cavallaro v. UMass Mem. Health Care, Inc.*, 971 F. Supp. 2d 139 (D. Mass., 2013)  applying the same *Bonnette* test adopted in *Baystate Alt. Staffing, Inc. v. Herman*, 163 F. 3d 668, 675 (1st Cir. 1998)  (and the *Zachary* court) dismissed the plaintiff's FLSA claims pursuant to F.R.C.P. 12(b)(6) against multiple corporate defendants and  multiple individuals alleged to be "joint employers" under the FLSA.  In reaching its conclusion the Court strictly applied the *Bonnette* factors to the facts alleged in the complaint, and determined the plaintiff had only plausibly alleged FLSA liability as to the  single corporate entity that directly hired and  issued paychecks to the plaintiff.   *See also Roman v. Guapos III, Inc.*, 970 F. Supp. 2d 407 (D. Maryland, 2013) (Dismissing claims against multiple entities premised on "single integrated enterprise" theory.)

The *Cavallaro* court's reasoning is applicable to this case.  Like *Cavallaro*, three of the

four *Bonnette* factors weigh against "joint employer status" under the FLSA for The Circle

Group.  Plaintiffs acknowledge that LA Drywall and Javier Martinez Drywall hired them, set the

initial terms of their employment, and directly supervised their work performance.  Plaintiffs

admit LA Drywall's payroll contractor, Gulf Coast Construction, controlled all payroll and

"managed labor relations" and admit Gulf Coast and LA Drywall maintained their employment

records.  The only *Bonnette*  factor supporting Plaintiffs' claim that The Circle Group is a "joint

employer" are conclusory allegations that The Circle Group employees "supervised" Plaintiffs'

daily work, and the confusing allegation that Musto "terminated" Plaintiff Salazar while also

claiming Salazar was "terminated as the culmination of the hostile work environment that

[Musto] created."  The same conclusory allegations concerning supervision are also applied to

other Defendants without distinguishing in any way how the entities actually "supervised"

Plaintiffs.  As The Circle Group and Musto are not "employers" under the FLSA, all claims

against both Defendants should be dismissed.

**3.      Musto Not Individually Liable Under the FLSA**

The Tenth Circuit also has not ruled on individual liability under the FLSA.  *Jensen v.*

*Redcliff Ascent, Inc.*, 2014 U.S. Dist. LEXIS 82478  p. 4  (D. Utah, June 17, 2014) (Providing

summary of circuit court decisions concerning FLSA's application to individual supervisors and

corporate officers.)  However, in  *Does v. Rodriguez,* 2007 U.S. Dist. LEXIS 15061 (D. Colo.,

Mar. 2, 2007), Judge Babcock applied the 1st Circuit Court of Appeals test for individual liability

from *Baystate Alternative Staffing, Inc.* (supra) that the *Cavallaro* court applied:

> The FLSA does not impose personal liability on any supervisory employee, even though
> without any control over the corporation's payroll…for the unpaid or deficient wages of
> other employees.  Nor does the FLSA make liable any corporate officer or other
> employee with ultimate operation control over payroll matters.

> However, because the FLSA does transcend traditional common law parameters of the employer-employee relationship" individual liability under the FLSA can be attached to corporate officers based on such factors as: the significant ownership interest of the corporate officers; their operational control of significant aspects of the corporation's day to day functions, including compensation of employees; and the fact they personally made decisions to continue operating the business despite financial adversity and the company's inability to fulfill its statutory obligations to its employees.

*Does* pp. 7-8, (*supra*) (internal citations omitted.)

The *Baystate* factors are appropriate here in determining that Jeffrey Musto cannot be individually liable under the FLSA based on the allegations in the complaint:

> In *Agnew* we began our analysis by recognizing that individuals ordinarily are shielded from personal liability when they do business in a corporate form, and that it should not lightly be inferred that Congress intended to disregard this shield in the context of the FLSA. In this vein, we cautioned that the Act's broadly inclusive definition of "employer" should not be afforded too much weight. Taken literally and applied in this context it would make any supervisory employee, even though without any control over the corporation's payroll, personally liable for the unpaid or deficient wages of other employees. Similarly, we found it difficult to accept, as the Secretary argues and as some court have apparently held, that Congress intended that any corporate officer or other employee with ultimate operational control over payroll matters be personally liable for the corporation's failure to pay minimum and overtime wages as required by the FLSA.

