# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLORADO

Civil Case No. 1:16-cv-01329-RBJ

VIOLETA SOLIS,
CESAR SALAZAR,
EDGAR CEBALLOS,
AARON SALAS,
HILDEBERTO ALDECO BALTAZAR,
JUAN RAMON RODRIGUEZ,
ADRIANA LIRA,
NANCY GUTIERREZ,
BEATRIZ MIRAMONTES,
and those similarly situated;

    Plaintiffs,

v.

THE CIRCLE GROUP, LLC,
LA DRYWALL, INC.,
L.A.G. DRYWALL, INC.,
JAVIER MARTINEZ DRYWALL, LLC,
GULF COAST CONSTRUCTION, INC.,
JOSE MENDIOLA (AKA "CABALLO"),
JESUS ORNELAS (AKA "CHUY"),
JAVIER MARTINEZ, and
JEFFREY MUSTO;

    Defendants.

---

**PLAINTIFFS' MOTION FOR COLLECTIVE CERTIFICATION OF THEIR FLSA CLAIMS AGAINST THE CIRCLE GROUP AND L.A.G. DRYWALL AND FOR COURT-APPROVED NOTICE**[1]

---

Plaintiffs request that the Court (1) conditionally certify their Fair Labor Standards Act

---

[1] **Certificate of Compliance with D.Colo.LCivR 7.1A**: The undersigned counsel for Plaintiffs conferred with James Kilroy, counsel for L.A.G. Drywall, Inc., and Alice Powers, counsel for The Circle Group, LLC and Jeffrey Musto, who state that they oppose this motion.

1

(FLSA) claims against The Circle Group, LLC ("Circle Group") and L.A.G. Drywall, Inc. ("LA Drywall"[2]) under 29 U.S.C. § 216(b); (2) order the parties to meet and confer about notice and its method of distribution; (3) order the production of names and contact information for members of the conditionally-certified opt-in class; and (5) toll the statute of limitations applicable to the FLSA claims of opt-in Plaintiffs as of this date (October 17, 2016).

## BACKGROUND

The facts giving rise to Plaintiffs' claims against Circle Group and LA Drywall under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, *et seq.*, are not complicated. Circle Group and LA Drywall together employed Plaintiffs and a number of other drywall workers at the SkyHouse Denver site. They treated all of their workers as independent contractors—in addition to failing to pay them all of their wages, they systematically denied them overtime pay for hours worked in excess of 40 hours per week. Second Amended Compl. ("SAC") ¶¶ 79-80, ECF Doc. No. 55. And yet, Plaintiffs were not independent contractors. Circle Group's and LA Drywall's control over their workers was both extensive and overlapping: they told these workers, including Plaintiffs, when and where to show up to work and what to do each day. SAC ¶¶ 52 & 56.

These practices were not isolated to the SkyHouse Denver site. One of the Plaintiffs—Edgar Ceballos—came to work at SkyHouse Denver after working for both LA Drywall and Circle Group in Tennessee. Just like many of the workers at the SkyHouse Denver site, Ceballos was

---

[2] LA Drywall and L.A.G. Drywall are interrelated LLCs incorporated in Florida. LA Drywall incorporated in 2007 with Raymundo Sanchez Mendiola as President. *See* Exhibit A. Maria Gaona became a representative of LA Drywall in 2010. *Id.* L.A.G. Drywall incorporated in 2012 with Ms. Gaona as President. *Id.* Mr. Sanchez Mendiola, the original President of LA Drywall, became President of L.A.G. Drywall in 2015. *Id.* The two companies shared an address from 2012 to 2013. *See* Exhibit B.

recruited to work at the Tennessee project by LA Drywall and then supervised at the construction site by Circle Group in conjunction with LA Drywall. SAC ¶ 71-72. Just like in Denver, in Tennessee, Ceballos did not receive pay for all of the hours that he worked and never received overtime premiums for hours worked in excess of 40 hours per week. SAC ¶¶ 74-75. After he finished his work in Tennessee, LA Drywall and Circle Group told Plaintiff Ceballos that he could report to Denver for more work on the SkyHouse Denver project. SAC ¶ 73.

Defendants' statements to the media, outside of this litigation, reinforce that LA Drywall and Circle Group have implemented a systematic nationwide policy of treating their drywall employees as independent contractors. Notwithstanding its extensive, acknowledged control over workers, Circle Group seeks to disclaim any employment relationship with drywall workers. Instead, it uses "labor brokers" like LA Drywall to recruit workers. And yet, Circle Group enjoys direct, day-to-day control over its employees. Defendant Musto described himself to a reporter as the "superintendent" of drywall work at the SkyHouse Denver site. He said: "I'm the man who makes the final decisions. I direct everyone in my scope of work what they need to do." SAC ¶ 59; *see also id.* ¶ 60. Meanwhile, LA Drywall workers do not receive overtime because, according to Musto, "That's the way their business is set up." SAC ¶ 91.

