**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

Civil Case No. 1:16-cv-01329-RBJ

VIOLETA SOLIS,
CESAR SALAZAR,
EDGAR CEBALLOS,
AARON SALAS,
HILDEBERTO ALDECO BALTAZAR,
JUAN RAMON RODRIGUEZ,
ADRIANA LIRA,
NANCY GUTIERREZ,
BEATRIZ MIRAMONTES,
and those similarly situated;

      Plaintiffs,

v.

THE CIRCLE GROUP, LLC,
L.A.G. DRYWALL, INC. a/k/a LA DRYWALL, INC.,
JAVIER MARTINEZ DRYWALL, LLC, and
GULF COAST CONSTRUCTION, INC.,

      Defendants.

---

**FOURTH AMENDED**
**CLASS AND COLLECTIVE ACTION COMPLAINT AND JURY DEMAND**

---

**INTRODUCTORY STATEMENT**

    1.    This case involves the mistreatment of laborers who install drywall in residential and commercial real estate projects. Many of these projects are chic, visible, and expensive developments in booming cities. For example, in Denver, Plaintiffs and some of the other workers they seek to represent installed drywall in a large residential real estate project at 1776 Broadway, Denver, Colorado ("SkyHouse Denver"). SkyHouse Denver is one of many other SkyHouse projects in urban centers around the country. According to one account, SkyHouse Denver includes the "signature SkyHouse on the top floor of the building [which] includes a club

1

room, swimming pool, and fitness center. The building is targeting next-generation professionals who are choosing to live in urban centers close to public transportation, employment centers, and cultural institutions."

2.      SkyHouse Denver's targeted customers may be "next-generation professionals who are choosing to live in urban centers," but its targeted drywall workers are low-wage, immigrant laborers who are harmed by illegal pay and discrimination practices. Defendants exploit these workers by refusing to pay them for all of the hours they work and, pursuant to an apparent company-wide policy, refusing to pay them overtime premiums for hours worked in excess of 40 per week. Because of the high-pressure nature of drywall work, these workers are frequently required to work far more than 40 hours in a week and often more than 60 hours a week, and yet none of those excess hours are compensated with overtime premiums. They file this lawsuit after months of complaining in vain about their missing wages.

3.      Defendants appear to engage in these illegal practices nationwide. In a recent media account of labor violations at the SkyHouse Denver project, a project superintendent explained that he closely supervised those drywall workers at SkyHouse Denver but that these workers, including Plaintiffs, were treated as "independent contractors" because that is how one of the national corporate Defendants in this case has set up its business.

4.      Additionally, at SkyHouse Denver, Defendants exploited their workers by subjecting them to pervasive sex and race discrimination.  Hispanic/Mexican-born female workers were paid less while performing harder and more dangerous work than other employees. Although many drywall workers did not have experience with drywall work before they began at the SkyHouse Denver location, male workers were given an opportunity to learn to hang and install drywall. Latina workers, on the other hand, were assigned to the role of Cleaner/Laborer,

where they were tasked with cleaning, moving, and scraping debris off of the walls and the floors. While at work, they were subjected to catcalls and taunts.

5.     In addition, *all* Hispanic/Mexican-born employees were subjected to pervasive harassment, jokes, and slurs based on their race, ethnicity, and national origin, and were more likely to be underpaid than other workers.  When Plaintiff Solis asked her boss whether her employers would pay her the wages she had earned through her hard work, he laughed and called her a "poor Mexican."

## JURISDICTION AND VENUE

6.     This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1331 (federal question), and supplemental jurisdiction pursuant to 28 U.S.C. § 1367 over Plaintiffs' related claims under state law.

7.     Venue is proper pursuant to 28 U.S.C. § 1391. A substantial part of the events giving rise to Plaintiffs' claims occurred in this District, where SkyHouse Denver is located.

## ADMINISTRATIVE EXHAUSTION

8.     Plaintiff Solis filed Charges of Discrimination with the Equal Employment Opportunity Commission ("EEOC") against Defendants The Circle Group, LLC (Charge No. 541-2016-01845), Gulf Coast Construction, Inc. (Charge No. 541-2016-01848),[1] and LA Drywall, Inc. (Charge No. 541-2016-01847) on May 31, 2016, alleging discrimination on the basis of sex, race, national origin, and ancestry, in violation of Title VII, and sex-based disparities in pay, in violation of the EPA.

---

[1] Gulf Coast Construction, Inc. has filed for bankruptcy and all claims against it are subject to an automatic stay.  Accordingly, only claims already filed against Gulf Coast prior to imposition of the stay, and not additional claims which Plaintiffs may assert after the stay is lifted, are included in this Fourth Amended Complaint.

9.      Plaintiff Solis received Notices of Right to Sue from the EEOC on June 21, 2016 on each of her Charges of Discrimination.

10.      Plaintiff Lira filed Charges of Discrimination with the EEOC against Defendants The Circle Group, LLC (Charge No. 541-2016-01843), Gulf Coast Construction, Inc. (Charge No. 541-2016-01844), and Javier Martinez Drywall, Inc. (Charge No. 541-2016-01842) on May 31, 2016, alleging discrimination on the basis of sex, race, national origin, and ancestry, in violation of Title VII, and sex-based disparities in pay, in violation of the EPA.

11.      Plaintiff Lira filed an additional Charge of Discrimination with the EEOC against Defendant LA Drywall, Inc. a/k/a L.A.G. Drywall, Inc. (Charge No. 541-2016-01977) on June 20, 2016, alleging discrimination on the basis of sex, race, national origin, and ancestry, in violation of Title VII, and sex-based disparities in pay, in violation of the EPA.

12.      Plaintiff Aldeco Baltazar filed Charges of Discrimination with the EEOC against Defendants The Circle Group, LLC (Charge No. 541-2016-01983), Gulf Coast Construction, Inc. (Charge No. 541-2016-01984), and LA Drywall, Inc. a/k/a L.A.G. Drywall, Inc. (Charge No. 541-2016-01985) on June 20, 2016, alleging discrimination on the basis of race, national origin, and ancestry, in violation of Title VII.

13.      Plaintiff Salas filed Charges of Discrimination with the EEOC against Defendants The Circle Group, LLC (Charge No. 541-2016-01978), Gulf Coast Construction, Inc. (Charge No. 541-2016-01979), and LA Drywall, Inc. a/k/a L.A.G. Drywall, Inc. (Charge No. 541-2016-01980) on June 20, 2016, alleging discrimination on the basis of race, national origin, and ancestry, in violation of Title VII.

14.      Plaintiffs Lira, Aldeco Baltazar, and Salas received Notices of Right to Sue from the EEOC on June 30, 2016 on each of their Charges of Discrimination.

15.     Plaintiff Rodriguez filed Charges of Discrimination with the EEOC against Defendants The Circle Group, LLC (Charge No. 541-2016-02156) and L.A.G. Drywall, Inc. a/k/a LA Drywall, Inc. (Charge No. 541-2016-02157).

16.     Plaintiff Rodriguez received his Notices of Right to Sue from the EEOC on July 26, 2016.

17.     Plaintiff Gutierrez filed Charges of Discrimination with the EEOC against Defendants The Circle Group, LLC (Charge No. 541-2016-02225) and L.A.G. Drywall, Inc. a/k/a LA Drywall, Inc. (Charge No. 541-2016- 02224).

18.     Plaintiff Miramontes filed Charges of Discrimination with the EEOC against Defendants The Circle Group, LLC (Charge No. 541-2016-02216) and L.A.G. Drywall, Inc. a/k/a LA Drywall, Inc. (Charge No. 541-2016-02223).

19.     Plaintiffs Gutierrez and Miramontes received their Notices of Right to Sue from the EEOC on August 2, 2016.

20.     Plaintiff Ceballos filed Charges of Discrimination with the EEOC against Defendants The Circle Group, LLC (Charge No. 541-2016-02411) and L.A.G. Drywall, Inc. a/k/a LA Drywall, Inc. (Charge No. 541-2016-02412).

21.     Plaintiffs Ceballos received his Notices of Right to Sue from the EEOC on August 31, 2016.

22.     Plaintiff Salazar filed Charges of Discrimination with the EEOC against Defendants The Circle Group, LLC (Charge No. 541-2016-02384) and L.A.G. Drywall, Inc. a/k/a LA Drywall, Inc. (Charge No. 541-2016-02385).

23.     Plaintiff Salazar received his Notices of Right to Sue from the EEOC on September 1, 2016.

24.     Plaintiffs Solis, Lira, Aldeco Baltazar, Salas, Rodriguez, Gutierrez, Miramontes, Ceballos and Salazar have exhausted all administrative remedies and this action is timely filed.

25.     All of the foregoing Charges were filed on behalf of the Plaintiff Charging Party and all those similarly situated.

26.     Each Plaintiff in this Complaint is a member of the group of those similarly situated to Plaintiffs Solis, Lira, Aldeco Baltazar, Salas, Rodriguez, Gutierrez, Miramontes, Ceballos and/or Salazar for purposes of Title VII and/or the EPA.

27.     Accordingly, all Plaintiffs, and all others similarly situated, have exhausted their administrative remedies and this action is timely filed as a Rule 23 class action on their behalf.

## PLAINTIFFS

28.     At all times material to the allegations of the complaint, Plaintiffs Aaron Salas, Cesar Salazar, Hildeberto Aldeco Baltazar, Violeta Solis, Juan Ramon Rodriguez, Adriana Lira, Nancy Gutierrez, and Beatriz Miramontes were domiciled in the District of Colorado.

29.     While in Colorado, these Plaintiffs worked on the SkyHouse Denver project and were employed by corporate entities that included Defendants The Circle Group, LLC (hereinafter "Circle Group"), L.A.G. Drywall, Inc., also known as LA Drywall, Inc. (hereinafter "L.A.G. Drywall"), and Gulf Coast Construction, Inc. (hereinafter "Gulf Coast Construction" or "Gulf Coast").  One Plaintiff, Adriana Lira, was also employed by Defendant Javier Martinez Drywall, LLC (hereinafter "Javier Martinez Drywall").

30.     In November 2015, Plaintiff Edgar Ceballos was domiciled in Tennessee.

31.     While in Tennessee, Plaintiff Ceballos performed drywall work as an employee of Circle Group, L.A.G. Drywall, and Gulf Coast Construction.

32.     After leaving Nashville, Plaintiff Ceballos travelled to Denver and became domiciled in the District of Colorado.

6

33.     While in Colorado, Plaintiff Ceballos worked on the SkyHouse Denver project as an employee of, among others, Circle Group, L.A.G. Drywall, and Gulf Coast Construction.

