**IN THE UNITED STATES DISTRICT COURT
DISTRICT OF COLORADO**

Civil Action No. 16-cv-01329-RBJ

VIOLETA SOLIS,
CESAR SALAZAR,
EDGAR CEBALLOS,
AARON SALAS,
HILDEBERTO ALDECO BALTAZAR,
JUAN RAMON RODRIGUEZ,
ADRIAN LIRA,
NANCY GUTIERREZ,
BEATRIZ MIRAMONTES,
and those similarly situated,

                Plaintiffs

    v.

THE CIRCLE GROUP, LLC,
LA DRYWALL, INC.,
L.A.G. DRYWALL, INC.
JAVIER MARTINEZ DRYWALL, LLC,
GULF COAST CONSTRUCTION, INC.,
JOSE MENDIOLA (AKA "CABALLO"),
JESUS ORNELAS (AKA "CHUY"), and
JAVIER MARTINEZ, and
JEFFREY MUSTO,

                Defendants.

---

**DEFENDANT THE CIRCLE GROUP, LLC's MOTION TO DISMISS PLAINTIFFS'
FOURTH AMENDED COMPLAINT**

---

Defendant The Circle Group, LLC, by and through their attorneys, Lewis Brisbois Bisgaard & Smith LLP, hereby submit this Motion to Dismiss all claims set forth in the Fourth Complaint under Fed. R. Civ. P. 12(b)(6). As grounds therefore, The Circle Group states as follows:

## I. INTRODUCTION AND BACKGROUND

Plaintiffs allege they suffered various workplace employment violations in the course of their work as dry-wall laborers at the "SkyHouse Denver" apartment project. The lawsuit alleges that all Defendants including The Circle Group, LLC ("Circle Group") were Plaintiffs' "employers" and therefore liable under various state and federal causes of action.

The Plaintiffs allege "Defendant Circle Group is a large, national drywall subcontractor that performs work for residential and commercial development projects around the United States"[1] and that "Circle Group subcontracts with other companies known as "labor brokers" to recruit employees and to transport these employee around the United States to perform work related to the installation of drywall."[2] The complaint alleges Circle Group subcontracted with LA Drywall[3] for drywall labor[4] and LA Drywall separately sub-subcontracted with Gulf Coast Construction, Inc. for additional drywall labor.[5] The contracts between Circle Group and LA Drywall, and LA Drywall and Gulf Coast Construction are attached hereto and clearly delineate the entities' separate responsibilities for labor management on the jobsite. *See* Affidavit of Mike Domenici (**Exhibit 1** (Circle Group contract with LA Drywall)); *see* **Exhibit 5** (L.A.G. Drywall contract with Gulf Coast Construction).

---

[1] FAC p. 8 ¶ 41

[2] FAC p. 8 ¶ 42

[3] For purposes of this motion Defendants L.A.G. Drywall, Inc. and LA Drywall, Inc. are referred to as "LA Drywall"

[4] FAC p. 11 ¶ 71; p. 16 ¶ 115.

[5] FAC p. 12 ¶ 72

Although Plaintiffs allege in a conclusory fashion that Circle Group was their "employer" along with all other remaining defendants, the actual facts alleged in the complaint indicate all Plaintiffs were hired and paid by LA Drywall and Gulf Coast Construction (which is consistent with the sub-contract relationships between the entities). For example, all Plaintiffs acknowledge that they received paychecks from Gulf Coast Construction for their work.[6] *See* **Exhibit 4** (Plaintiffs' paystubs). Plaintiffs admit Gulf Coast managed payroll for a single company, LAG Drywall (admitting it did not manage payroll on behalf of Circle Group).[7] Plaintiffs acknowledge they were hired by LA Drywall agents Jesus Ornelas and/or Juan Mendiola.[8] Moreover, "[p]laintiffs were told their rate of pay by whomever hired them."[9] Plaintiffs allege repeatedly that Circle Group had its own "direct" employees on the SkyHouse Denver project, and acknowledge those employees were paid different rates than workers paid by Gulf Coast Construction and that those workers were fully compensated for overtime.[10] *See also* **Exhibit 6** (Second Affidavit of Mike Dominici).

The complaint is purposefully vague or silent concerning which of the separate entities actually "supervised" the Plaintiffs' daily work, other than conclusory allegations that *all* of the

---

[6] FAC, pp. 15 ¶ 103.

[7] FAC, pp. 15 ¶ 104.

[8] FAC pp. 9 ¶ 51 to 12 ¶ 76.

[9] FAC pp. 12 ¶ 73.