*Baystate* (*supra*) (internal citations omitted) 163 F.3d at 677.

There are no facts indicating Musto is a corporate officer with a significant ownership interest in The Circle Group, that he worked in the payroll department of the company, that he determined The Circle Group's corporate policy on overtime payment, or that he exerted "significant operational control of significant aspects of the corporation's day to day functions." Plaintiffs fail to allege how Musto could control corporate payroll decisions on behalf of all Plaintiffs when  none of the Plaintiffs were hired or paid by The Circle Group.

The complaint instead plainly asserts that LA Drywall hired all Plaintiffs and Gulf Coast Construction "controlled payroll and managed labor relations" concerning the Plaintiffs, directly

contradicting the conclusory allegation  Musto bore direct responsibility for payroll issues

affecting the Plaintiffs.  Further, there are no allegations Musto had any knowledge that Gulf

Coast Construction, Inc., an entirely unrelated and separate entity from The Circle Group, was on

the verge of bankruptcy.   In sum, it is simply not plausible that Musto single-handedly managed

The Circle Group's[16]  or any other entity's corporate payroll decisions while at the same time

supervising the daily details of Plaintiffs' dry-wall work at SkyHouse Denver.   Plaintiffs'

allegations concerning Musto's individual liability under the FLSA should be dismissed

accordingly.

### 4.    Neither Musto nor The Circle Group Are Liable Under the Equal Pay Act

The complaint states that all Plaintiffs were hired by LA Drywall, paid by Gulf Coast

Construction, and that Gulf Coast managed LA Drywall's "payroll and labor relations."  Yet, the

female named Plaintiffs (Solis, Lira, Gutierrez, and Miramontes) assert conclusory allegations

that all nine Defendants, including Jeffrey Musto and The Circle Group, discriminated against

them on the basis of their female gender "by providing them with lower pay than similarly

situated male colleagues" and "discriminatory denial of promotions" in violation of the Equal

Pay Act amendment to the Fair Labor Standards Act. [17]  Plaintiffs provide  no actual facts

---

[16]   The complaint alleges Circle Group is "a large, national drywall subcontractor that performs work for residential and commercial projects around the United States.  It installs tens of millions of square feet of drywall per year in projects around the country."  SAC, p.  7 ¶ 27.

[17]   SAC, p. 36 ¶ 236; 29 U.S.C. § 206 (d)(1) ("No employer having employees subject to any provisions of this section shall discriminate, within any establishment in which such employees are employed, between employees on the bases of sex by paying wages to employees of the opposite sec in such establishment for equal work on jobs the performance of which requires equal skill, effort, and responsibility, and which are performed under similar working conditions…")

establishing that any similarly situated  male worker received more pay due to his gender. [18]

Instead, the sole "facts" alleged in support of the EPA claim against Jeffrey Musto and The

Circle Group are unsupported, vague, conclusory, and contradictory allegations that do not meet

the *Twombly/Iqbal* standard for pleading.  The female Plaintiffs acknowledge that men were

assigned as cleaner/laborers alongside them, yet they do not identify a single instance of a male

co-worker earning more money than them while working in the same position as a

cleaner/laborer, do not identify any alleged amount of disparity in pay between their pay and the

pay of male workers who also worked as cleaner/laborers, and do not  identify a single instance

in which a similarly situated male cleaner/laborer was promoted to dry-waller, let alone facts

alleging that such promotion was based solely on gender.[19]

Plaintiffs were in a position to know and allege this information since they allegedly

worked alongside these male co-workers, including their co-Plaintiffs in this lawsuit, and should

be able to assert at least one fact supporting an example of discriminatory pay in the complaint.

The failure to assert any single fact in support of the EPA claim merits dismissal at the pleading

stage since the claims are merely speculative.. *Hall v. Witteman*, 584 F.3d 859, 863 (10th

Cir.2009) (The complaint need not recite "detailed factual allegations, but the factual allegations

must be enough to raise the right to relief above the speculative level."); *Salemi v. Colo. Pub.