Plaintiffs move here for conditional certification under the FLSA to allow other workers to join this lawsuit to seek, among other things, the unpaid overtime premiums that they should have received from Circle Group or LA Drywall if these companies had complied with the FLSA.

## ARGUMENT

**A.  The Courts Should Certify a National FLSA Opt-In Class.**

Class certification under the FLSA, sometimes described as "conditional certification,"

should not be confused with class certification under Federal Rule of Civil Procedure 23. Courts have traditionally granted conditional certification to FLSA classes on a far lesser showing of commonality than is traditionally required under Rule 23. For the reasons described below, Plaintiffs meet that standard. But the Court need not perform that analysis at all—as courts in this District have now explained, FLSA plaintiffs do not have *any* affirmative duty to demonstrate commonality across a putative class before seeking class treatment under the FLSA.

For most claims under federal law, Plaintiffs have access to the procedures described in Rule 23, which allows for class-wide treatment of those who are similarly situated as long as they meet certain prerequisites—numerosity, commonality, typicality, and adequacy—and, for class actions to recover damages like lost wages, two other requirements under Rule 23(b)(3)—predominance and superiority. Fed. R. Civ. P. 23(b)(3). Those requirements are stringent, but in exchange for meeting them, plaintiffs have access to a uniquely robust procedural device. Rule 23(b)(3) actions are so-called "opt-out" class actions, meaning that members of the class benefit from their membership and are bound by the outcome of the litigation unless they take affirmative steps to opt *out* of the class.

The FLSA creates a different mechanism for class-wide adjudication. Like Rule 23, the FLSA provides injured plaintiffs with the right to stand up for other mistreated workers by bringing suit "in behalf of . . . other employees similarly situated." 29 U.S.C. § 216(b). But unlike Rule 23, the FLSA requires "absent" class members to take affirmative steps to opt *in* to the class: "No employee shall be a party plaintiff to [a FLSA class] action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought." *Id.*

As persuasively explained by recent scholarship, that procedure—the affirmative decision

4

to join an action through consent—more directly parallels the permissive joinder mechanism of Rule 20 than the class action procedures of Rule 23.[3] Because of the requirement that class members affirmatively "opt in" before they may be bound, FLSA class claims do not raise any of the due process concerns implicated by class procedures that would bind absent class members. Rather, like Rule 20, FLSA establishes a mechanism for efficiently adjudicating the claims of a number of employees in a single action. Courts should thus treat FLSA opt-in plaintiffs like plaintiffs seeking to join into an action under Rule 20. Under the permissive joinder standard, which similarly covers plaintiffs who affirmatively seek to participate in an already-filed case, plaintiffs may join litigation if "**any** question of law or fact common to all plaintiffs will arise in the action." Fed. R. Civ. P. 20(a)(1)(B) (emphasis added).

This approach is not revolutionary. To "certify" a class under 29 U.S.C. § 216(b), courts in this Circuit and around the country frequently apply a two-step analysis, sometimes described as "conditional certification": first the court makes an initial "notice stage" determination that turns on whether the proposed class members are "similarly situated." *Thiessen v. Gen. Elec. Cap. Corp.*, 267 F.3d 1095, 1102-03 (10th Cir. 2001). This is a "lenient" standard, which requires "nothing more that substantial allegations that the putative class members were together the victims of a single decision, policy or plan." *Boldozier v. Am. Family Mutual Ins. Co.*, 375 F. Supp. 2d 1089, 1092 (D. Colo. 2005) (internal quotation marks omitted). After discovery and after the plaintiffs have had an opportunity to opt into the class, the court makes a second certification determination that is based on a stricter standard, including an analysis of all of the "disparate factual and

---

[3] Scott A. Moss & Nantiya Ruan, *The Second-Class Class Action: How Courts Thwart Wage Rights by Misapplying Class Action Rules*, 61 Am. U. L. Rev. 523, 542 (2012).

employment settings of the individual plaintiffs." *Id.* at 1103.