34.     Plaintiffs Solis, Lira, Gutierrez and Miramontes (collectively the "Female Named Plaintiffs") worked as Cleaner/Laborers for Defendants at SkyHouse Denver.  Their work involved clean-up and disposal of debris related to drywall installation.

35.     Plaintiffs Salazar, Ceballos, Salas, Aldeco Baltazar, and Rodriguez (collectively the "Male Named Plaintiffs") worked as Drywallers for Defendants at SkyHouse Denver.  Their work involved various aspects of the drywall mounting process including drywall installation and framing.

36.     Plaintiffs have each signed written consent to be named Plaintiffs in a FLSA collective action.  The signed consent forms for Plaintiffs Solis, Salazar, Ceballo, Salas, Aldeco Baltazar and Rodriguez are filed in this case at ECF Doc. No. 9.  The signed consent forms for Plaintiffs Lira, Gutierrrez and Miramontes are at ECF Doc. No. 96.

37.     During their work for Defendants, Plaintiffs' work involved interstate commerce. Plaintiffs handled goods, tools, and materials transmitted in interstate commerce, and worked with employees who had moved for the purpose of working for Defendants or had themselves moved to work for Defendants.

38.     The work Plaintiffs performed for Circle Group, L.A.G. Drywall, Javier Martinez Drywall, and Gulf Coast Construction was integral to their businesses because the principal purpose of these businesses is the installation of drywall, which cannot be done without drywall installers like the Plaintiffs.

39.     Plaintiffs did not exercise any managerial control that affected an opportunity for profit or loss.

## DEFENDANTS

40.     Defendant Circle Group is a Georgia Limited Liability Company with its principal place of business in Georgia.

41.     Defendant Circle Group is a large, national drywall subcontractor that performs work for residential and commercial development projects around the United States. It installs tens of millions of square feet of drywall per year in projects around the country.

42.     Circle Group subcontracts with other companies known as "labor brokers" to recruit employees and to transport these employees around the United States to perform work related to the installation of drywall.  These labor brokers are middlemen or intermediaries that facilitate connections between employees and Circle Group and help Circle Group supervise employees on job sites.

43.     Defendant L.A.G. Drywall, Inc. is a Florida for Profit Corporation with its principal place of business in Georgia.  L.A.G. Drywall, Inc. is one of the labor brokers that frequently works with Circle Group to recruit, transport, and supervise employees.  L.A.G. Drywall, Inc.'s primary function is recruiting and supervising drywall labor.  L.A.G. Drywall is also known as LA Drywall and is an alter ego of a company previously incorporated under the name "LA Drywall" with the same principals and place of business as L.A.G. Drywall.

44.     Javier Martinez Drywall, LLC (hereinafter "Javier Martinez Drywall") is a Colorado Limited Liability Company with its principal place of business in Colorado. It is one of Circle Group's labor brokers. Javier Martinez Drywall's primary function is recruiting and supervising drywall labor.

45.     Gulf Coast Construction, Inc. is a Georgia For Profit Corporation with its principal place of business in Georgia. The checks that Circle Group and the other Defendants use to pay workers are often from Gulf Coast.

8

46.     Defendants each have an annual revenue of more than $500,000 per year and collectively were an enterprise with annual revenue of more than $500,000 per year.

47.     Defendants' operations are highly interrelated, because Defendants work together on multiple construction projects around the U.S., for which they jointly recruit and supervise employees to perform drywall services (Defendants' primary business). Defendants' control of labor relations is centralized, with payroll for all employees of Defendants coming from Gulf Coast Construction. Defendants share common managers who jointly supervise the work of employees and who direct that work on behalf of all Defendants interchangeably.

**STATEMENT OF FACTS SUPPORTING JOINT EMPLOYMENT**

48.     In the period between September 2015 and the present, each Plaintiff entered into an employment relationship with Circle Group, L.A.G. Drywall, Javier Martinez Drywall, and Gulf Coast Construction, to provide drywall labor at the SkyHouse Denver project.

49.     Defendants are joint employers of all Plaintiffs, except that Defendant Javier Martinez Drywall is not a joint employer of Plaintiffs or class members working outside Colorado.

50.     Each Defendant had a major role in controlling Plaintiffs' work on a day-to-day basis, including hiring, setting rates of pay, work assignments, safety training, and transportation, direction of work through supervisors, and decisions about how many of Plaintiffs' hours of work would be compensated and how and when Plaintiffs would be paid.

**A.  Defendants' Participation in Hiring Workers.**

51.     Plaintiffs Solis and Aldeco Baltazar were hired by Jesus "Chuy" Ornelas.

52.     Plaintiff Lira was hired by Javier Martinez, the owner of Defendant Javier Martinez Drywall.

53.     Soon after she was recruited, Ms. Lira was told that she was being "switched" from Javier Martinez Drywall to L.A.G. Drywall and that she now worked for Juan "Caballo" Mendiola. This formal change did not alter her day-to-day employment.

54.     Mr. Ornelas and Mr. Mendiola held themselves out to Plaintiffs as supervisors for L.A.G. Drywall, which they commonly referred to as "LA Drywall."

55.     According to L.A.G. Drywall, Mr. Mendiola was directly employed by Gulf Coast Construction until after the filing of this lawsuit, when he became employed directly by L.A.G. Drywall due to Gulf Coast's bankruptcy filing.

56.     Upon information and belief, Gulf Coast Construction sometimes recruits employees to work for L.A.G. Drywall.

57.     However, Gulf Coast does not play a role in supervising employees at construction sites.

58.     Upon information and belief, Mr. Mendiola is a relative of the President of L.A.G. Drywall, Raymundo Sanchez, and its Vice-Presidents, Maria Sanchez and Mariana Sanchez-Mendiola.

59.     Specifically, Plaintiffs were told that Mr. Mendiola was the cousin of Raymundo Sanchez.

60.     Plaintiffs Gutierrez and Miramontes were hired by Mr. Mendiola.

61.     Plaintiff Salazar and Salas were hired by Mr. Ornelas and Jeffrey Musto, an employee of Circle Group.

62.     Plaintiff Ceballos was hired by Mr. Mendiola to work at Skyhouse Denver after working at Skyhouse Nashville.

63.     As an example of Defendants' hiring practices, Plaintiff Salazar was hired after responding to a Craigslist ad.

64.     When Mr. Salazar called the number in the ad, Mr. Ornelas answered and introduced himself as Chuy.  Mr. Salazar had trouble understanding him, so eventually Mr. Ornelas passed the phone to Mr. Musto, who introduced himself as Jeff.

65.     Mr. Musto said he worked for a drywall company from Atlanta called Circle Group.

66.     Mr. Musto told Plaintiff Salazar where and when to come and meet with him and Mr. Ornelas the following day.   He told Plaintiff Salazar that he would recognize him by his vest, which had Circle Group's logo on it.

67.     Plaintiff Salazar met with Mr. Musto and Mr. Ornelas at the church across the street from 1776 Broadway the next day, and they told him he was hired.  At this meeting, they discussed Plaintiff Salazar's rate of pay.

68.     When Plaintiff Salazar filled out his hire paperwork, he noticed that it contained the logos of several different companies.  He asked Mr. Musto to clarify who he worked for, and he was told he worked for Circle Group.

69.     Plaintiff Ceballos and some other members of the putative Colorado Classes were recruited by L.A.G. Drywall to travel to Denver to perform drywall labor on the SkyHouse Denver project.

70.     Plaintiff Ceballos spoke to Mr. Mendiola on the phone from Tennessee and was hired to work on the SkyHouse Denver project in Colorado.

71.     In its contracts with L.A.G. Drywall governing work at SkyHouse sites, Circle Group dictated workers' rates of pay.

72.     In its contracts with Gulf Coast Construction governing work at SkyHouse sites, L.A.G. Drywall dictated workers' rates of pay.

73.     Plaintiffs were told their rate of pay by whomever hired them.  However, they were often not paid the amount originally quoted to them.

74.     For example, Plaintiff Solis was told by Mr. Ornelas that she would be given one rate of pay, but was actually paid less.

75.     Mr. Ornelas told Plaintiff Rodriguez when he was hired that he would be paid $17/hour.  Instead, he was paid $15/hour.  Later, Mr. Musto told Plaintiff Rodriguez that his pay was being cut from $15/hour to $12/hour and that if he didn't like it he could leave.

76.     As another example, Plaintiff Ceballos agreed to come work in Colorado because Mr. Mendiola promised him a particular rate of pay by phone, but when he got to Colorado he was paid at a lower rate.

**B.  Defendants' Participation in Supervision and Setting Work Rules.**

77.     While working on the SkyHouse Denver site, Plaintiffs were managed and supervised by agents of L.A.G. Drywall and Circle Group, including Mr. Musto, Mr. Ornelas and Mr. Mendiola.

78.     Circle Group, L.A.G. Drywall agents including Mr. Musto, Mr. Ornelas and Mr. Mendiola told Plaintiffs when they needed to arrive at work and when they could leave work each day.  Plaintiffs were not free to come and go as they pleased.

79.     Circle Group superintendent Jeffrey Musto drove Plaintiff Salazar to and from work.

80.     Each day Plaintiffs reported to work, they signed in on sheets provided by L.A.G. Drywall and Circle Group.

81.     On some occasions, when Plaintiffs arrived at the worksite, they walked past a Circle Group agent (typically Mr. Musto) sitting behind two different time sheets. One time sheet was for workers designated as working for L.A.G. Drywall that day. The other time sheet was for workers designated as working for Circle Group that day. Plaintiffs would be directed to sign one sheet or the other, and might be directed to sign in for Circle Group one day and L.A.G. Drywall another day.

82.     On other occasions, Plaintiffs signed time sheets for both L.A.G. Drywall and Circle Group on the same day.

83.     Plaintiff Salazar was sometimes told by Mr. Ornelas that he was "lending him over" to Mr. Musto for the day.

84.     Plaintiff Ceballos was sometimes told by Mr. Mendiola how to split his hours between Circle Group and L.A.G. Drywall on a particular work day.

85.     Circle Group and L.A.G. Drywall agents including Mr. Musto, Mr. Ornelas and Mr. Mendiola jointly supervised Plaintiffs' day-to-day work.

86.     In addition, Javier Martinez Drywall owner Javier Martinez initially supervised Plaintiff Lira's work.

87.     Each of the Male Named Plaintiffs was given orders at various times regarding when to come to work, what assignments to work on, and when to leave by each of the following individuals: Mr. Ornelas, Mr. Mendiola, and Mr. Musto.