[10] FAC p 14 ¶¶ 90 ("Mr. Musto, Rhonda, Ms. Huston, and Mr. Ronis were employed by Defendant Circle Group") p 14 ¶ 99 ("According to Defendant Circle Group, it directly employed some drywall and cleaning workers at the SkyHouse Denver site, including Juan de la Torre, Brittney Walker, Anthony Humildad, and Emmet Lee Morris."); p 25 ¶ 25 ("Another example, male employees named Anthony Humilidad and Emmet Lee Morris also did cleaner/laborer work and told Plaintiff Lira that they were paid $16 per hour and that they were being paid overtime.")

Plaintiffs were "supervised" by <u>all</u> Defendants.[11] Plaintiffs' allegations concerning which entity had the actual right to terminate them is similarly vague and conclusory.[12] Plaintiffs' allegation that Circle Group "employed" any of them is not plausible on the face of the complaint and the motion to dismiss all claims against Circle Group should be granted in its entirety.

## II. STANDARD FOR DISMISSAL UNDER F.R.C.P. 12(b) (6)

Under Federal Rule of Civil Procedure 8(a)(2), a pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." The Supreme Court clarified this standard in *Bell Atlantic v. Twombly*, 550 U.S. 544 (2007) and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009); to withstand a Rule 12(b)(6) motion to dismiss, a complaint must contain enough allegations of fact, taken as true, "to state a claim to relief that is plausible on its face." Generally a plaintiff must "nudge [his] claims across the line from conceivable to plausible" in order to survive a motion to dismiss." *Id.*[13] The complaint need not recite "detailed factual

---

[11] FAC, p.13 ¶ 87 ( "The Female Named Plaintiffs were supervised by Defendant Jeffrey Musto, Rhonda (last name unknown), and Chre Houston. Sometime they were supervised by Defendants Martinez, Ornelas, or Mendiola and by a man named Stuart Ronis."); p. 13 ¶ 87 ("Each of the Male Named Plaintiffs was given orders at various times regarding when to come to work, what assignments to work on, and when to leave by each of the following individuals: Mr. Ornelas, Mr. Mendiola, and Mr. Musto."); p. 13 ¶ 88 ("Plaintiff Rodriguez was also sometimes supervised by a man named Yardel.")

[12] FAC pp. 16 ¶ 115 to 17 ¶ 120. Salazar does not allege that he was actually fired by any entity or individual, but rather, that he was terminated by Mr. Musto "as the culmination of the hostile work environment that [Musto] created and in response to Plaintiff Salazar's complaints about unpaid wages." FAC p. 28 ¶ 217.

[13] *Khalik v. Unites Air Lines*, 671 F.3d 1188 (10th Cir., 2012) ("We agree with the district court that Plaintiff's allegations are the type of conclusory and formulaic recitations disregarded by the Court in *Iqbal*."); *Matthews v. LaBarge, Inc.*, 407 Fed. Appx. 277, 280 (10th Cir. 2011) (unpublished opinion) (citing *Iqbal*, (supra) 556 U.S. at 679) ("A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.")

allegations, but the factual allegations must be enough to raise the right to relief above the speculative level." *Hall v. Witteman*, 584 F.3d 859, 863 (10th Cir.2009).[14]

### 1.     The Circle Group is Not an "Employer" Under Title VII

Plaintiffs allege Defendants Circle Group, LA Drywall were "joint employers" with respect to two claims asserted pursuant to Title VII, 42 U.S.C. § 2000E.[15] Aside from vague, conclusory, and contradictory allegations, the facts alleged do not support a finding of "employer" status for Circle Group under Title VII.[16] Plaintiffs fail to identify a single entity as their actual employer, but rather refer to all Defendants in this lawsuit as their "joint" employers, without differentiation as to each Defendant and its conduct. *Park v. Fiserv Trust Co.*, 2010 U.S. Dist. LEXIS 129600, p. 6 (D. Colo., Sept. 30, 2010) ("There are no facts set forth in the TAC to support Ms. Park's joint employer argument. Ms. Park makes reference to Defendants

---

[14] Documents referenced in the complaint, including the contracts between Circle Group and LA Drywall, and LA Drywall and Gulf Coast Construction, and the Plaintiffs' paystubs, may be reviewed by the Court in deciding a motion to dismiss pursuant to F.R.C.P. 12(b)(6) without converting it to a motion for summary judgment pursuant to F.R.C.P. 56. 2011 WL 2610661 at p. 3 (SDNY, June 27, 2011) (citing myriad cases) ("Extrinsic evidence may be considered part of a complaint when it is (1) attached to the pleading, (2) incorporated by reference in the pleading, or (3) the court deems the evidence integral to at least one claim in the pleading."); *Rosenfield v. HSBC Bank, USA*, 681 F.3d 1172, 1178 (10th Cir., 2012) ("In addition to the allegation contained in the complaint, the court may consider attached exhibits and documents incorporated into the complaint, so long as the parties do not dispute the documents' authenticity.")