Emples. Ret. Ass'n*, 2016 U.S. Dist. LEXIS 43691 (D. Colo., Mar. 31, 2016)  ("For an EPA

claim, the plaintiff must show that employees of the opposite sex were paid differently for

---

[18]  *See* SAC, p. 22 ¶¶ 134 to 138 ("Upon information and belief, male Cleaner/Laborers were paid more per hour and were paid their correct wages more often than the Female Named Plaintiffs.")

[19]  SAC, p. 22 ¶¶ 119 to 135.

14

performing substantially equal work.  If she meets this burden, the burden then shifts to the

defendant to show that the wage disparity was justified by one of four affirmative defenses.")

     There is also no basis in the Tenth Circuit for recovery under the EPA premised on

"discriminatory denial of promotions."  *Mickelson v. New York Life Ins. Co.*, 460 F.3d 1304,

1318 fn. 5 (10th Cir., 2006) ("A prima facie cased of discrimination under the EPA consists of

proof that (1) the plaintiff was performing work which was substantially equal to that of the

employees of the opposite sex, taking into consideration the skills, duties, supervision, effort and

responsibilities of the jobs; (2) the conditions where the work was performed were basically the

same; (3) employees of the opposite sex were paid more under such circumstances.")

**5.**    **Musto Not Individually Liable Under EPA Claim As A Matter Of Law**

     Plaintiffs allege that Musto is also individually liable for the alleged violation of Equal

Pay Act.  Plaintiffs acknowledge Musto was an employee and agent of The Circle Group at all

times during his alleged interactions with Plaintiffs.[20]  The Tenth Circuit has not yet ruled on

whether an individual supervisor or manager working for an entity may be liable under the Equal

Pay Act.  *Salemi*, p. 49 (*supra*).[21]

     There is also a split among federal district courts on this issue.  Some courts hold that the

---

[20]  SAC, p. 9 ¶ 38 ("Jeffrey Musto was employed by Circle Group and helped Circle Group to
recruit and supervise laborers working on drywall at the SkyHouse Denver Project. He is an
agent of Circle Group.")

[21]  "Defendants argue that Moore and Setter cannot be held individually liable under the EPA.
This Court has not previously ruled on this question.  Judge Blackburn in *Nasious v. Nu-Way
Real Estate* noted that other courts have reached divergent conclusions on whether individual
liability is available under the EPA, but he declined to rule on the issue in that case. 2008
U.S.Dist. LEXIS7225 p. 1, n. 1 (D. Colo., Jan. 31, 2008) Similarly no Tenth Circuit case has
ruled on this issue."

EPA should be likened to Title VII of the Civil Rights Act of 1964, which does not impose individual liability.[22]  Other courts hold that the broad definition of employer under the FLSA applies and individual managers may be liable under certain circumstances.[23]

Regardless, every court that has weighed in on the issue, including Judge Wiley Daniel's very recent opinion in this district, has held that when both the individual supervisor and his employing entity are both named in the lawsuit, the claims against the individual supervisor should be dismissed.  *Salemi* (supra), p. 51-52 ("However, as noted by the courts in both *Holliday* and *Riordan*, an employee should assert an EPA claim against *either* the employer *or* the individual supervisor(s), but not both.  The phrase "*rather* than the employer" in the *Riordan* decision implies that "although a plaintiff might permissibly assert an EPA claim against another employee, a plaintiff should not assert an EPA claim against *both* an employer *and* another employee.")  As a matter of law, Musto should be dismissed from Plaintiffs' EPA claim.

**6.    Circle Group And Musto Not Employers Under  Colorado Wage Claim Act**

Although Plaintiffs acknowledge Jeffrey Musto acted at all times as an agent and employee of  The Circle Group, Plaintiffs impermissibly assert Musto is one of nine "employers"[24] separately liable under the CWCA[25] for the allege wage violations.  Colorado law

---

[22]   *See Peters v. Black Tie Value Parking Serv., Inc.*, 2013 U.S. Dist. LEXIS 5203, p. 3 (W.D. Okla., Jan. 14, 2013); *Converse v. City of Oklahoma City*, 649 F. Supp. 2d 1310, 1320 (W.D. Okla., 2009); *Harris v. City of Harvey,* 993 F. Supp. 1012, 1013-1014 (N.D. Ill., 1998).