But, while recognizing the propriety of this two-step certification process, the Tenth Circuit has never foreclosed other approaches. The FLSA opt-in framework, after all, "provide[s] a district court with discretion to [grant or] deny certification for trial management reasons." *Thiessen*, 267 F.3d 1095, 1105 (10th Cir. 2001); *see also Turner v. Chipotle Mexican Grill, Inc.*, 2015 WL 5579579, at *2 (D. Colo. Sept. 23, 2015) ("The Court [in *Thiessen*] did not rule the ad hoc method was either mandatory or exclusive."); *Turner v. Chipotle Mexican Grill, Inc.*, 123 F. Supp. 3d 1300, 1307 (D. Colo. 2015) (observing that *Thiessen* addressed ADEA claims, which are more likely to require a two-step process).

And recent case law from this District provides an alternative "certification" process that does not require the Court to engage in even the lenient two-step analysis. Relying heavily on Moss & Ruan, *supra*, Judge Kane recently observed that the differences between Rule 23 class actions and FLSA collective actions—notably the differences between opting *out* of a class and opting *in* to the class—obviate the need to apply a Rule 23-type class certification analysis to putative FLSA collective actions. *Turner v. Chipotle Mexican Grill, Inc.*, 123 F. Supp. 3d 1300, 1307 (D. Colo. 2015). Applying, instead, joinder principles generally applicable to Rule 20, Judge Kane adopted a rule that "presumptively allow[s] workers bringing the same statutory claim against the same employer to join as a collective, with the understanding that individuals may be challenged and severed from the collective if the basis for their joinder proves erroneous." *Id.* at 1309. In other words, under Judge Kane's approach, where a plaintiff brings FLSA claims against her employer, other employees may join the action and assert their own FLSA claims, subject to the defendant's motion to sever those claims in a procedure analogous to that prescribed by Rule

21 (misjoinder) or Rule 42(b) (severance).[4]

To be sure, there are some procedural distinctions between FLSA collective actions and generally applicable joinder rules. First, the FLSA creates a more efficient mechanism for joining into an action "than joinder or intervention under Federal Rules of Civil Procedure 19, 20, and 24, which [generally] require that either the current plaintiffs move to amend the complaint to add additional plaintiffs." *Turner*, 123 F. Supp. 3d at 1306 (internal quotation marks and alterations omitted). Under the FLSA, an employee can join a pre-existing suit merely by "giving consent in writing." 29 U.S.C. § 216(b). Second, under the FLSA (as under other employment statutes allowing for opt-in representative actions), courts may approve notice to absent class members, thus inviting their participation in a lawsuit. *Hoffmann-La Roche Inc. v. Sperling*, 493 U.S. 165 (1989).

Yet, neither of these differences requires the Court to serve a gate-keeping function that it would not otherwise play under joinder rules. The advantages of court-authorized notice and joinder without amendment are not triggered by a greater degree of similarity between class members in FLSA collective actions than between plaintiffs joined together in a single lawsuit alleging similar claims to each other. Rather, these procedural advantages are prescribed by "the

---

[4] As outlined by Profs. Moss and Ruan, this is a two-step process not unlike that used under *Thiessen*. **First**, "[p]laintiffs should have a recognized right to bring a collective action upon pleading that other workers are similarly situated--and those other workers should have a recognized right to file an opt-in consent without having to file any motion seeking judicial approval." Scott A. Moss, Nantiya Ruan, *The Second-Class Class Action: How Courts Thwart Wage Rights by Misapplying Class Action Rules*, 61 Am. U. L. Rev. 523, 570 (2012). **Second**, "a defense motion is the proper method of redress when plaintiffs try to aggregate § 216(b)-covered claims that vary too widely for the workers to be considered "similarly situated." . . . [C]ourts should handle challenges to § 216(b) collective action status like they handle challenges to Rule 20 joinder of multiple plaintiffs' claims. Specifically, the . . . rules allowing challenges to Rule 20 joinder should apply equally to issues of collective action status under § 216(b)." *Id.*

broad remedial purpose of the Act, which should be given a liberal construction, as well as with the interest of the courts in avoiding multiplicity of suits." *Braunstein v. E. Photographic Labs., Inc.*, 600 F.2d 335, 336 (2d Cir. 1978). In other words, FLSA provides the right to court-approved notice and joinder without amendment without regard to the similarity between the named plaintiffs and potential opt-in plaintiffs.

Even for courts that require some showing that FLSA plaintiffs and putative class members are similarly situated before authorizing notice to putative class members, Judge Kane's approach provides important guidance for streamlining the "conditional certification" process consistent with the purposes and language of the FLSA. First, particularly in cases where a single employer has multiple branches, it may be difficult for the plaintiffs to set out "substantial allegations" of similar mistreatment across branches. After all, the plaintiffs likely only worked at a single branch. *Turner*, 123 F. Supp. 3d at 1302 ("Any qualified Chipotle worker who comes forward as a 'similarly situated' employee may join in the action, subject to severance or other motion for misjoinder as the facts of the case develop. In so ruling, I reject [a] store-by-store approach [to conditional certification]."). Courts should, thus, provide conditional certification without a store-by-store analysis, and then allow FLSA defendants to demonstrate why opt-in plaintiffs from different employer locations were "misjoined."