88.     Plaintiff Rodriguez was also sometimes supervised by a man named Yardel.

89.     The Female Named Plaintiffs were supervised by Mr. Musto, Rhonda (last name unknown), and Chre Houston. Sometimes, they were supervised and directed by Mr. Martinez, Mr. Ornelas, or Mr. Mendiola or by another supervisor named Stuart Ronis.

90.     Mr. Musto, Rhonda, Ms. Houston, and Mr. Ronis were employed by Defendant Circle Group.

91.     Mr. Ronis supervised Plaintiff Ceballos at the SkyHouse Nashville project, and came to Denver around the same time as Plaintiff Ceballos to work as a supervisor for the SkyHouse Denver project.

92.     Mr. Musto was the "superintendent" of drywall work at SkyHouse Denver.

93.     Mr. Musto made daily decisions about what floor all of the drywall workers would be assigned to and directed individual workers including Plaintiffs regarding where to work that day.

94.     Mr. Musto has stated to the media "I'm the man who makes the final decisions. I direct everyone in my scope of work what they need to do."

95.     He has also said that most of the directions workers received "came from [his] mouth."

96.     Mr. Musto told the Male Named Plaintiffs that if he was not there, Rhonda was in charge and to do as she told them.

97.     Mr. Musto was in charge of regular meetings of all of the drywall workers at the job site, including Plaintiffs.  At the meetings, Mr. Musto would talk about safety rules, what work needed to be done, and how the project was progressing.

98.     At the meetings, Plaintiffs were sometimes asked to sign Safety Meeting Outlines with the Circle Group logo on them.

99.     According to Defendant Circle Group, it directly employed some drywall and cleaning workers at the SkyHouse Denver site, including Juan de la Torre, Brittney Walker, Anthony Humildad, and Emmet Lee Morris.

100.     Juan de la Torre worked alongside Plaintiffs Salazar, Ceballos, Salas, Aldeco Baltazar and Rodriguez, on the same crew and directed by the same supervisors.

101.     Ms. Walker, Mr. Humildad and Mr. Morris worked alongside Plaintiffs Solis, Lira, Gutierrez and Miramontes as cleaner/laborers, on the same crew and directed by the same supervisors.

102.     Most of the tools and equipment for Plaintiffs' work on the SkyHouse Denver project were provided to Plaintiffs by Defendants.

**C.  Defendants' Role in Paying Wages.**

103.     When Plaintiffs received wages for their work on the SkyHouse Denver project, those wages usually came in the form of checks from Gulf Coast Construction.

104.     Gulf Coast Construction manages payroll for a single company, L.A.G. Drywall.

105.     One hundred percent of Gulf Coast's revenues come from L.A.G. Drywall for the purpose of paying employees' wages, and one hundred percent of these revenues are then distributed to employees via payroll.  Gulf Coast does not earn a profit.

106.     Gulf Coast Construction has managed payroll for L.A.G. Drywall for sites around the country, including SkyHouse Denver and SkyHouse Nashville.

107.     Gulf Coast Construction carries workers' compensation insurance for the employees it pays on behalf of L.A.G. Drywall.

108.     At SkyHouse Denver, Paychecks were distributed on Fridays.

109.     Some of the Plaintiffs, including both drywallers and cleaner/laborers, received their paychecks from Circle Group employee Rhonda, and others received their paychecks from L.A.G. Drywall agent Mr. Mendiola.

110.    Some Plaintiffs, including Plaintiff Solis and Plaintiff Lira, received some pay checks from Gulf Coast Construction which bore the signature of Mariana Sanchez, a Vice President of Defendant L.A.G. Drywall.

111.    In the first few weeks of his employment, before he began receiving checks from Gulf Coast Construction given to him by Rhonda, Plaintiff Salazar would be given his pay in cash by Mr. Ornelas.

112.    The switch to paper checks came after Plaintiff Salazar met a man named Raymundo Sanchez who came to the job site and was writing on a pad of paper.

113.    Mr. Ornelas told Plaintiff Salazar that Mr. Sanchez was the owner of L.A.G. Drywall and that he was taking down the workers' names so that they could start using paychecks and Mr. Ornelas would not have to carry around so much cash.

114.    Plaintiff Lira initially received pay checks from Defendant Javier Martinez Drywall, but then began to receive pay checks from Gulf Coast Construction when she was "switched" to work for L.A.G. Drywall.

**D.  Defendants' Role in Terminating Workers.**

115.    In its contracts with L.A.G. Drywall governing work at SkyHouse sites, Circle Group retained the right to terminate employees.

116.    L.A.G. Drywall also had the power to terminate employees at the SkyHouse sites.

117.    As discussed below, Circle Group superintendent Jeffrey Musto terminated Plaintiff Salazar.

118.    Musto terminated another worker named Felipe.

119.    Musto also threatened to terminate Plaintiff Rodriguez.

16

120.     Upon information and belief, L.A.G. Drywall agents terminated the employment of other employees at the SkyHouse Denver site.

**E. Additional Facts Regarding Defendants' Joint Employment of Workers at SkyHouse Nashville.**

121.     In November 2015, Plaintiff Ceballos entered into an employment relationship with Circle Group, L.A.G. Drywall, and Gulf Coast Construction to provide drywall labor on a large development project in Nashville.

122.     These companies had the same relationships with each other and with project workers as described above with regard to SkyHouse Denver.

123.     L.A.G. Drywall recruited Plaintiff Ceballos for the Nashville project through Ceballos's family member.

124.     During his work in Nashville, Plaintiff Ceballos was supervised by individuals who told him they worked for Circle Group, including Mr. Ronis, and by other individuals who told him they worked for "LA Drywall."

125.     When Plaintiff Ceballos received wages for his work on the Nashville project those wages came in the form of a check from Gulf Coast Construction.

## STATEMENT OF FACTS SUPPORTING PLAINTIFFS' WAGE-AND-HOUR CLAIMS

**A. Defendants' Failure to Pay for All Hours Worked & Failure to Pay Overtime for Hours Worked in Excess of 40 Hours Per Week**

126.     In the course of their work for Defendants in both Colorado and Tennessee, Plaintiffs frequently worked more than 40 hours per week, sometimes far in excess of 40 hours per week.  Plaintiffs worked at least 6 days per week and often worked 7 days per week for long hours each day.

127.    No matter how many hours they worked, Plaintiffs were never paid overtime premiums for hours worked in excess of 40 hours per week. When they were paid for their work, they were paid the same wage for every hour they worked during the week.

128.    Plaintiffs were also frequently denied pay entirely for some of the hours they worked.

129.    As one example, during the week ending on October 25, 2015, Plaintiff Solis worked 56 hours but was paid for only 46 hours of work.  During this same week, Plaintiff Solis was not paid *any* overtime pay.  Instead, she was paid at straight pay for 46 hours of the hours she worked.

130.    As another example, during the week ending on October 25, 2015, Plaintiff Salazar worked 64 hours but was paid for only 59 hours of work.  During this same week, Plaintiff Salazar was not paid *any* overtime pay.  Instead, he was paid at straight pay for 59 of the hours he worked.

131.    As another example, during the week ending on January 8, 2016, Plaintiff Ceballos worked 58 hours but was paid for only 35 hours of work.  Of course, Plaintiff Ceballos received no overtime pay for his hours worked over 40, because he was not paid for these hours at all.

132.    As another example, during the week ending on October 25, 2015, Plaintiff Salas worked for 56 hours but was paid for only 46 hours of work at straight pay, and was not paid time and a half for any hours worked over 40.   Plaintiff Salas was routinely underpaid by 10 hours for work performed during the course of a week on the SkyHouse Denver project.

133.    As another example, for the week ending on October 11, 2015, Plaintiff Aldeco Baltazar worked 56 hours but was paid for only 30 hours.  Similarly, during the week ending on

September 27, 2015, Plaintiff Aldeco Baltazar worked for 56 hours, but was paid for only 48 hours of work at straight pay and was not paid time and a half for any hours worked over 40.

134.    As another example, for the week ending on October 3, 2015, Plaintiff Rodriguez was paid short 10 hours and was paid only at straight pay despite working 57 hours.

135.    As another example, Plaintiff Lira routinely worked 64 hours per week one week, but was only paid for 44 hours of work.  During the week ending on February 19, 2016, she was paid for 44 hours of work at straight pay but was not paid time and a half for any hours worked over 40.

136.    As another example, for the week ending on February 26, 2016, Plaintiff Gutierrez worked at least 60 hours, but was paid for only 48 hours of work at straight pay and was not paid time and a half for any hours worked over 40.

137.    As another example, for the week ending on February 5, 2016, Plaintiff Miramontes worked at least 58 hours, but was paid for only 45 hours of work at straight pay and was not paid time and a half for any hours worked over 40.

138.    Plaintiff Ceballos was not paid for all hours worked in Tennessee and was not paid any overtime premiums for hours worked over 40.

139.    For example, during the week ending on November 20, 2015, Plaintiff Ceballos worked approximately 56 hours, but was paid for only 45 hours of work.  Moreover, he was paid entirely at straight pay, with no overtime premium for hours worked over 40.

140.    Mr. Musto has admitted that drywall workers did not always get paid for all hours worked at the SkyHouse Denver project, stating that he "went back" and paid workers for some missed hours himself.

**B.  Defendants Knew or Should Have Known That Plaintiffs Were Entitled to Minimum Wage, Overtime, and Pay for all of the Hours they Worked**

141.    Defendants knew or should have known that Plaintiffs were entitled to minimum wage, overtime, and pay for all of the hours they worked.

142.    Plaintiffs were subject to the daily and direct supervision and control of Defendants.

143.    Plaintiffs Salas, Solis, Salazar, Ceballos, Salas, Aldeco Baltazar, and Rodriguez, along with others similarly situated, each complained to Defendants about their missed pay.

144.    Notwithstanding these complaints, Defendants continued to deny Plaintiffs and putative class members pay for all of the hours they worked and, as a routine policy, denied Plaintiffs overtime pay for hours worked in excess of 40 hours per week.

145.    As an example, Plaintiff Salas complained to Mr. Musto about missed pay and was told to speak to Mr. Ornelas.  He then spoke to Mr. Ornelas and was told to speak to Mr. Mendiola.  Mr. Mendiola sent him back to Mr. Ornelas, who told him "the problem is in the office."

146.    As another example, Plaintiff Salas also asked Rhonda for his check because she was the one who typically gave it to him, but she said "I don't know anything."

147.    As another example, Plaintiff Solis asked Mr. Ornelas repeatedly about her missing pay and he told her he would fix it, but never did.