[15] In general "[t]o present a prima facie case of Title VII… Plaintiff must prove that it was her **employer**." *Knitter v Corvias Military Living, LLC*, 758 F.3d 1214, 1225 (10th Cir., 2014); *Williams v. Meese*, 926 F.2d 994, 997 (10th Cir., 1991) ( The protections of Title VII apply only to discrimination against an employee by that person's employer.)

[16] The Fourth Amended Complaint alleges plaintiffs Solis, Baltazar, Lira, Gutierrez, Miramontes, Ceballos, Rodriguez, Salas, Salazar were hired by agents of LA Drywall .Jesus Ornelas and Juan Mendiola. FAC pp. 9 ¶ 51 to 10 ¶ 70.  Only Salazar alleges Jeffrey Musto of The Circle Group played a role in hiring him, though the allegation that The Circle Group actually hired him is not plausible on its face since none of Salazar's paychecks or paystubs came from Circle Group.

throughout the TAC without differentiation as to each Defendant and its conduct.  Ms. Park has not alleged that any of the Defendants, as separate entities, co-determined the essential terms and conditions of her employment.")

In the standard "joint employer" case, the plaintiff acknowledges that he is employed by one entity, but seeks to hold a second entity liable for Title VII violations.  *Bristol v. Bd. Of County Comm'Rs*, 312 F.3d 1213, 1217 (10th Cir., 2002) ("a plaintiff who is the employee of one entity may seek to hold another entity liable by claiming that the two entities are joint employers. This joint-employer test acknowledges that the two entities are separate, but looks to whether they co-determine the essential terms and conditions of employment.")[17]

The facts pleaded are insufficient to establish Circle Group exercised "sufficient control over the terms and conditions of employment" of the Plaintiffs to be considered a "joint employer."  *Knitter v. Corvias Military Living, LLC*, 758 F.3d 1214 (10th Cir., 2014).  Plaintiffs plainly acknowledge that they were hired by LA Drywall and paid by Gulf Coast Construction, that agents of LA Drywall set their pay-rate, that Gulf Coast Construction controlled their payroll on behalf of LA Drywall, and that agents of LA Drywall supervised them on a daily basis.[18] The

---

[17]  *See also Basulto v. Exact Staff, Inc.*, 2016 U.S. Dist. LEXIS 1739 (D. Colo., Jan. 6, 2016) ("Plaintiff asserts that he was employed by both Electronic Recyclers and Exact Staff; and Exact Staff concedes in the Motion to Dismiss that it hired Plaintiff into a temporary associate position and later arranged for him to interview with Electronic Recyclers.  Therefore, for the purposes of considering the instant Motion to Dismiss, the court will accept as true that Exact Staff and Electronic Recyclers are joint employers."); *Hopper v. RE/Max Props., Inc.*, 2015 U.S. Dist. Lexis 96925, p. 17 (D. Colo., 2015) (RE/Max "joint employer" under Title VII where RE/Max had the authority to supervise, discipline, and terminate her.)

[18]  Other factors applied to the "joint employer" determination include  "the ability to promulgate work rules and assignments, and set conditions of employment, including compensation, benefits , (footnote continued)

contract between LA Drywall and Circle Group reposed all responsibility in LA Drywall for the labor relations management of the drywall laborers it brought to the jobsite.[19]  While Circle Group maintained the contractual right to remove LA Drywall's laborers if they were "incompetent, disorderly, or otherwise unsatisfactory"[20] nothing in the contract gave Circle Group the right to terminate LAG Drywall's drywall workers from their employment with LA Drywall (or Gulf Coast Construction) or prevent them from working at other jobsites on behalf of LA Drywall.[21]  Plaintiffs' assertion that Circle Group "supervised" their work, standing alone as the only basis for "joint employer" status is also insufficient, considering the conclusory nature of the allegations in the complaint.  All actual details of what constituted the alleged

---

and hours…. day to day supervision of employees, including employee discipline; and …control of employee records, including payroll, insurance, taxes and the like." *Knitter*, 758 F.3d at 1226.

[19] **Exhibit 1** p. 11 § 2.6 ("Subcontractor shall engage a sufficient number of skilled workers to perform the Work promptly, and diligently, and in accordance with the requirements of the Subcontract"); p. 11 § 2.9 ("Subcontractor shall be responsible for all labor relations matters relating to its performance of the Work and shall at all times maintain harmony among the personnel employed by it and its Sub-subcontractors in connection with the Project with those of Contractor, Customer, Owner, and their other contractors.")