[23] *Holliday v. WSIE 88.7 FM Radio Station*, 2005 U.S. Dist. LEXIS 32725, p. 5-6 (S.D. Ill., Dec. 7, 2005); *See also Riordan v. Kempiners*, 831 F.2d 690, 694 (7th Cir., 1987).

[24]  C.R.S. § 8-4-101(6) (6) (""Employer" means every person, firm, partnership, association, corporation, migratory field labor contractor or crew leader, receiver, or other officer of court in Colorado, and any agent or officer thereof, of the above mentioned classes, employing any (footnote continued)

is well established that "Colorado's Wage Claim Act does not make officers and agents of a corporation jointly and severally liable, along with the corporation, for the payment of wages and compensation due and payable to the employee under the employment contact and the Wage Claim Act." *Leonard v. McMorris,* 63 P.3d 323 (Colo., 2003) (Responding to certified questions of law from the Tenth Circuit Court of Appeals).  As such, Musto cannot be individually liable under the CWCA since he was an employee of The Circle Group at the time of the alleged wage violations.  *Id.*, 63 P.3d at 328 ("[W]e conclude that the legislature did not intend to impose personal liability on officers and agents that is equal to the corporation's liability.")

The Circle Group is also not liable under the CWCA since "the Wage Claim Act focuses on the liability of the entity or  person who created and maintained the employment relationship for payment of the wages and compensation due and payable under the employment contract." *Id.*, 63 P.3d at 329 (Implicitly rejecting the concept of "joint employer" in the context of the CWCA); *See also Accord Human Res. v. Indus. Claim Appeals Office of Colo.*, 275 P.3d 697, 701 (Colo. App., 2010) (Rejecting "joint employer" argument in the context of Colorado unemployment law and unemployment statutes.); *Bigby v. Big 3 Supply Co.,* 937 P.2d 794 (Applying "joint employer" test in the limited scope of the American with Disabilities Act).

---

person in Colorado; except that the provisions of this article shall not apply to the state or its agencies or entities, counties, cities and counties, municipal corporations, quasi-municipal corporations, school districts, and irrigation, reservoir, or drainage conservation companies or districts organized and existing under the laws of Colorado.")

[25]  Plaintiffs did not provide written notice to Jeff Musto as required by C.R.S. 8-4-109(3)(a) ("If an employer refuses to pay wages or compensation in accordance with subsection (1) of this section, the employee, his or her designated agent, or the division may send a written demand for the payment.")  This renders the claim against him infirm and subject to dismissal.

LA Drywall hired every single Plaintiff, thus creating and maintaining the employment relationship; further, LA Drywall outsourced all payroll and labor relations to Gulf Coast Construction.  There is no allegation that The Circle Group maintained employment records, performed payroll, or managed labor relations concerning the Plaintiffs, and the CWCA claim against The Circle Group should be dismissed accordingly.

**7.      Retaliation Claims Under FLSA And CWCA Are Conclusory And Vague**

As indicated above, Jeffrey Musto is not an "employer" of the Plaintiffs within the accepted meaning of either the FLSA or CWCA,[26] and cannot be individually liable for claims arising out of either the FLSA or CWCA based on the allegations in the complaint.  Regardless, six of the named Plaintiffs allege The Circle Group and Musto "retaliated" against them for complaining about their wages.   The allegations are conclusory and vague, and generally do not indicate when the complaint took place, to whom  the complaint was made, and the sequence of events resulting in "retaliation" from the wage complaint.[27]  *Robillard v. Bd. Of County Comm'rs,Colo.*, 2012 U.S. Dist. LEXIS 138191 (D. Colo., 2012) (Dismissing FLSA retaliation claim at the pleading stages where "[p]laintiff's allegations of retaliation are sparse and provide

---

[26]   Unlike the FLSA, the CWCA requires the institution of a formal complaint or proceeding and subsequent retaliation arising out of the institution of a formal proceeding. C.R.S. § 8-4-120 ("No employer shall intimidate, threaten, restrain, coerce, blacklist, discharge, or in any manner discriminate against any employee who has filed any complaint or instituted or caused to be instituted any proceeding under this article or related law or who has testified or may testify in any proceeding on behalf of himself, herself, or another regarding afforded protections under this article. Any employer who violates the provisions of this section is guilty of a misdemeanor and, upon conviction thereof, shall be punished by a fine of not more than five hundred dollars, or by imprisonment in the county jail for not more than sixty days, or by both such fine and imprisonment.")