Second, motions for conditional certification should be filed and considered ***promptly***. While the filing of a Rule 23 class action tolls the statute of limitations applicable to the claims of putative class members, *Am. Pipe & Const. Co. v. Utah*, 414 U.S. 538 (1974), putative FLSA collective action class members are not afforded this protection. For this reason, the parties and the court should move quickly to ensure that injured employees can benefit from FLSA's

procedural device and remedial scheme, and even where moving quickly, courts should toll the statute of limitations to ensure that putative class members' rights are preserved during the pendency of the litigation.

## B. The Court Should Certify an FLSA Opt-In Class

Even under the standard two-step certification process as outlined in *Thiessen*, Plaintiffs easily satisfy the "lenient" standard for FLSA certification at the "notice stage." Generally, "where putative class members are employed in similar positions the allegation that defendants engaged in a pattern or practice of not paying overtime is sufficient to allege that plaintiffs were together the victims of a single, decision, policy or plan." *Chavez v. Excel Services S.E.*, 2014 WL 4651997, at *1 (D. Colo. Sept. 18, 2014) (internal quotation marks omitted). That is exactly what Plaintiffs allege here: the FLSA violation at issue is Circle Group's and LA Drywall's misclassification of hourly employees as independent contractors and refusal to pay those employees their full earned wages or any overtime premiums.

There should be no dispute that this practice commonly affected all of Circle Group's and LA Drywall's employees at SkyHouse Denver. Defendant Musto has admitted that he exercised substantial control over these employees and yet that he implemented LA Drywall's companywide policy of treating these workers as independent contractors. SAC ¶¶ 59, 60, 91. Plaintiffs recall that both Circle Group and LA Drywall exercised substantial control over their work at the SkyHouse Denver site, including by playing a joint role in hiring and supervision. SAC ¶¶ 46-48, 51-56, 58-60, 66, 91, 95-95 98. The starkest illustration of Circle Group's and LA Drywall's joint employment of SkyHouse Denver drywall workers is Defendant Musto's frequent role in deciding whether workers would "sign in" as LA Drywall employees or Circle Group employees. SAC ¶¶

9

54-55. Relatedly, despite the fact that they did the same work at the same job site each day, Circle Group and LA Drywall sometimes split Plaintiffs' hours between them, so that workers received pay stubs reflecting a total of far over 40 hours of work, but no more than 40 hours spent working for one defendant. SAC ¶¶ 105-106. Notwithstanding this complete and shared control of Plaintiffs' labor, neither Circle Group nor LA Drywall ever paid SkyHouse Denver drywall workers overtime premiums for hours in excess of 40 hours per week, and every Plaintiff was paid less than the full number of hours he or she worked. SAC ¶¶ 79-90, 92.

The facts alleged in the Complaint also sufficiently show that these practices were uniform across construction sites around the country because Circle Group and LA Drywall have a uniform nationwide policy of treating their drywall workers as independent contractors and not paying them overtime premiums. For one, Plaintiff Ceballos worked in Tennessee and experienced nearly identical treatment there as he did in Colorado: extensive control over his work exercised jointly by LA Drywall and Circle Group while both employers refused to pay him overtime premiums. SAC ¶¶ 67-77. Furthermore, Defendant Musto has explained that the basis for this treatment is not specific to the SkyHouse Denver location, but rather, represents LA Drywall's companywide policy. SAC ¶ 91.

But even if the Court were not persuaded that Plaintiffs had set forth substantial allegations of a common, nationwide policy that violates the FLSA, it should still grant "conditional certification" and approve notice to a nationwide class. FLSA's remedial purposes counsel in favor of transmitting notice broadly to those who might have been affected by Circle Group's and LA Drywall's illegal practices. *Turner*, 123 F. Supp. 3d at 1306. Those employees will then be able to make an affirmative decision to opt-in to this litigation. If allowing currently-absent class members

to proceed with the Named Plaintiffs in litigation would cause Defendants prejudice or create an undue administrative burden, Defendants can then move to have their claims removed from the case. A "store-by-store approach to conditional certification" would serve only to help insulate from liability pervasive, nationwide FLSA violations committed against low-wage vulnerable workers who may only realize that they have a right to recover against Circle Group after receiving notice of this litigation.