148.    As another example, Plaintiff Salazar complained to Mr. Musto repeatedly about his missing pay.  Mr. Musto told him to complain to Mr. Ornelas, so he did.

149.    Mr. Mendiola later came to the work site and told Plaintiff Salazar and other class members that he had been sent by Raymundo Sanchez to handle the problems with missing pay, but Plaintiff Salazar was still not paid what he was owed.

150.    As another example, when Plaintiff Ceballos did not receive all of his wages for his work in Tennessee, he was told he should complain to L.A.G. Drywall and its agents.

151.    He complained to Mr. Mendiola and Mr. Ornelas, but he was never paid all of his legal wages for his work in Tennessee.

152.    Plaintiff Ceballos also complained directly to Raymundo Sanchez about missing pay from his work in both Tennessee and Colorado when Sanchez visited the SkyHouse Denver work site.

153.    Defendants' agents also made comments indicating that they knew Plaintiffs and others had not been paid all wages legally owed to them.

154.    On at least one occasion, Mr. Ornelas informed Plaintiff Salazar that "they," meaning L.A.G. Drywall, had 1000 employees and "only one person doing payroll." Therefore, Ornelas explained, Plaintiff Salazar would have to be patient about receiving his wages.

155.    Upon information and belief, Mr. Ornelas was referring to the owner of Gulf Coast Construction, Cesar Tenorio, when he stated that L.A.G. Drywall only had one person doing payroll.

156.    Mr. Musto has stated publicly that the drywall workers at SkyHouse who were also employed by L.A.G. Drywall, including all of the Plaintiffs, were treated as independent contractors and not as employees because "[t]hat's the way their business is set up."

157.    Defendants' intentional failure to pay overtime is further demonstrated by a scheme they utilized to avoid paying overtime hours.

158.    On many of Plaintiffs' pay stubs, Defendants arbitrarily split Plaintiffs' hours between Circle Group and one of the other Defendants, so that the pay stub did not reflect more than 40 hours worked for either entity.

159.    Instead, Plaintiffs' pay stubs would reflect less than 40 worked for Defendant Circle Group and, on a separate line, less than 40 hours worked for another Defendant, all paid at straight pay.

160.    Defendants did this in an intentional attempt to avoid paying overtime.

161.    When they did this, Defendants knew that Plaintiffs were in fact working for all of them as joint employers and were not working two separate jobs, and also knew that they owed Plaintiffs overtime pay for all hours worked over 40 regardless of which Defendant the hours were arbitrarily assigned to.

**C.  Defendants Retaliated Against Plaintiffs and Others Similarly Situated for Their Complaints About Missing Wages.**

162.    On some occasions, Defendants punished Plaintiffs or others similarly situated who complained about not receiving wages.

163.    Defendants lowered the pay rate of all of the female Cleaner/Laborer employees including Plaintiffs Lira, Gutierrez and Miramontes after a similarly situated employee named Leslie Rivera complained about their unpaid wages in early 2016.

164.    Defendants also terminated the employment of some Plaintiffs and others similarly situated when they complained about not receiving wages.

165.    In or around late October of 2015, Mr. Musto terminated Plaintiff Salazar's employment because of his complaints about unpaid wages combined with animus against him as a Latino worker.

166.    That day, Mr. Musto approach Plaintiff Salazar as he worked and began yelling at Salazar.

167.    Plaintiff Salazar defended himself by telling Mr. Musto, "You guys don't even pay me."

168.    As discussed above, Salazar had previously complained to Mr. Musto about his lost wages on multiple occasions.

169.    After Plaintiff Salazar made this comment, Mr. Musto grabbed a tool he was using and threw it down the hall, while cursing at Plaintiff Salazar and threatening to kick and beat him.

170.    Mr. Musto then told Plaintiff Salazar, "Get the fuck out of here."

171.    Plaintiff Salazar's employment was terminated and he did not return to work after this day.

172.    Plaintiff Rodriguez was constructively discharged by Defendants in retaliation for his wage complaints.

173.    In about February of 2016, Plaintiff Rodriguez told Mr. Musto that he was leaving because they owed him a lot of money and had reduced his hourly rate.

174.    Mr. Musto screamed at Plaintiff Rodriguez that he would call the police and immigration about him, then pushed Plaintiff Rodriguez.

175.    Mr. Musto also terminated the employment of a worker named Felipe [Last Name Unknown] after he complained about missing wages.

176.    Defendants also terminated the employment of a worker named Alejandro [Last Name Unknown] after he complained about missing wages.

## STATEMENT OF FACTS SUPPORTING PLAINTIFFS' DISCRIMINATION CLAIMS

**A.  Sex, Race and National Origin Discrimination Against Female Workers.**

177.    The Female Named Plaintiffs are Hispanic women of Mexican national origin and ancestry.

23

178.    The Female Named Plaintiffs and other female workers were assigned to "Cleaner/Laborer" positions when they applied for work, and were not given the opportunity to work as Drywallers.

179.    Plaintiff Lira was promised by Defendants that she would be trained to use a screw gun and eventually work as a Drywaller.  However, she was quickly assigned to work as a Cleaner/Laborer, and was never trained to use a screw gun or become a Drywaller.

180.    Plaintiffs Solis, Gutierrez and Miramontes were assigned to work as Cleaner/Laborers and never given the option to work as Drywallers even though they would have preferred that assignment.

181.    Upon information and belief, no women worked as Drywallers at SkyHouse Denver project, because Defendants refused to hire women to work as Drywallers.

182.    Male employees without drywall experience were hired by Defendants to work as Drywallers at SkyHouse Denver project.

183.    For example, Plaintiff Salazar had no drywall experience before he was hired as a drywaller at the SkyHouse Denver project.

184.    Cleaner/Laborer employees including the Female Named Plaintiffs were paid less than Drywallers.

185.    Working as a Cleaner/Laborer was heavier, more physically demanding work than working as a Drywaller. Cleaner/Laborers had to lift heavy pieces of drywall and other debris and make constant trips to throw the debris into the dumpster. They also had to scrape debris off the floor.

186.     Mr. Musto told the Female Named Plaintiffs and other employees that women were better at hard work than men, and that was why he assigned women to Cleaner/Laborer positions, which he felt were the best place for women.

187.     Although most Cleaner/Laborers were female, a handful of men were assigned to work as Cleaner/Laborers as well.

188.     These men had identical duties to the Female Named Plaintiffs.

189.     Upon information and belief, these men would have been allowed to work as Drywallers if they chose.

190.     Male Cleaner/Laborers were paid more per hour and were paid their correct wages more often than the Female Named Plaintiffs.

191.     For example, a male employee named Noe Portillo was sometimes assigned to do cleaning/labor work.  When he did this work, he was paid $20 per hour.  The Female Named Plaintiffs were paid between $10 and $12 per hour, with the exception that for a few pay periods, Plaintiff Solis was for some reason paid $15 per hour.

192.     Another example, male employees named Anthony Humilidad and Emmet Lee Morris also did cleaner/laborer work and told Plaintiff Lira that they were paid $16 per hour and that they were being paid overtime.

193.     Upon information and belief, white female Cleaner/Laborers were paid more per hour and were paid their correct wages more often than the Female Named Plaintiffs.

194.     The Female Named Plaintiffs were also harassed based on their sex and because they are Hispanic/Mexican-born women.

195.     In a meeting of all employees working on drywall (including Drywallers, Cleaner/Laborers, and supervisors), a supervisor named Stuart (last name unknown) said that based on his religion, women shouldn't be working in construction.

196.     Plaintiff Gutierrez spoke up in the meeting and said that this comment was discriminatory against women, but nothing was done in response to her complaint.

197.     Mr. Musto said in another meeting that he thought Cleaner/Laborer positions were the best place for women because women were better at hard labor than men.

198.     The Female Named Plaintiffs and other female workers were catcalled and asked on dates by men at SkyHouse Denver project.

199.     Mr. Mendiola attempted to date Plaintiff Gutierrez and sent her unwanted text messages, which made her very uncomfortable.  Plaintiff Gutierrez is married.

200.     A male coworker made sexual comments to Plaintiff Gutierrez including "que mamacita" and "a mi me vale verga."

201.     Plaintiff Gutierrez complained to the safety manger, Roberto (last name unknown).

202.     After she complained, the coworker who was the subject of Plaintiff Gutierrez's complaint approached her and angrily asked why she complained about him.

203.     Nothing else was done about Plaintiff Gutierrez's complaint.

204.     Mr. Musto mocked Plaintiff Solis for being a "poor Mexican" when she demanded wages owed to her.

205.     Mr. Musto frequently had angry and violent outbursts towards Hispanic/Mexican-born workers, as further described below.

206.     Ms. Houston often called Hispanic/Mexican-born workers "stupid," "mensa," "tonto," or "donkeys," yelled at them, and made fun of them for not speaking English.

207.     Plaintiffs Lira, Gutierrez and Miramontes ultimately left their employment because of this treatment combined with the nonpayment of wages owed to them.

**B.   Race and National Origin Discrimination Against Male Workers.**

208.     The Male Named Plaintiffs are Hispanic men of Mexican national origin and ancestry.

209.     Upon information and belief, non-Hispanic, non-Mexican Drywallers were paid more per hour and were paid their correct wages more often than the Male Named Plaintiffs.

210.     The Male Named Plaintiffs were also harassed based on their race, national origin, and ancestry.

211.     Mr. Musto frequently lost his temper and screamed loudly at the Male Named Plaintiffs and other Hispanic or Mexican workers.

212.     Mr. Musto threatened to "kick and beat" Plaintiff Salazar and threw a tool he had been using across the room.

213.     Mr. Musto failed to pick Plaintiff Salazar up for work on certain days.

214.     Mr. Musto called Latino workers names like "stupid," "idiot," "pinche," and "pendejo," and said that Mexicans are lazy and don't know how to work hard.

215.     Mr. Musto made racial jokes about Mexicans directed at the Male Named Plaintiffs and other Mexican workers.

216.     These jokes were offensive and unwelcome.

217.     As described above, Plaintiff Salazar was terminated by Mr. Musto as the culmination of the hostile work environment he created and in response to Plaintiff Salazar's complaints about unpaid wages.

218.     The remaining Male Named Plaintiffs ultimately left their employment because of this treatment combined with the nonpayment of wages owed to them.