[20] **Exhibit 1** p. 12 § 2.10 ("If the Contractor notifies Subcontract in writing that any employee or agent of Subcontractor or one of its Sub-subcontractors is incompetent, disorderly, or otherwise unsatisfactory, such person shall immediately be removed, at Subcontractor's cost, from the Work and shall not thereafter be employed in the performance of the Work.")

[21] *See Covas-Alvarez v. Western Stock Show Ass'n*, 2010 U.S. Dist. LEXIS; 2010 WL 7370703 (Sept. 17, 2010) (Finding Western Stock Show Ass'n was not "joint employer" under Title VII where  1) agreement among two entities plainly divested alleged joint employer of any right to control second entity ("West") employees 2) West placed employee onsite and controlled her responsibilities 3) West paid the employee's salary 4) West retained sole authority to terminate employee and in fact terminated her."); *See also Knitter* (*supra*) (Affirming Picerne was not Title VII "joint employer" where "Picerne did not have authority to terminate Ms. Knitter's employment; (ii) Picerne did not pay Ms. Knitter directly; and (iii) Picerne did not have authority to supervise and discipline Ms. Knitter beyond the confines of a vendor-client relationship."); *Id.*, 758 F.3d at 1226 ("The most important fact to determining control over the terms and conditions of employment is "the right to terminate it under certain circumstances.")

"supervision" are omitted from the complaint or vague and conclusory, even though such information is within the Plaintiffs' knowledge and control. Defendants Ornelas and Mendiola of LA Drywall are alleged to have equally supervised all Plaintiffs, which combined with the other factors stated above, establish LAG Drywall and/or Gulf Coast Construction were Plaintiffs' sole employers within the meaning of Title VII.

Since Plaintiffs have failed to plausibly allege Circle Group was their "employer" under Title VII, Counts VIII and IX should be dismissed.

**2.    Circle Group is Not Plaintiffs "Employer" under the FLSA**

Plaintiffs allege all remaining Defendants including Circle Group were "joint employers" within the Fair Labor Standards Act ("FLSA") and violated provisions concerning overtime pay.[22] The Tenth Circuit has not expressly addressed the issue of "joint employment" under the FLSA. Some courts within the Tenth Circuit have applied the *Bonnette* factors as applied in the First and Ninth Circuits to determine whether two entities were "joint employers" under the FLSA, however, few courts within the Tenth Circuit have addressed allegations that multiple entities are "joint employers" under the FLSA for the same employee.[23]

---

[22] "The FLSA defines "employer", somewhat circularly as "any person acting directly or indirectly in the interest of an employer in relation to an employee…" 29 U.S.C. § 203(d)." *Perez v. Pinon Mgmt.,* 2013 U.S. Dist. LEXIS 37806 p. 21 (Aug. 9, 2016) ("To prove a claim for violation of the FLSA's overtime pay requirements, Ms. Perez must allege: (i) that the Defendant is an employer as defined by the Act; (ii) that she is an employee as defined by the Act: (iii) that the Defendant employed her services; (iv) for more than 40 hours in a single work week; and (v) that she did not receive compensation at a rate 1.5 times her normal hourly rate for the hours she worked over 40 in that week. 29 U.S.C. § 207(a)(1); *Figueroa v. District of Columbia Metropolitan Police Dept.,*633 F.3d 1129, 1134-35 (D.C. Cir., 2011)."

[23] *See Zachary v. Rescare Okla., Inc.,* 427 F. Supp. 2d 1175, 1178 (D. Okla, Nov. 30, 2006) ("[W]hether an alleged employer: 1) had the power to hire and fire the employees, 2) supervised (footnote continued)

Courts from other federal districts that have been faced with claims against numerous entities and individuals based on a "joint employer" theory, have generally dismissed claims against all entities that did not directly hire and manage the payroll for the employee alleging wage violations. For instance, the Court in *Cavallaro v. UMass Mem. Health Care, Inc.*, 971 F. Supp. 2d 139 (D. Mass., 2013) applying the same *Bonnette* test adopted in *Baystate Alt. Staffing, Inc. v. Herman*, 163 F. 3d 668, 675 (1st Cir. 1998) (and the *Zachary* court) dismissed the plaintiff's FLSA claims pursuant to F.R.C.P. 12(b)(6) against multiple corporate defendants and multiple individuals alleged to be "joint employers" under the FLSA. In reaching its conclusion the Court strictly applied the *Bonnette* factors to the facts alleged in the complaint, and determined the plaintiff had only plausibly alleged FLSA liability as to the single corporate entity that directly hired and issued paychecks to the plaintiff. *See also Roman v. Guapos III, Inc.*, 970 F. Supp. 2d 407 (D. Maryland, 2013) (Dismissing claims against multiple entities premised on "single integrated enterprise" theory.)