[27]   Salazar's and  Rodriguez' allegations that they quit following arguments with Musto about unpaid wages owed by LA Drywall and Gulf Coast Constriction are conclusory.

virtually no non-conclusory basis to conclude that he suffered any retaliation due to his

complaints.  The allegations are unclear concerning the chronology of events, appear to largely

relate to policies impacting all employees of WCCO, and provide no basis to draw the inference

that any of his treatment resulted from the fact that he communicated certain undefined

"concerns."")[28]  As a matter of law, based on this case, Musto cannot be liable for Plaintiffs'

retaliation claims under either the FLSA or the CWCA.

## B.      DISMISSAL OF "CONTRACT" BASED CLAIMS

### 1.      The Circle Group Had No Obligation To Hold Payments In Trust For Plaintiffs

Plaintiffs assert The Circle Group violated the Colorado Construction Trust Statute by

failing to hold payments it received from the general contractor in trust for the benefit of

Plaintiffs.  *See* C.R.S. § 38-22-127.  Plaintiffs generically allege that the "[d]efendants entered

into employment agreements with Plaintiffs and those similarly situated."  SAC, p. 38 ¶ 248.

However, Plaintiffs have not alleged any facts supporting  any "employment agreement"  with

The Circle Group.  Rather, all Plaintiffs acknowledge they were hired by LA Drywall, paid by

LA Drywall, and received their paychecks from Gulf Construction, LA Drywall's labor relations

and payroll outsourcer.  There are no facts supporting the elements of a contract with The Circle

Group under Colorado law.   As part of The Circle Group's sub-contract with LA Drywall, The

Circle Group required LA Drywall execute  interim and final waivers and releases prior to the

---

[28]   *Conner v. Schnuck Markets, Inc.*, 121 F.3d 1390, 1394 (10th Cir., 1997) ("To establish a prima facie case of retaliation under FLSA, Plaintiff must show that "(1) he or she engaged in activity protected by the FLSA; (2) he or she suffered adverse action by the employer subsequent to or contemporaneous with such employee activity; and (3) a causal connection existed between the employee's activity and employer's adverse action.")

issuance of payment  on behalf of all laborers LA Drywall employed and brought to the project. The agreement expressly required LA Drywall to hold all payments from The Circle Group in trust for its laborers.  *See* Attached Exhibit 1 p. 12 ¶ 4.7 ("All funds paid to Subcontractor in connection with the Project constitute funds held in trust by Subcontractor.")  Plaintiffs are estopped as a matter of law from asserting a claim under C.R.S. § 38-22-127[29] against The Circle Group since they had no contractual relationship with The Circle Group, and their lien claims against The Circle Group have been waived and released on their behalf by their employer LA Drywall. *In re Vill. Homes of Colo., Inc. v. Guaranty Bank*, 405 B.R. 479 (Bankr. D. Colo., 2009) (Affirming the validity of waivers and release of claims under the Trust Fund Statute.); C.R.S. §§ 38-22-127(3), 38-22-119.[30]

## 2.       Plaintiffs Fail to Allege Viable Tennessee  Claims Against The Circle Group

Plaintiff Ceballos asserts two alternative Tennessee based claims against The Circle Group, arising out of drywall work Ceballos alleges he performed at the Nashville SkyHouse project.  The factual basis for these claims is vague and conclusory as to The Circle Group and should be dismissed for failing to meet the *Iqbal/Twombly* pleading standards.