For all of these reasons, the Court should certify a FLSA opt-in class for claims against Circle Group defined as:

> All individuals employed by Circle Group as hourly employees within the statute of limitations.

And a FLSA opt-in class for claims against LA Drywall defined as:

> All individuals employed by LA Drywall as hourly employees within the statute of limitations.

If the Court concludes that Plaintiffs have not established grounds for collective certification of nationwide classes, the Court should at the very least certify classes of hourly employees who have worked in Colorado and Tennessee.

## C. Distribution of Notice

The benefits of the collective action procedure "depend on employees receiving accurate and timely notice concerning the pendency of the collective action, so that they can make informed decisions about whether to participate." *Hoffman-LaRoche Inc. v. Sperling*, 493 U.S. 165, 170 (1989). The Court should order the parties to meet and confer and submit to the Court a proposed notice and method of distribution to class members within 14 days of the Court's order certifying a FLSA opt-in class (or FLSA opt-in classes).

Further, to enable Plaintiff to distribute the Notice, Plaintiffs also move the Court for an order directing Defendants to provide the names and contact information for all potential class members. *Hoffman-LaRoche*, 493 U.S. at 170 ("[t]he District Court was correct to permit discovery of the names and addresses of the discharged employees."); *see also Shockey*, 730 F. Supp. 2d at 1308 ("[D]efendant shall have fourteen (14) days to provide a list of all employees constituting the class, with their last known addresses, phone numbers and dates of employment in an agreeable format for mailing).

### D. The Court Should Toll the Statute of Limitations for All Opt-In Plaintiffs

Finally, Plaintiff requests that the Court toll the statute of limitations pertaining to the FLSA claims of those who choose to opt-in to this action. The statute of limitations applicable to opt-in plaintiffs joining FLSA collective actions generally runs until they file opt-in forms with the court. 29 U.S.C. § 256. But it would be unfair and inefficient to allow the statutes of limitation of potential opt-in plaintiffs to expire before they can receive notice of their right to litigate collectively. Plaintiffs are unable to provide prompt notice because Defendants currently have sole possession of the identities and addresses of the vast majority of potential opt-in Plaintiffs.

In similar circumstances, Courts have remedied delay in issuing notice by tolling the statute of limitations applicable to the claims of opt-in Plaintiffs. *Stransky v. HealthOne of Denver, Inc.*, 868 F. Supp. 2d 1178, 1181-82 (D. Colo. 2012) ("Although early notice to Opt-in Plaintiffs in a collective action such as this is favored, such notice was not possible here as Defendant is in sole possession of the names and last known physical addresses of all potential Opt-in Plaintiffs. As such, allowing Opt-in Plaintiffs' claims to diminish or expire due to circumstances beyond their direct control would be particularly unjust.").

Plaintiffs specifically request that the statute of limitations applicable to the FLSA claims of opt-in Plaintiffs be tolled retroactive to the date on which Plaintiffs filed this motion for approval of notice. Courts often toll potential class members' statute of limitations from the date of the filing of the motion to certify, which sought the production of mailing addresses. *See e.g., Stransky*, 868 F. Supp. 2d at 1182; *see also, In re Bank of America Wage and Hour Employment Litig.*, No. 10-MDL-2138, 2010 WL 4180530 (D. Kan. Oct. 20, 2010) ("[T]he unique circumstance of a collective action 'is not only significant but justifies tolling the limitations period [ ] for the FLSA putative class until the court authorizes the provision of notice to putative class members or issues an order denying the provision of notice.'").

## CONCLUSION

For all of these reasons, the Court should

(1) Grant collective certification under the FLSA of the above-defined classes;
(2) Order the parties to submit a proposed notice and method of distribution to class members within 14 days after certification of a FLSA opt-in class;
(3) Order Defendants Circle Group and LA Drywall to provide Plaintiffs with names and contact information of potential opt-in Plaintiffs within 14 days after certification of a FLSA opt-in class; and
(4) Toll the statute of limitations

Respectfully Submitted,

/s/ David H. Seligman
David H. Seligman
Alexander Hood
Towards Justice
1535 High St., Suite 300
Denver, CO 80218
Tel.: 720-248-8426
Fax: 303-957-2289
Email: david@towardsjustice.org

Attorneys for Plaintiffs

**Certificate of Service**

      I hereby certify that on October 17, 2016, I served a true and correct copy of the forgoing on all parties that have appeared pursuant to F.R.C.P. 5.

                                      s/David H. Seligman

                                      David H. Seligman