## 29 U.S.C. § 216(b) COLLECTIVE ACTION ALLEGATIONS

219.     Plaintiffs incorporate by reference all previous paragraphs of this Complaint as if fully re-written herein.

220.      Plaintiffs bring their FLSA claim for unpaid wages and overtime (Count I) as a collective action, pursuant to 29 U.S.C. § 216(b), on behalf of themselves and on behalf of all other similarly situated current and former employees of Defendants.

221.     Pending any modifications necessitated by discovery, Plaintiffs preliminarily define the  "216(b) Class" as follows:

> ALL CURRENT AND FORMER EMPLOYEES OF CIRCLE GROUP, L.A.G. DRYWALL, OR GULF COAST CONSTRUCTION WHO PERFORMED DRYWALL, CLEANING, OR LABOR WORK

222.     Pending any modifications necessitated by discovery, Plaintiffs preliminarily define the  "216(b) Colorado Class" as follows:

> ALL CURRENT AND FORMER EMPLOYEES OF CIRCLE GROUP, L.A.G. DRYWALL, GULF COAST CONSTRUCTION OR JAVIER MARTINEZ DRYWALL WHO PERFORMED DRYWALL, CLEANING, OR LABOR WORK IN COLORADO

223.     Pending any modifications necessitated by discovery, Plaintiffs preliminarily define the  "216(b) Tennessee Class" as follows:

> ALL CURRENT AND FORMER EMPLOYEES OF CIRCLE GROUP, L.A.G. DRYWALL, OR GULF COAST

CONSTRUCTION WHO PERFORMED DRYWALL,
CLEANING, OR LABOR WORK IN TENNESSEE

224.    All potential FLSA Class Members are similarly situated because, among other

things, they were all hourly employees of Defendants and the members of the Sub-Classes were

additionally all employed by Defendants. Moreover, all members of the Class and Sub-Classes

suffered from the same policies of Defendants, including:

    a.   <u>failing to pay overtime premiums;</u>

    b.   <u>failing to compensate employees for all of the time they worked; and</u>

    c.   <u>failing to pay class members at least statutory minimum wage on each pay day as</u>
         <u>mandated by the FLSA.</u>

225.    The Female Named Plaintiffs bring their Claim for Relief under the Fair Labor

Standards Act and Equal Pay Act (Count II) as a collective action, pursuant to 29 U.S.C. §

216(b), on behalf of herself and on behalf of all similarly situated employees currently and

formerly employed by Defendants. Pending any modifications necessitated by discovery,

Plaintiff preliminarily defines this "216(b) EPA Class" as follows:

ALL FEMALE WORKERS EMPLOYED BY DEFENDANTS
AS HOURLY EMPLOYEES AT THE SKYHOUSE DENVER
SITE

226.    All potential 216(b) EPA Class Members are similarly situated because they

worked for Defendants as hourly employees and are or were subject to Defendants' common

policy of paying female workers less than male workers for the same work.

227.    Plaintiffs bring their FLSA claim for retaliation (Count XI) as a collective action,

pursuant to 29 U.S.C. § 216(b), on behalf of themselves and on behalf of all other similarly

situated current and former employees of Defendants.  Pending any modifications necessitated

by discovery, Plaintiff preliminarily defines this "216(b) Retaliation Class" as follows:

> ALL CURRENT AND FORMER EMPLOYEES OF CIRCLE GROUP, L.A.G.
> DRYWALL, OR GULF COAST CONSTRUCTION, WHO PERFORMED
> DRYWALL, CLEANING, OR LABOR WORK ON THE SKYHOUSE DENVER
> CONSTRUCTION PROJECT

228.   All potential 216(b) Retaliation Class Members are similarly situated because they worked for Defendants as hourly employees and are or were subject to Defendants' common policy of retaliating against workers who complained about lost pay and those associated with them, including by further reducing their pay.

## RULE 23 WAGE AND HOUR CLASS ALLEGATIONS

229.   Plaintiffs incorporate by reference all previous paragraphs of this Complaint as if fully rewritten herein.

230.   Plaintiffs assert their Counts III-VII as a Fed R. Civ P. 23 class action on their own behalf and on behalf of classes for which they seek certification.

231.   Pending any modifications necessitated by discovery, Plaintiffs preliminarily define a class (the "Rule 23 Nationwide Class") as follows:

> ALL CURRENT AND FORMER EMPLOYEES OF CIRCLE
> GROUP, L.A.G. DRYWALL, OR GULF COAST
> CONSTRUCTION WHO PERFORMED DRYWALL,
> CLEANING, OR LABOR WORK

232.   Pending any modifications necessitated by discovery, Plaintiffs preliminarily define a sub-class (the "Rule 23 Colorado Class") as follows:

> ALL CURRENT AND FORMER EMPLOYEES OF CIRCLE
> GROUP, L.A.G. DRYWALL, GULF COAST CONSTRUCTION,
> OR JAVIER MARTINEZ DRYWALL WHO PERFORMED
> DRYWALL, CLEANING, OR LABOR WORK IN COLORADO

233.   Pending any modifications necessitated by discovery, Plaintiffs preliminarily define a sub-class (the "Rule 23 Tennessee Class") as follows:

> ALL CURRENT AND FORMER EMPLOYEES OF CIRCLE
> GROUP, L.A.G. DRYWALL, OR GULF COAST

CONSTRUCTION WHO PERFORMED DRYWALL,
CLEANING, OR LABOR WORK IN TENNESSEE

234.    Plaintiffs bring their CWCA claim for retaliation (Count XI) as a class action, on behalf of themselves and on behalf of all other similarly situated current and former employees of Defendants.  Pending any modifications necessitated by discovery, Plaintiff preliminarily defines this "Rule 23 Retaliation Class" as follows:

ALL CURRENT AND FORMER EMPLOYEES OF CIRCLE GROUP, L.A.G.
DRYWALL, OR GULF COAST CONSTRUCTION WHO PERFORMED
DRYWALL, CLEANING, OR LABOR WORK ON THE SKYHOUSE DENVER
CONSTRUCTION PROJECT

235.    All potential 216(b) Retaliation Class Members are similarly situated because they worked for Defendants as hourly employees and are or were subject to Defendants' common policy of retaliating against workers who complained about lost pay and those associated with them, including by further reducing their pay.

236.    The classes are so numerous that joinder of all potential class members is impracticable.  Plaintiffs do not know the exact size of the classes because that information is within the control of Defendants. However, Plaintiffs estimate that the Rule 23 Nationwide Class includes over 1,000 members because of statements made by Defendants' agents to Plaintiffs and frequent turnover of drywall, cleaning, and labor employees.

237.    The sub-classes make up a subset of these Plaintiffs. Based on Plaintiffs' experiences, the Rule 23 Colorado Class and Rule 23 Retaliation Class include at least 50 members and the Rule 23 Tennessee Class includes at least 50 members. The exact size of the classes should be easily ascertainable from Defendants' records.

238.    There are questions of law or fact common to the classes that predominate over any individual issues that might exist. Common questions of law and fact include: Defendants'

pay practices; Defendants' failure to pay employees for some of their work; Defendants' failure to pay employees overtime wages for hours worked in excess of 40 hours per week.

239.    The class claims asserted by Plaintiffs are typical of the claims of all of the potential Class Members because Plaintiffs experienced the same or similar working conditions and pay practices as the Defendants' other employees. A class action is superior to other available methods for the fair and efficient adjudication of this controversy because numerous identical lawsuits alleging similar or identical causes of action would not serve the interests of judicial economy. This is especially true in the case of low-wage immigrant construction workers, like the class members here, who do not have experience with the American legal system, and are unlikely to seek, or be able to retain, legal representation on their own.

240.    Plaintiffs will fairly and adequately protect and represent the interests of the class. They were Defendants' employees and were victims of the same violations of law as the other class members, including numerous violations of federal and state wage-and-hour laws.

241.    Plaintiffs are represented by counsel experienced in litigation on behalf of low-wage workers and in wage-and-hour class actions.

242.    The prosecution of separate actions by the individual putative class members would create a risk of inconsistent or varying adjudications with respect to individual potential class members that would establish incompatible standards of conduct for Defendants.

243.    Each Class Member's claim is relatively small. Thus, the interest of potential Class Members in individually controlling the prosecution or defense of separate actions is slight. In addition, public policy supports the broad remedial purposes of class actions in general and that the pertinent state laws are appropriate vehicles to vindicate the rights of those employees with small claims as part of the larger class.

244.     Plaintiffs are unaware of any members of the putative classes who are interested in presenting their claims in a separate action.

245.     Plaintiffs are unaware of any pending litigation commenced by putative class members.

246.     It is desirable to concentrate this litigation in this forum because some of the employment contracts at issue were entered into in this jurisdiction and many Plaintiffs are domiciled in this jurisdiction.

247.     This class action will not be difficult to manage due to the uniformity of claims among putative class members and the susceptibility of wage claims to both class litigation and the use of representative testimony and representative documentary evidence.

248.     The contours of the class will be easily defined by reference to the payroll documents Defendants were legally required to create and maintain. 29 C.F.R. § 516, *et seq.*

## RULE 23 DISCRIMINATION CLASS ALLEGATIONS

249.     Plaintiffs incorporate by reference all previous paragraphs of this Complaint as if fully rewritten herein.

250.     Plaintiffs assert their Counts VIII-X as a Fed R. Civ P. 23 class action on their own behalf and on behalf of classes for which they seek certification.

251.     Pending any modifications necessitated by discovery, Plaintiffs preliminarily define a class (the "Colorado Discrimination Class") as follows:

> ALL CURRENT AND FORMER EMPLOYEES OF CIRCLE GROUP, L.A.G. DRYWALL, GULF COAST CONSTRUCTION, OR JAVIER MARTINEZ DRYWALL WHO PERFORMED DRYWALL, CLEANING, OR LABOR WORK IN COLORADO

252.     The class is so numerous that joinder of all potential class members is impracticable.  Plaintiffs do not know the exact size of the class because that information is

33

within the control of Defendants. However, Plaintiffs estimate that the Colorado Discrimination Class includes at least 50 members. The exact size of the class should be easily ascertainable from Defendants' records.

253.    There are questions of law or fact common to the class that predominate over any individual issues that might exist. Common questions of law and fact include: Defendants' policy and practice of refusing to hire women as drywallers; Defendants' practice of harassing Mexican-born, Hispanic, and female workers based on their race, national origin, ancestry, sex, and "sex plus" these traits; Defendants' policy and practice of paying female employees less pay for the same work and assigning them to Cleaner/Laborer positions; Defendants' policy and practice of paying female workers less than male workers; Defendants' policy and practice of paying female Hispanic/Mexican-born workers less than other workers; and Defendants' policy and practice of paying Hispanic/Mexican-born workers less than other workers.