The *Cavallaro* court's reasoning is applicable to this case. Like *Cavallaro*, three of the four *Bonnette* factors weigh against "joint employer status" under the FLSA for Circle Group. Plaintiffs acknowledge that LA Drywall hired them, set the terms of their employment including their rate of rate, and directly supervised their work performance. Plaintiffs admit their paychecks came from Gulf Coast Construction, that Gulf Coast Construction controlled all payroll matters and maintained employment records on behalf of LADrywall. It is apparent

---

and controlled employee work schedules and conditions of employment, 3) determined the rate and method of payment, or 4) maintained employment records.")

that payroll issues on the jobsite were limited to workers directly employed by LAG Drywall and/or Gulf Coast since Plaintiffs acknowledges Circle Group directly employed its own workers on the jobsite and those workers were fully compensated for all hours including overtime. The fact that all Plaintiffs were brought to the jobsite by LA Drywall and paid by LA Drywall's sub-subcontractor is consistent with the contractual arrangements between the parties.

Since Plaintiffs have failed to plausibly allege Circle Group was their "employer" under the FLSA, Count I should be dismissed as to Circle Group.

### 3. Circle Group Is Not Liable Under the Equal Pay Act

The complaint alleges that all female Plaintiffs were hired by LA Drywall, paid by Gulf Coast Construction, and that Gulf Coast managed LA Drywall's payroll. Yet, the female named Plaintiffs (Solis, Lira, Gutierrez, and Miramontes) assert conclusory allegations that all Defendants, including Circle Group, discriminated against them on the basis of their female gender "by providing them with lower pay than similarly situated male colleagues" in violation of the Equal Pay Act amendment to the Fair Labor Standards Act.

Plaintiffs provide no actual facts establishing that any similarly situated male worker received more pay solely due to his gender. Instead, the sole "facts" alleged in support of the EPA claim against Circle Group are unsupported, vague, conclusory, and contradictory allegations that do not meet the *Twombly/Iqbal* standard for pleading.[24] The female Plaintiffs

---

[24] Plaintiffs allege Noe Portillo "was sometimes assigned to do cleaning/labor work. When he did this work, he was paid $20 per hour." FAC p. 25 ¶ 191. Nothing in this allegation indicates which entity employed or hired Noe Portillo, how often Mr. Portillo helped with cleaning/labor work nor does the complaint allege what type of work Mr. Portillo did when he was not working as a cleaner/laborer that may have explained his $20/hr pay rate. Plaintiffs further allege "Anthony Humilidad and Emmet Lee Morris also did cleaner/laborer work and told Plaintiff Lira (footnote continued)

acknowledge that men were assigned as cleaner/laborers alongside them, yet they do not identify a single instance of a male co-worker earning more money than them while working solely in the same position as a cleaner/laborer, do not identify any alleged amount of disparity in pay between their pay and the pay of male workers employed by the same entity that worked as cleaner/laborers, and do not identify a single instance in which a similarly situated male cleaner/laborer was promoted to dry-waller, let alone facts confirming that such promotion was based solely on gender. *Hall v. Witteman*, 584 F.3d 859, 863 (10th Cir.2009) (The complaint need not recite "detailed factual allegations, but the factual allegations must be enough to raise the right to relief above the speculative level."); *Salemi v. Colo. Pub. Emples. Ret. Ass'n*, 2016 U.S. Dist. LEXIS 43691 (D. Colo., Mar. 31, 2016) ("For an EPA claim, the plaintiff must show that employees of the opposite sex were paid differently for performing substantially equal work. If she meets this burden, the burden then shifts to the defendant to show that the wage disparity was justified by one of four affirmative defenses.")

**4.     Circle Group is Not Plaintiffs' Employers Under Colorado Wage Claim Act**

Plaintiffs acknowledge that they were hired and paid by entities other than Circle Group. None of the paystubs or paychecks Plaintiffs rely upon in support of their alleged wage violations came from Circle Group. Plaintiffs plainly acknowledge that Circle Group had its own employees on the jobsite that were "directly" employed by Circle Group.[25]

---

that they were paid $16 per hour and that they were being paid overtime." FAC p. 25 ¶ 192. Elsewhere in the complaint Plaintiffs acknowledge these individuals were direct employees of Circle Group. FAC p. 14 § 99. There are no facts indicating the discrepancy in pay was due to anything other than Plaintiffs' employment by a different entity.