Ceballos does not provide any details concerning his alleged "employment contract" with

---

[29]  C.R.S. § 38-22-127(1) ("All funds disbursed to any contractor or subcontractor under any building, construction, or remodeling contract or on any construction project shall be held in trust for the payment of the subcontractors, laborer or material suppliers, or laborers who have furnished laborers, materials, services, or labor, who have lien, or may have a lien, against the property, or who claim, or may claim, against a principal and surety under the provisions of this article and for which such disbursement was made.")

[30]  ("If the contract or subcontractor has furnished a performance or payment bond or if the owner of the property has executed a written release to the contractor or subcontractor, he need not furnish any such bond or hold such payments or disbursements as trust funds, and the provisions of this section shall not apply.")

The Circle Group, including the essential terms of said contract (salary, term of employment, etc.)  The sparse facts as alleged instead support an employment contract with LA Drywall only.[31]  *Reid v. Express Logistics*, 2001 Tenn. App. LEXIS 870, p. 15 (Tenn. App., Nov. 26, 2001) ("The party seeking to enforce the oral contract must prove the parties entered the contract with mutual assent and must demonstrate the contract's terms are sufficiently definite to be enforceable.  A contract is sufficiently definite if the terms provide "a basis for determining the existence of a breach and for giving an appropriate remedy.")  Dismissal is appropriate at the pleading stage since no terms of the alleged contract have been pleaded.

Similarly, Ceballos fails to allege that he exhausted all remedies against the entity with which he had privity of contract, in this case LA Drywall, a necessary pre-requisite for unjust enrichment claims  in Tennessee.  *Freeman Indus., LLC v. Eastment Chem. Co.*, 172 S.W. 3d 512, 525 (Aug. 25, 2005) ("The plaintiff must further demonstrate that he or she has exhausted all remedies against the person with whom plaintiff enjoyed privity of contract."); *See also Lewis v. MedAssets Net Revenue Sys., LLC*, 2012 U.S. Dist. LEXIS 104714 p. 32 (M.D. Tenn., July 26, 2012) ("In Tennessee, the elements of an unjust enrichment claim are : (1) "[a] benefit conferred upon the defendant by the plaintiff; 2) appreciation by the defendant of such benefit; and 3) acceptance of such benefit under such circumstances that it would be inequitable for him to retain the benefit without payment of the value thereof.")   These claims must be dismissed.

---

[31]  Ceballos alleges "LA Drywall recruited Plaintiff Ceballos for the Nashville project through Ceballos' family member." SAC, p. 12 ¶ 63.  Moreover, when Ceballos, "has not received all of his wages for his work in Tennessee, he was told he should complain to LA Drywall and its agents." SAC, p. 13 ¶ (pp. 71-72).

3.      **Generic State Wage Claim Violations Not Supported by Facts**

Plaintiffs assert a generic claim alleging violations of other state wage laws and seek

recovery on behalf of the Rule 23 Nationwide class against all Defendants, including Jeffrey

Musto, alleging, once again, that all Defendants were "joint employers" of the Rule 23 class.

However, the complaint fails to allege a single "fact" establishing that Jeffrey Musto played any

role in any other  SkyHouse drywall project outside the state of Colorado.  *Cavallaro* (supra) p.

152 ("Courts generally will not conduct full inquiry into collective action allegations at this

stage, but collective action claims must nonetheless create a plausible entitlement to relief by

putative class members to survive a motion to dismiss.")

Even Plaintiff Ceballos, who claims he worked on the SkyHouse Tennessee project, does

not allege a single fact establishing Musto's involvement in that project.  A vague conclusory

allegation that Musto violated the wage laws of other unidentified states without a single

allegation that he even worked in other states is insufficient to meet the *Twombly/Iqbal* pleading

requirements, and should be dismissed.  Plaintiffs' allegations against The Circle Group based on

unidentified violations of other states wage claim laws are likewise conclusory and devoid of

factual support.   None of the Plaintiffs were hired by The Circle Group outside the state of

Colorado, and no facts are alleged supporting an employment contract or relationship with any of

the named Plaintiffs outside the state of Colorado.  In sum, the claim is speculative, conclusory,

and devoid of factual support and should be dismissed pursuant to F.R.C.P. 12(b)(6).