254.    The class claims asserted by Plaintiffs are typical of the claims of all of the potential Class Members because Plaintiffs experienced the same or similar working conditions and pay practices as the Defendants' other employees. A class action is superior to other available methods for the fair and efficient adjudication of this controversy because numerous identical lawsuits alleging similar or identical causes of action would not serve the interests of judicial economy. This is especially true in the case of low-wage immigrant construction workers, like the class members here, who do not have experience with the American legal system, and are unlikely to seek, or be able to retain, legal representation on their own.

255.    Plaintiffs will fairly and adequately protect and represent the interests of the class. They were Defendants' employees and were victims of the same violations of law as the other class members, including numerous violations of the federal anti-discrimination laws.

34

256.    Plaintiffs are represented by counsel experienced in litigating discrimination claims.

257.    The prosecution of separate actions by the individual putative class members would create a risk of inconsistent or varying adjudications with respect to individual potential class members that would establish incompatible standards of conduct for Defendants.

258.    Each Class Member's claim is relatively small. Thus, the interest of potential Class Members in individually controlling the prosecution or defense of separate actions is slight. In addition, public policy supports the broad remedial purposes of class actions in general and that the pertinent federal laws are appropriate vehicles to vindicate the rights of those employees with small claims as part of the larger class.

259.    Plaintiffs are unaware of any members of the putative classes who are interested in presenting their claims in a separate action.

260.    Plaintiffs are unaware of any pending litigation commenced by putative class members.

261.    It is desirable to concentrate this litigation in this forum because some of the employment contracts at issue were entered into in this jurisdiction and many Plaintiffs are domiciled in this jurisdiction.

262.    This class action will not be difficult to manage due to the uniformity of claims among putative class members and the susceptibility of these discrimination claims to both class litigation and the use of representative testimony and representative documentary evidence. These claims involve conduct that was directed towards all female and Hispanic/Mexican drywall employees at SkyHouse Denver, as described above.

263.     The contours of the class will be easily defined by reference to the payroll

documents Defendants were legally required to create and maintain, 29 C.F.R. § 516, *et seq*, and

other employee records maintained by Defendants.

## COUNT I:
## BREACH OF THE FAIR LABOR STANDARDS ACT ("FLSA"),
## 29 U.S.C. §§ 201 et seq.
**(Plaintiffs Solis, Salazar, Ceballos, Salas, Aldeco Baltazar, Rodriguez and the 216(b) Class
and 216(b) Colorado and Tennessee Classes against Defendants Circle Group, L.A.G.
Drywall, and Gulf Coast Construction; Plaintiffs Lira, Gutierrez and Miramontes and the
216(b) Class and 216(b) Colorado Class against Defendants Circle Group and L.A.G.
Drywall; and Plaintiff Lira and the 216(b) Colorado Class against Defendant Javier
Martinez Drywall)**

264.     Plaintiffs incorporate by reference all previous and subsequent paragraphs of this

Complaint.

265.     Plaintiffs bring their FLSA claim as a collective action, pursuant to 29 U.S.C. §

216(b), on behalf of themselves and on behalf of all other similarly situated current and former

employees of Defendants.

266.     Defendants employed all Plaintiffs on the SkyHouse Denver project and, with the

exception of Javier Martinez Drywall, also employed Plaintiff Ceballos in Tennessee.

267.     Defendants were an enterprise or enterprises engaged in commerce pursuant to 29

U.S.C. § 203(s)(1).

268.     During their employment, Plaintiffs and those similarly situated were also

engaged in commerce pursuant to 29 U.S.C. § 203(b).

269.     As employers of Plaintiffs and those similarly situated, Defendants named in this

claim were required to pay the Plaintiffs and those similarly situated minimum wage and

overtime pursuant to 29 U.S.C. §§ 206, 207 and failed to do so.

270.     The failure to pay minimum wage and overtime was willful pursuant to 29 U.S.C.

§ 255(a) because Defendants knew or showed reckless disregard for the fact Plaintiffs and those

similarly situated were non-exempt employees covered by the FLSA and therefore entitled to minimum wage and overtime.

271.    Plaintiffs and those similarly situated are therefore entitled to the following pursuant to 29 U.S.C. § 216: unpaid minimum wage and overtime, statutory liquidated damages, reasonable attorney's fees, and costs.

272.    As joint employers, Defendants are joint and severally liable to the Plaintiffs and the 216(b) Class.

273.    As joint employers, Defendants are joint and severally liable to Plaintiffs and the 216(b) Colorado Class.

274.    As joint employers, Defendants are joint and severally liable to Plaintiff Ceballos and the 216(b) Tennessee Class.

275.    By reason of Defendants' actions, Plaintiffs are entitled to all legal and equitable remedies available for violations of the FLSA, including liquidated damages for all willful violations, attorney's fees, costs, and other compensation pursuant to 29 U.S.C. § 216(b).

**COUNT II:**
**VIOLATION OF THE FLSA AS AMENDED BY THE EQUAL PAY ACT ("EPA"),**
**29 U.S.C. § 206(d)**
**(Plaintiff Solis and the 216(b) EPA Class against Defendants Circle Group, L.A.G. Drywall, and Gulf Coast Construction; Plaintiffs Lira, Gutierrez, and Miramontes and the 216(b) EPA Class against Defendants Circle Group and L.A.G. Drywall; and Plaintiff Lira and the 216(b) EPA Class against Defendant Javier Martinez Drywall)**

276.    Plaintiffs incorporate by reference all previous and subsequent paragraphs of this Complaint.

277.    Ms. Solis, Ms. Lira, Ms. Gutierrez and Ms. Miramontes (the "Female Named Plaintiffs"), and all Plaintiffs who "opt in" to this action (collectively, the "Female Plaintiffs"), are female and are within the class protected by the EPA.

278.    The Female Named Plaintiffs bring this claim as a collective action, pursuant to 29 U.S.C. § 216(b), on behalf of themselves and on behalf of all other similarly situated current and former employees of Defendants.

279.    All Defendants were joint employers of the Female Plaintiffs, except that Defendant Javier Martinez Drywall was an employer only of Plaintiff Lira.  All Defendants shared control of the terms, conditions, and performance of their employment.

280.    All Defendants shared payroll, shared the supervision and management of employees including the Female Plaintiffs, employed joint supervisors and managers, and shared hiring and firing duties.

281.    Defendants have discriminated against the Female Plaintiffs within the meaning of the EPA and in violation of the FLSA, by providing them with lower pay than similarly situated male colleagues on the basis of their gender, female, even though the Female Plaintiffs performed similar duties requiring the same skill, effort, and responsibility of male counterparts.

282.    The Female Plaintiffs and similarly situated male employees all perform similar job duties and functions as cleaner/laborers. The Female Plaintiffs and similarly situated males all performed jobs that required equal skill, effort, and responsibility, and are or were performing under similar working conditions.

283.    Defendants discriminated against the Female Plaintiffs by subjecting them to discriminatory pay and other forms of discrimination in compensation in violation of the EPA.

284.    The differential in pay between male and female employees was not due to seniority, merit, quantity or quality of production, or any factor other than sex.

285.    Defendants caused, attempted to cause, contributed to, or caused the continuation of wage rate discrimination based on gender, in violation of the EPA.

286.     The foregoing conduct constitutes a willful violation of the EPA within the

meaning of 29 U.S.C. § 255(a).

287.     As a result of Defendants' conduct as alleged in this Complaint, the Female

Plaintiffs have suffered and continues to suffer harm, including but not limited to: lost earnings,

lost benefits, and other financial loss, as well as humiliation, embarrassment, emotional and

physical distress, and mental anguish.

288.     By reason of Defendants' discrimination, the Female Plaintiffs are entitled to all

legal and equitable remedies available for violations of the EPA, including liquidated damages

for all willful violations, attorney's fees, costs, and other compensation pursuant to 29 U.S.C. §

216(b).

### COUNT III:
### BREACH OF FIDUCIARY DUTY AND CIVIL THEFT
### UNDER THE COLORADO TRUST FUND ACT,
### C.R.S. §§ 38-22-127, 18-4-401, 18-4-405
### (Plaintiffs Solis, Salazar, Ceballos, Salas, Aldeco Baltazar, Rodriguez and the Rule 23 Colorado Class against Defendants Circle Group, L.A.G. Drywall, and Gulf Coast Construction; Plaintiffs Lira, Gutierrez and Miramontes and the Rule 23 Colorado Class against Defendants Circle Group and L.A.G. Drywall; and Plaintiff Lira and the Rule 23 Colorado Class against Defendant Javier Martinez Drywall)

289.     Plaintiffs incorporate by reference all previous and subsequent paragraphs of their

Complaint.

290.     Defendants entered into the employment agreements with Plaintiffs and those

similarly situated.

291.     Defendants entered into several contracts under which Plaintiffs and those

similarly situated were to perform construction services under their employment agreements on

real property in Colorado.

292.     Some of these contracts were for construction services on privately owned real

property.

293.     Under the employment agreements, Plaintiffs and those similarly situated performed construction services improving privately owned real properties located in Colorado. They were not paid for their work.

294.     Upon information and belief, funds were disbursed to Defendants as payment for labor performed by Plaintiffs and those similarly situated on the improvements.

295.     Defendants failed to hold the disbursed funds in trust for Plaintiffs and those similarly situated, and intended to permanently deprive Plaintiffs and those similarly situated of the disbursed funds or used the disbursed funds in a manner practically certain to deprive Plaintiffs and those similarly situated of the disbursed funds.

296.     Plaintiffs and the Rule 23 Colorado Class are therefore entitled by statute to treble damages, costs, and attorney's fees.

**COUNT IV:**
**VIOLATION OF STATE MINIMUM WAGE, OVERTIME, AND WAGE-PAYMENT LAWS OF THE STATES WHERE THE RULE 23 CLASS WORKED**
**(Plaintiffs Solis, Salazar, Ceballos, Salas, Aldeco Baltazar, Rodriguez and the Rule 23 Nationwide Class against Defendants Circle Group, L.A.G. Drywall and Gulf Coast Construction; Plaintiffs Lira, Gutierrez, and Miramontes and the Rule 23 Nationwide Class against Defendants Circle Group and L.A.G. Drywall)**

297.     Plaintiffs incorporate by reference all previous and subsequent paragraphs of this Complaint as if fully re-written herein.

298.     Defendants employed Plaintiffs and the Rule 23 Nationwide Class.

299.     Defendants failed to pay Plaintiffs and the Rule 23 Nationwide Class overtime premiums and failed to pay them at all for all of the hours they worked.