[25] C.R.S. § 8-4-101(6) (6) ("'Employer' means every person, firm, partnership, association, (footnote continued)

Circle Group is not liable under the CWCA since "the Wage Claim Act focuses on the liability of the entity or person who created and maintained the employment relationship for payment of the wages and compensation due and payable under the employment contract." *Leonard v. McMorris,* 63 P.3d 323, 329 (Colo., 2003) (Responding to certified questions of law from the Tenth Circuit Court of Appeals). None of the plaintiffs were hired by Circle Group, none of them were paid by Circle Group, and they were not Circle Group's employees. *See also Accord Human Res. v. Indus. Claim Appeals Office of Colo.*, 275 P.3d 697, 701 (Colo. App., 2010) (Rejecting "joint employer" argument in the context of Colorado unemployment law and unemployment statutes.); *Bigby v. Big 3 Supply Co.,* 937 P.2d 794 (Applying "joint employer" test in the limited scope of the American with Disabilities Act).

The complaint plainly alleges either LA Drywall or Gulf Coast Construction hired every single Plaintiff, thus creating and maintaining the employment relationship. Gulf Coast controlled all payroll and LA Drywall was responsible for all labor relations for the Plaintiffs pursuant to its contract with Circle Group. There is no allegation that Circle Group maintained employment records, performed payroll, or managed labor relations concerning the Plaintiffs, and Count V against Circle Group should be dismissed accordingly.[26]

**5.     Retaliation Claims Under FLSA And CWCA Are Conclusory And Vague**

---

corporation, migratory field labor contractor or crew leader, receiver, or other officer of court in Colorado, and any agent or officer thereof, of the above mentioned classes, employing any person in Colorado; except that the provisions of this article shall not apply to the state or its agencies or entities, counties, cities and counties, municipal corporations, quasi-municipal corporations, school districts, and irrigation, reservoir, or drainage conservation companies or districts organized and existing under the laws of Colorado.")

[26] There is no Colorado state or federal case adopting a "joint employer" standard for the Colorado Wage Claim Act.

As indicated above, Circle Group is not an "employer" of the Plaintiffs within the accepted meaning of either the FLSA or CWCA,[27] and cannot be liable for claims arising out of either the FLSA or CWCA based on the allegations in the complaint. Regardless, six of the named Plaintiffs allege Circle Group "retaliated" against them for complaining about their wages. The allegations are conclusory and vague, and generally do not indicate when the complaint took place, to whom the complaint was made, and the sequence of events resulting in "retaliation" from the wage complaint.[28] *Robillard v. Bd. Of County Comm'rs,Colo.*, 2012 U.S. Dist. LEXIS 138191 (D. Colo., 2012) (Dismissing FLSA retaliation claim at the pleading stages where "[p]laintiff's allegations of retaliation are sparse and provide virtually no non-conclusory basis to conclude that he suffered any retaliation due to his complaints. The allegations are unclear concerning the chronology of events, appear to largely relate to policies impacting all employees of WCCO, and provide no basis to draw the inference that any of his treatment resulted from the fact that he communicated certain undefined "concerns."")[29] As a matter of

---

[27] Unlike the FLSA, the CWCA requires the institution of a formal complaint or proceeding and subsequent retaliation arising out of the institution of a formal proceeding. C.R.S. § 8-4-120 ("No employer shall intimidate, threaten, restrain, coerce, blacklist, discharge, or in any manner discriminate against any employee who has filed any complaint or instituted or caused to be instituted any proceeding under this article or related law or who has testified or may testify in any proceeding on behalf of himself, herself, or another regarding afforded protections under this article. Any employer who violates the provisions of this section is guilty of a misdemeanor and, upon conviction thereof, shall be punished by a fine of not more than five hundred dollars, or by imprisonment in the county jail for not more than sixty days, or by both such fine and imprisonment.")

[28] Salazar's and Rodriguez' allegations that they quit following arguments with Musto about unpaid wages owed by LA Drywall and Gulf Coast Constriction are conclusory.

[29] *Conner v. Schnuck Markets, Inc.*, 121 F.3d 1390, 1394 (10th Cir., 1997) ("To establish a prima facie case of retaliation under FLSA, Plaintiff must show that "(1) he or she engaged in activity (footnote continued)

law, based on this case, Circle Group cannot be liable for Plaintiffs' retaliation claims under either the FLSA or the CWCA and count XI should be dismissed.

**6.     Circle Group Had No Obligation To Hold Payments In Trust For Plaintiffs**

Plaintiffs assert Circle Group violated the Colorado Construction Trust Statute by failing to hold payments it received from the general contractor in trust for the benefit of Plaintiffs. *See* C.R.S. § 38-22-127. Plaintiffs generically allege that the "[d]efendants entered into employment agreements with Plaintiffs and those similarly situated." FAC, p. 39 ¶ 290. However, Plaintiffs fail to allege any facts supporting any "employment agreement" with Circle Group.