4.      **42 U.S.C. § 1981 Claim Against Circle Group  Also Fails**

Plaintiffs again allege that LA Drywall and The Circle Group were "joint employers" for

purposes of their section 1981 claim.  42 U.S.C. § 1981 does not define "employer" and is not

centered on the employee/employer relationship.  Instead, the plain language of the statute

centers on discrimination arising out of the performance of contractual relationships.[32]  *Perry v.*

*Woodward*, 199 F.3d 1126 (10th Cir., 1999) ("Even as amended, section 1981 continues to center

on the protection of contractual rights.  Although an employee can now seek redress for

discriminatory conduct engaged in by her employer either before or after the formation of the

employment relationship, any claim brought pursuant to section 1981 must still be supported by

an underlying right of the employee to "make and enforce contracts.")

As indicated above, the allegations in the complaint are insufficient to establish the

existence of even an oral employment contract with The Circle Group for any of the Plaintiffs.

All Plaintiffs allege they were hired by LA Drywall, that LA Drywall placed them at the jobsite,

and that LA Drywall paid them through their outsourced payroll and labor relations contractor,

Gulf Coast Construction.  The complaint does not allege sufficient facts to establish any of the

terms of an actual employment contract with The Circle Group to survive dismissal at the

pleading stage, and discrimination claims pursuant to § 1981 against Circle Group should be

dismissed accordingly.

## V.    CONCLUSION

Plaintiffs have failed to properly plead claims I (Breach of the FLSA), II (Breach of

FLSA as amended by EPA), Claim III (Violation of State Wage Laws), Claim V (Violations of

---

[32]  42 U.S.C. § 1981 (a)-(b) ("All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts") ("Makes and enforce contracts" defined.  For purposes of this section, the term "make and enforce contracts" included the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship."

the Colorado Wage Claim Act), Claim XI (Retaliation in Violation of FLSA, CWCA, 29 USC §

215(a); C.R.S. § 8-4-120) against Jeffrey Musto, and the claims against him as an individual

should be dismissed accordingly.  Plaintiffs also failed to properly plead all claims  (Claim I

through XI) against Defendant The Circle Group, LLC.

  WHEREFORE, Defendants The Circle Group, LLC and Jeffrey Musto respectfully

request that the Court dismiss Plaintiffs' Complaint with Prejudice pursuant to F.R.C.P. 12(b)(6).

Dated:  September 20, 2016   Respectfully Submitted,

     By: *s/ Rolf J. von Merveldt III*
       Rolf J. von Merveldt III
       LEWIS BRISBOIS BISGAARD & SMITH LLP
       1700 Lincoln Street, Suite 4000
       Denver, Colorado 80203
       Phone:  303.861.7760
       Rolf.vonmerveldt@lewisbrisbois.com
       *Attorneys for Defendants The Circle Group, LLC*
       *and Jeffrey Musto*

## CERTIFICATE OF SERVICE

I hereby certify that on this 20th day of September, 2016, a true and correct copy of **DEFENDANTS THE CIRCLE GROUP, LLC AND JEFFREY MUSTO's MOTION TO DISMISS** was filed and served electronically through the ECF electronic filing system, which will send notification of the filing to the following

David Hollis Seligman
Alexander Neville Hood
Towards Justice-Denver
1535 High Street, Suite 300
Denver, CO 80218
*Attorneys for Plaintiffs*

Mary J. Lowrey
Sarah J. Parady
Lowrey Parady, LLC
1725 High Street, Suite I
Denver, CO 80218
*Attorneys for Plaintiffs*

Ellie Lockwood
James D. Kilroy
Snell & Wilmer, LLP-Denver
1200 17th Street, Suite 1900
One Tabor Center
Denver, CO 80202
*Attorneys for Defendant L.A.G. Drywall*

Bijan Kasraie
Kasraie & Fodor, LLC
1775 The Exchange, Suite 410
Atlanta, GA 30339
bkasraie@kflawllc.com
*Attorney for Gulf Coast Construction, Inc.*

*s/ Rolf J. von Merveldt III*
A duly signed original is on file at the Law
Offices of LEWIS BRISBOIS