300.     Plaintiffs and the Nationwide Class seek recovery of these wages and additional damages, costs, and attorney's fees pursuant to the laws of the states in which they worked. As joint employers, Defendants are joint and severally liable to Plaintiffs and the Rule 23 Nationwide Class.

**COUNT V:**
**FAILURE TO PAY EARNED, VESTED & DETERMINABLE WAGES IN VIOLATION**
**OF THE COLORADO WAGE CLAIM ACT ("CWCA"),**
**C.R.S. § 8-4-109**
**(Plaintiffs Solis, Salazar, Ceballos, Salas, Aldeco Baltazar, Rodriguez and the Rule 23**
**Colorado Class against Defendants Circle Group, L.A.G. Drywall, and Gulf Coast**
**Construction; Plaintiffs Lira, Gutierrez and Miramontes and the Rule 23 Colorado Class**
**against Defendants Circle Group and L.A.G. Drywall; and Plaintiff Lira and the Rule 23**
**Colorado Class against Defendant Javier Martinez Drywall)**

301.    Plaintiffs incorporate by reference all previous and subsequent paragraphs of their Complaint.

302.    Defendants were Plaintiffs' "employer" as that term is defined by the CWCA because they employed Plaintiffs in Colorado. C.R.S. § 8-4-101(5).

303.    Plaintiffs were Defendants' employees as that term is defined by the CWCA because they performed labor for the benefit of Defendants in which Defendants commanded when, where, and how much labor or services would be performed. C.R.S. § 8-4-101(4).

304.    The overtime premiums and wages Defendants denied Plaintiffs constitute earned wages or other compensation owed Plaintiffs. C.R.S. § 8-4-109.

305.    None of Plaintiffs continue to work for Defendants.

306.    Plaintiffs are entitled to recover in this civil action the unpaid balance of the full amount of wages they are owed, including overtime premiums, together with penalties and reasonable attorney's fees and court costs.  C.R.S. §§ 8-4-109, 8-4-110, 8-6-118; 7 C.C.R 1103-1(18).  Plaintiffs sent written wage demands for unpaid wages and overtime to Defendants Circle Group, LA Drywall, Inc., Gulf Coast Construction, and Javier Martinez Drywall on June 7, 2016. As of the date of the filing of this First Amended Complaint, none of these Defendants have responded to Plaintiffs' wage demands. C.R.S. § 8-4-109(3).

307.    As joint employers, Defendants are joint and severally liable to Plaintiffs and the Rule 23 Colorado Class.

## COUNT VI:
## QUANTUM MERUIT UNDER TENNESSEE LAW
**(Plaintiff Ceballos and the Rule 23 Tennessee Class against Defendants Circle Group, L.A.G. Drywall, and Gulf Coast Construction)**

308.    Plaintiffs incorporate by reference all previous and subsequent paragraphs of this Complaint.

309.    There was no legally enforceable contract between the parties.

310.    Plaintiff Ceballos and the Tennessee Class provided valuable labor and services to Defendants in Tennessee. Defendants retained the benefits of this labor and these services without compensating Plaintiff Ceballo and the Rule 23 Tennessee Class for the value of this labor and services, which includes hourly wages and overtime premiums required by law for hours worked in excess of 40 hours per week.

311.    Under the circumstances, the parties reasonably understood that Plaintiff Ceballo and the Rule 23 Tennessee Class expected to be paid their legal wages.

312.    It would be unjust for Defendants to retain the benefits of the value of this labor and these services without compensating Plaintiff Ceballo and the Rule 23 Tennessee Class for them.

## COUNT VII:
## BREACH OF CONTRACT UNDER TENNESSEE LAW
**(Plaintiff Ceballos and the Rule 23 Tennessee Class against Defendants Circle Group, L.A.G. Drywall, and Gulf Coast Construction)**

313.    Plaintiffs incorporate by reference all previous and subsequent paragraphs of this Complaint.

314. In the alternative to Count VI (Quantum Meruit under Tennessee Law), Plaintiff Ceballos and the Rule 23 Tennessee Class allege that they entered into an implied-in-fact contract, under Tennessee law, with Defendants who employed them in Tennessee.

315. Pursuant to this agreement, Defendants who employed Plaintiff Ceballos and the Rule 23 Tennessee Class in Tennessee agreed to pay Plaintiffs the wages and overtime premiums to which they were entitled by law.

316. By failing to pay Plaintiff Ceballos and the Rule 23 Tennessee Class the wages and overtime premiums to which they were entitled by law, these Defendants breached their contract with Plaintiff Ceballos and the Rule 23 Tennessee Class.

317. The overtime premiums and wages Defendants denied Plaintiffs constitute earned wages or other compensation owed Plaintiffs. C.R.S. § 8-4-109.

318. None of Plaintiffs continue to work for Defendants.

319. Plaintiffs are entitled to recover in this civil action the unpaid balance of the full amount of wages they are owed, including overtime premiums, together with penalties and reasonable attorney's fees and court costs.  C.R.S. §§ 8-4-109, 8-4-110, 8-6-118; 7 C.C.R 1103-1(18).  Plaintiffs sent written wage demands for unpaid wages and overtime to Defendants Circle Group, Gulf Coast Construction, Inc. and Javier Martinez Drywall on June 7, 2016, to LA Drywall, Inc. on June 7, 2016, and to Defendant L.A.G. Drywall on June 23, 2016. As of the date of the filing of this Second Amended Complaint, none of these Defendants have responded to Plaintiffs' wage demands. C.R.S. § 8-4-109(3).

320. As joint employers, Defendants are joint and severally liable to Plaintiffs and the Rule 23 Tennessee Class.

**COUNT VIII:**
**DISCRIMINATION ON THE BASIS OF SEX, RACE, NATIONAL ORIGIN,**
**ANCESTRY, AND SEX PLUS RACE/NATIONAL ORIGIN/ANCESTRY,**
**TITLE VII, 42 U.S.C. § 2000E *ET SEQ.***
**(Plaintiffs Solis, Lira, Gutierrez, Miramontes and the Rule 23 Nationwide and Colorado**
**Discrimination Classes against Defendants Circle Group and L.A.G. Drywall; Plaintiff**
**Lira and the Rule 23 Colorado Discrimination Class against Defendant Javier Martinez**
**Drywall; and Plaintiff Solis and the Rule 23 Colorado Discrimination Class against**
**Defendant Gulf Coast Construction)**

321.     Plaintiffs incorporate by reference all previous and subsequent paragraphs of this Complaint.

322.     Ms. Solis, Ms. Lira, Ms. Gutierrez and Ms. Miramontes (the "Female Named Plaintiffs") are female and are within the class protected by Title VII.

323.     The Female Named Plaintiffs are Hispanic and of Mexican national origin and ancestry and are within the class protected by Title VII.

324.     Defendants Circle Group and L.A.G. Drywall are each an employer for purposes of Title VII.

325.     Each of these Defendants employed the Female Named Plaintiffs.

326.     Defendant Javier Martinez Drywall is an employer for purposes of Title VII.

327.     Defendant Javier Martinez Drywall employed Ms. Lira.

328.     Defendant Gulf Coast Construction is an employer for purposes of Title VII.

329.     Defendant Gulf Coast Construction employed Ms. Solis.

330.     Each of these Defendants shared payroll, shared the supervision and management of employees including the Female Named Plaintiffs, employed joint supervisors/managers, and shared hiring and firing duties.

331.     Each of these Defendants were joint employers of the Female Named Plaintiffs. They shared control of the terms, conditions, and performance of their employment.

332.    Each of these Defendants created, condoned, and failed to prevent and correct a hostile work environment for the Female Named Plaintiffs during their employment, because of their sex.

333.    Each of these Defendants created, condoned, and failed to prevent and correct a hostile work environment for the Female Named Plaintiffs during their employment, because of their race, national origin, ancestry, and "sex plus" each of these traits.

334.    Each of these Defendants discriminated against the Female Named Plaintiffs in the terms and conditions of their employment, including pay, work assignment, opportunities for promotion and training, and exposure to risks of physical harm, because of their sex.

335.    Each of these Defendants discriminated against the Female Named Plaintiffs in the terms and conditions of their employment, including pay, work assignment, opportunities for promotion and training, and exposure to risks of physical harm, because of their race, national origin, ancestry, and "sex plus" each of these traits.

336.    Each of these Defendants constructively discharged Plaintiffs Lira, Gutierrez and Miramontes because of their sex.

337.    Each of these Defendants constructively discharged Plaintiffs Lira, Gutierrez and Miramontes because of their race, national origin, ancestry, and "sex plus" each of these traits.

338.    Creation of a hostile work environment, discrimination in terms and conditions, and constructive discharge are adverse employment actions.

339.    These Defendants did not create a hostile work environment for male employees, did not constructively discharge similarly situated male employees, and treated male employees more favorably than the Female Named Plaintiffs in the terms and conditions of employment.

340. These Defendants also did not create a hostile work environment for employees who were not Hispanic/Mexican-born females, did not constructively discharge such employees, and treated such employees more favorably than the Female Named Plaintiffs in the terms and conditions of employment.

341. These Defendants' actions described herein were intentional, and taken with malice and with reckless indifference the Female Named Plaintiffs' federally protected rights.

342. These Defendants failed to take reasonable care to prevent and to correct the unlawful discriminatory practices described herein.

343. As a direct and proximate cause of these Defendants' discriminatory actions and conduct, the Female Named Plaintiffs have suffered, and will continue to suffer damages including, but not limited to, loss of salary wages, earnings and benefits; diminution of future earning capacity; loss of accumulated benefits, emotional distress and other compensatory damages in an amount to be determined at trial; punitive damages in an amount to be determined at trial; and attorney's fees and costs.

**COUNT IX:**
**RACE, NATIONAL ORIGIN, AND ANCESTRY DISCRIMINATION**
**TITLE VII, 42 U.S.C. § 2000e *et seq.***
**(All Plaintiffs and the Rule 23 Nationwide and Colorado Discrimination Classes against Defendants Circle Group and L.A.G. Drywall; Plaintiff Lira and the Rule 23 Colorado Discrimination Class against Defendant Javier Martinez Drywalll)**

344. Plaintiffs incorporate by reference all previous and subsequent paragraphs of this Complaint.

345. Plaintiffs are Hispanic and of Mexican national origin and ancestry and are within the class protected by Title VII.