Rather, all Plaintiffs acknowledge they were hired by LA Drywall (which set the terms of their compensation) and were paid by Gulf Coast Construction. There are no facts supporting the elements of a contract with Circle Group under Colorado law. As part of Circle Group's sub-contract with LA Drywall, Circle Group required LA Drywall execute interim and final waivers and releases prior to the issuance of payment. *See* Affidavit of Mike Dominici (**Exhibit 1**, **Exhibit 2** and **Exhibit 3**). The agreement expressly required LA Drywall to hold all payments from Circle Group in trust for its laborers. *Id.*, **Exhibit 1** p. 12 ¶ 4.7 ("All funds paid to Subcontractor in connection with the Project constitute funds held in trust by Subcontractor.") Plaintiffs are estopped as a matter of law from asserting a claim under C.R.S. § 38-22-127[30]

---

protected by the FLSA; (2) he or she suffered adverse action by the employer subsequent to or contemporaneous with such employee activity; and (3) a causal connection existed between the employee's activity and employer's adverse action.")

[30] C.R.S. § 38-22-127(1) ("All funds disbursed to any contractor or subcontractor under any building, construction, or remodeling contract or on any construction project shall be held in trust for the payment of the subcontractors, laborer or material suppliers, or laborers who have furnished laborers, materials, services, or labor, who have lien, or may have a lien, against the (footnote continued)

against Circle Group since they had no contractual relationship with Circle Group, and their lien claims against Circle Group have been waived and released on their behalf by their employer LA Drywall and any sub-subcontractors. *In re Vill. Homes of Colo., Inc. v. Guaranty Bank*, 405 B.R. 479 (Bankr. D. Colo., 2009) (Affirming the validity of waivers and release of claims under the Trust Fund Statute.); C.R.S. §§ 38-22-127(3), 38-22-119.[31]

### 7. Plaintiffs Fail to Allege Viable Tennessee Claims Against Circle Group

Plaintiff Ceballos asserts two alternative Tennessee based claims against Circle Group, arising out of drywall work Ceballos alleges he performed at the Nashville SkyHouse project. The factual basis for these claims is vague and conclusory as to Circle Group and should be dismissed for failing to meet the *Iqbal/Twombly* pleading standards.

Ceballos does not provide any details concerning his alleged "employment contract" with Circle Group, including the essential terms of said contract (salary, term of employment, etc.) The sparse facts as alleged instead support an employment contract with LA Drywall only.[32] *Reid v. Express Logistics*, 2001 Tenn. App. LEXIS 870, p. 15 (Tenn. App., Nov. 26, 2001) ("The party seeking to enforce the oral contract must prove the parties entered the contract with mutual

---

property, or who claim, or may claim, against a principal and surety under the provisions of this article and for which such disbursement was made.")

[31] "If the contract or subcontractor has furnished a performance or payment bond or if the owner of the property has executed a written release to the contractor or subcontractor, he need not furnish any such bond or hold such payments or disbursements as trust funds, and the provisions of this section shall not apply."

[32] Ceballos alleges "LA Drywall recruited Plaintiff Ceballos for the Nashville project through Ceballos' family member." SAC, p. 12 ¶ 63. Moreover, when Ceballos, "has not received all of his wages for his work in Tennessee, he was told he should complain to LA Drywall and its agents." SAC, p. 13 ¶ (pp. 71-72).

assent and must demonstrate the contract's terms are sufficiently definite to be enforceable. A contract is sufficiently definite if the terms provide "a basis for determining the existence of a breach and for giving an appropriate remedy.") Dismissal is appropriate at the pleading stage since no terms of the alleged contract have been pleaded.

Similarly, Ceballos fails to allege that he exhausted all remedies against the entity with which he had privity of contract, in this case LA Drywall, a necessary prerequisite for unjust enrichment claims in Tennessee. *Freeman Indus., LLC v. Eastment Chem. Co.*, 172 S.W. 3d 512, 525 (Aug. 25, 2005) ("The plaintiff must further demonstrate that he or she has exhausted all remedies against the person with whom plaintiff enjoyed privity of contract."); *see also Lewis v. MedAssets Net Revenue Sys., LLC*, 2012 U.S. Dist. LEXIS 104714 p. 32 (M.D. Tenn., July 26, 2012) ("In Tennessee, the elements of an unjust enrichment claim are : (1) "[a] benefit conferred upon the defendant by the plaintiff; 2) appreciation by the defendant of such benefit; and 3) acceptance of such benefit under such circumstances that it would be inequitable for him to retain the benefit without payment of the value thereof.") These claims must be dismissed.

**8.     Generic State Wage Claim Violations Not Supported by Facts**

Plaintiffs assert a generic claim alleging violations of other state wage laws and seek recovery on behalf of the Rule 23 Nationwide class against all Defendants, including Circle Group, alleging, once again, that all Defendants were "joint employers" of the Rule 23 class. However, the complaint fails to allege a single "fact" establishing that Circle Group played any role in any other wage violations outside the state of Colorado. *Cavallaro* (*supra*) p. 152 ("Courts generally will not conduct full inquiry into collective action allegations at this stage, but collective action claims must nonetheless create a plausible entitlement to relief by putative class

members to survive a motion to dismiss.")