346. Defendants Circle Group and L.A.G. Drywall are each an employer for purposes of Title VII.

46

347.    Each of these Defendants employed the Plaintiffs.

348.    Defendant Javier Martinez Drywall is an employer for purposes of Title VII.

349.    Defendant Javier Martinez Drywall employed Plaintiff Lira.

350.    Each of these Defendants shared payroll, shared the supervision and management of employees including the Plaintiffs, employed joint supervisors/managers, and shared hiring and firing duties.

351.    Each of these Defendants were joint employers of the Plaintiffs.  They shared control of the terms, conditions, and performance of their employment.

352.    Each of these Defendants created, condoned, and failed to prevent and correct a hostile work environment for the Plaintiffs during their employment, because of their race, national origin, and ancestry.

353.    Each of these Defendants discriminated against the Plaintiffs in the terms and conditions of their employment, including pay, because of their race, national origin, and ancestry.

354.    Each of these Defendants terminated or constructively discharged Plaintiffs Salazar, Salas, Aldeco Baltazar, Rodriguez, Ceballos, Lira, Gutierrez and Miramontes because of their race, national origin, and ancestry.

355.    Creation of a hostile work environment, discrimination in terms and conditions, termination, and constructive discharge are adverse employment actions.

356.    Defendants did not create a hostile work environment for non-Hispanic or Mexican employees, did not terminate or constructively discharge similarly situated non-Hispanic or Mexican employees, and treated such employees more favorably than the Plaintiffs in the terms and conditions of employment.

357.    Defendants' actions described herein were intentional, and taken with malice and with reckless indifference the Plaintiffs' federally protected rights.

358.    Defendants failed to take reasonable care to prevent and to correct the unlawful discriminatory practices described herein.

359.    As a direct and proximate cause of Defendants' discriminatory actions and conduct, the Plaintiffs have suffered, and will continue to suffer damages including, but not limited to, loss of salary wages, earnings and benefits; diminution of future earning capacity; loss of accumulated benefits, emotional distress and other compensatory damages in an amount to be determined at trial; punitive damages in an amount to be determined at trial; and attorney's fees and costs.

## COUNT X:
## RACE, NATIONAL ORIGIN, AND ANCESTRY DISCRIMINATION
## 42 U.S.C. § 1981 ("Section 1981")
**(All Plaintiffs and the Rule 23 Nationwide and Colorado Discrimination Classes against Defendants Circle Group and L.A.G. Drywall; Plaintiff Lira and the Rule 23 Colorado Discrimination Class against Defendant Javier Martinez Drywall)**

360.    Plaintiffs incorporate by reference all previous and subsequent paragraphs of this Complaint.

361.    Plaintiffs are Hispanic and of Mexican national origin and ancestry and are within the class protected by Section 1981.

362.    Defendants Circle Group and L.A.G. Drywall are each an employer for purposes of Section 1981.

363.    Each of these Defendants employed Plaintiffs.

364.    Each of these Defendants shared payroll, shared the supervision and management of employees including Plaintiffs, employed joint supervisors/managers, and shared hiring and firing duties.

48

365.     Each of these Defendants were joint employers of Plaintiffs.  They shared control of the terms, conditions, and performance of their employment.

366.     Each of these Defendants created, condoned, and failed to prevent and correct a hostile work environment for Plaintiffs during their employment, because of their race, national origin, and ancestry.

367.     Each of these Defendants discriminated against Plaintiffs in the terms and conditions of their employment, including pay, because of their race, national origin, and ancestry.

368.     Each of these Defendants terminated or constructively discharged Plaintiffs Salazar, Salas, Aldeco Baltazar, Rodriguez, Ceballos, Lira, Gutierrez and Miramontes because of their race, national origin, and ancestry.

369.     Creation of a hostile work environment, discrimination in terms and conditions, termination, and constructive discharge are adverse employment actions.

370.     Defendants did not create a hostile work environment for non-Hispanic or Mexican employees, did not terminate or constructively discharge similarly situated non-Hispanic or Mexican employees, and treated such employees more favorably than Plaintiffs in the terms and conditions of employment.

371.     Defendants' actions described here were intentional, and taken with malice and with reckless indifference to Plaintiffs' federally protected rights.

372.     Defendants failed to take reasonable care to prevent and to correct the unlawful discriminatory practices described herein.

373.     As a direct and proximate cause of Defendants' discriminatory actions and conduct, Plaintiffs have suffered, and will continue to suffer damages including, but not limited

to, loss of salary wages, earnings and benefits; diminution of future earning capacity; loss of

accumulated benefits, emotional distress and other compensatory damages in an amount to be

determined at trial; punitive damages in an amount to be determined at trial; and attorney's fees

and costs.

### COUNT XI:
### RETALIATION IN VIOLATION OF THE FLSA AND CWCA
### 29 U.S.C. § 215(a)(3) & C.R.S. § 8-4-120
### (Plaintiffs Solis, Rodriguez, Lira, Salazar, Gutierrez, Miramontes and the 216(b) Retaliation Class and Rule 23 Retaliation Class against Defendants Circle Group, L.A.G. Drywall, and Gulf Coast Construction)

374.     Plaintiffs incorporate by reference all previous and subsequent paragraphs of this

Complaint.

375.     Plaintiffs bring their FLSA retaliation claim as a collective action, pursuant to 29

U.S.C. § 216(b), on behalf of themselves and on behalf of all other similarly situated current and

former employees of Defendants.

376.     Defendants employed all Plaintiffs on the SkyHouse Denver project.

377.     Each of the Defendants were, or were members of, of an enterprise that had

annual revenues in excess of $500,000 during Plaintiffs' employment and had two or more

employees that handled goods or materials that had been moved in or produced for interstate

commerce. Defendants were therefore an enterprise or enterprises engaged in commerce

pursuant to 29 U.S.C. § 203(s)(1).

378.     During their employment, Plaintiffs and those similarly situated were also

engaged in commerce pursuant to 29 U.S.C. § 203(b).

379.     Plaintiffs Solis, Rodriguez, and Salazar complained to Defendants about their

missing pay.

380.    Another employee complained about missing pay on behalf of Plaintiffs Lira, Gutierrez and Miramontes, as described herein.

381.    Defendants retaliated against Plaintiffs by reducing the pay of Plaintiffs Solis, Rodriguez, Lira, Gutierrez and Miramontes, and by constructively discharging Plaintiff Rodriguez and terminating Plaintiff Salazar.

382.    Reductions in pay, constructive discharge, and termination are adverse actions within the meaning of the FLSA.

383.    Defendants' retaliatory acts were motivated by Plaintiffs' protected complaints regarding their missed pay.

384.    Defendants' retaliatory actions were willful pursuant to 29 U.S.C. § 255(a) because Defendants knew or showed reckless disregard for the fact Plaintiffs and those similarly situated were entitled to speak up about their lost pay without losing additional pay or even their jobs as a result.

385.    Plaintiffs and those similarly situated are therefore entitled to the following pursuant to 29 U.S.C. § 216: unpaid minimum wage and overtime, statutory liquidated damages, reasonable attorney's fees, and costs.

386.    As joint employers, Defendants are joint and severally liable to the Plaintiffs and the 216(b) Retaliation Class and Rule 23 Retaliation Class.

387.    By reason of Defendants' retaliation, Plaintiffs are entitled to all legal and equitable remedies available for violations of the FLSA, including liquidated damages for all willful violations, damages for mental and emotional distress, lost wages, attorney's fees, costs, and other compensation pursuant to 29 U.S.C. § 216(b) and the CWCA.

## **DEMAND FOR JURY TRIAL**

388.    Plaintiffs demand a trial by jury for all issues so triable.

## PRAYER FOR RELIEF

389.    Plaintiffs respectfully request an Order from this Court:

    a.   Certifying the FLSA opt-in classes and issuing prompt notice to
         members of the FLSA classes;

    b.   Certifying the Rule 23 classes and sub-classes, naming the named
         Plaintiffs class representatives, and naming Plaintiffs' counsel class
         counsel;

    c.   granting judgment in favor of all Plaintiffs and against all Defendants;

    d.   awarding Plaintiffs and the Rule 23 classes their damages and penalties
         under state laws;

    e.   awarding Plaintiffs and those similarly situated, unpaid minimum wage,
         unpaid overtime, and liquidated damages pursuant to the FLSA (29
         U.S.C. §§ 201 *et seq.*);

    f.   awarding Plaintiffs and those similarly situated their costs;

    g.   awarding Plaintiffs and those similarly situated their attorney's fees;

    h.   awarding Plaintiffs and members of the classes and sub-classes all
         appropriate equitable and injunctive relief;

    i.   granting such other relief as this Court deems just and proper;

    j.   injunctive relief prohibiting Defendants from future discriminatory and
         illegal practices as described herein and requiring Defendants to adopt
         policies and procedures to eradicate the effects of past discriminatory
         and illegal practices;

    k.   compensatory damages, including for emotional distress, as allowed by
         law;

      l.  punitive, exemplary, and liquidated damages as allowed by law;

     m.  awarding Plaintiffs and those similarly situated prejudgment and post-

        judgment interest, when allowable by law.

Respectfully submitted this <u>15th</u> day of November, 2016.

> <u>*s/ Sarah J. Parady*</u>
> Sarah J. Parady
> Mary Jo Lowrey
> 1725 High Street, Suite 1
> Denver, CO 80218
> Phone: 303-593-2595
> Fax: 303-502-9119
> Email:  sarah@lowrey-parady.com
>        maryjo@lowrey-parady.com
>
> <u>*s/David Seligman*</u>
> Alexander Hood
> David Seligman
> Towards Justice
> 1535 High St., Suite 300
> Denver, CO 80218
> Tel.: 720-239-2606
> Fax: 303-957-2289
> Email: alex@towardsjustice.org
>      david@towardsjustice.org
>      *Attorneys for Plaintiffs*

Addresses for Plaintiffs:

Violeta Solis
3901 Morrison Rd., Apt. 211
Denver, CO 80219

Cesar Salazar
4408 Hiram Brandon Dr., Apt. 5
Bay City, TX 77414

Edgar Ceballos
630 Catalina Cir.
Vallejo, CA 94589

Aaron Salas
5180 Blackhawk Way
Denver, CO 80239

Hildeberto Aldeco Baltazar
645 Wolff Street, #340
Denver, CO 80204

Juan Ramon Rodriguez
3901 Morrison Rd., Apt. 211
Denver, CO 80221

Adriana Lira
161 S. Ames St.
Lakewood, CO 80226

Nancy Gutierrez
5775 W. Dartmouth Ave., #6-307
Denver, CO 80227

Beatriz Miramontes
2078 W. 7th Ave., Apt. 24-10
Denver, CO 80221