Even Plaintiff Ceballos, who claims he worked on the SkyHouse Tennessee project, does not allege a single fact establishing Circle Group's involvement in his payment of wages on that project. A vague conclusory allegation that Circle Group violated the wage laws of other unidentified states without a single allegation that even hired Ceballos in another state is insufficient to meet the *Twombly/Iqbal* pleading requirements, and should be dismissed. Plaintiffs' allegations against Circle Group based on unidentified violations of other states wage claim laws are likewise conclusory and devoid of factual support. None of the Plaintiffs were hired by Circle Group outside the state of Colorado, and no facts are alleged supporting an employment contract or relationship with any of the named Plaintiffs outside the state of Colorado. In sum, the claim is speculative, conclusory, and devoid of factual support and should be dismissed pursuant to F.R.C.P. 12(b)(6).

## 9. 42 U.S.C. § 1981 Claim Against Circle Group Also Fails

Plaintiffs again allege that LA Drywall and Circle Group were "joint employers" for purposes of their section 1981 claim. 42 U.S.C. § 1981 does not define "employer" and is not centered on the employee/employer relationship unlike the FLSA or Title VII. Instead, the plain language of the statute centers on discrimination arising out of the performance of contractual relationships.[33] *Perry v. Woodward*, 199 F.3d 1126 (10th Cir., 1999) ("Even as amended, section

---

[33] 42 U.S.C. § 1981 (a)-(b) ("All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts") ("Makes and enforce contracts" defined. For purposes of this section, the term "make and enforce contracts" included the making, performance, modifcation, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship.")

1981 continues to center on the protection of contractual rights. Although an employee can now seek redress for discriminatory conduct engaged in by her employer either before or after the formation of the employment relationship, any claim brought pursuant to section 1981 must still be supported by an underlying right of the employee to "make and enforce contracts.")

As indicated above, the allegations in the complaint are insufficient to establish the existence of even an oral employment contract with Circle Group for any of the Plaintiffs. All Plaintiffs allege they were hired by LA Drywall, that LA Drywall placed them at the jobsite, and that LA Drywall paid them through their outsourced payroll contractor, Gulf Coast Construction. The complaint does not allege sufficient facts to establish any of the terms of an actual employment contract with Circle Group to survive dismissal at the pleading stage, and discrimination claims pursuant to § 1981 against Circle Group should be dismissed accordingly.

### III.   CONCLUSION

Plaintiffs have failed to properly plead all claims (Claim I through XI) against Defendant The Circle Group, LLC and claims should be dismissed accordingly.

WHEREFORE, Defendant The Circle Group, LLC respectfully requests that the Court dismiss Plaintiffs' Complaint with Prejudice as to The Circle Group, LLC pursuant to F.R.C.P. 12(b)(6).

Dated:  November 29, 2016            Respectfully Submitted,

By:   *s/ Rolf J. von Merveldt III*
Rolf J. von Merveldt III
LEWIS BRISBOIS BISGAARD & SMITH LLP
1700 Lincoln Street, Suite 4000
Denver, Colorado 80203
Phone:  303.861.7760
Rolf.vonmerveldt@lewisbrisbois.com
*Attorneys for Defendants The Circle Group, LLC*

## CERTIFICATE OF SERVICE

I hereby certify that on this 29th day of November, 2016, a true and correct copy of **DEFENDANT THE CIRCLE GROUP, LLC's MOTION TO DISMISS PLAINTIFFS' FOURTH AMENDED COMPLAINT** was filed and served electronically through the ECF electronic filing system, which will send notification of the filing to the following

David Hollis Seligman
Alexander Neville Hood
Towards Justice-Denver
1535 High Street, Suite 300
Denver, CO 80218
*Attorneys for Plaintiffs*

Mary J. Lowrey
Sarah J. Parady
Lowrey Parady, LLC
1725 High Street, Suite I
Denver, CO 80218
*Attorneys for Plaintiffs*

Ellie Lockwood
James D. Kilroy
Snell & Wilmer, LLP-Denver
1200 17th Street, Suite 1900
One Tabor Center
Denver, CO 80202
*Attorneys for Defendant L.A.G. Drywall*

Bijan Kasraie
Kasraie & Fodor, LLC
1775 The Exchange, Suite 410
Atlanta, GA 30339
bkasraie@kflawllc.com
*Attorney for Gulf Coast Construction, Inc.*

*s/ Marian Mesta*
A duly signed original is on file at the Law Offices of LEWIS BRISBOIS