**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

Civil Case No. 1:16-cv-01329-RBJ

VIOLETA SOLIS,
CESAR SALAZAR,
EDGAR CEBALLOS,
AARON SALAS,
HILDEBERTO ALDECO BALTAZAR,
JUAN RAMON RODRIGUEZ,
ADRIANA LIRA,
NANCY GUTIERREZ,
BEATRIZ MIRAMONTES,
and those similarly situated;

      Plaintiffs,

v.

THE CIRCLE GROUP, LLC,
JAVIER MARTINEZ DRYWALL, LLC,
GULF COAST CONSTRUCTION, INC.,

      Defendants.

---

**JOINT MOTION FOR PRELIMINARY APPROVAL OF PROPOSED CLASS ACTION
SETTLEMENT**

---

The named Plaintiffs and Defendant The Circle Group, LLC ("Circle Group") (collectively

"Parties"), through undersigned counsel and pursuant to Federal Rule of Civil Procedure 23(e),

respectfully submit this Joint Motion for Preliminary Approval of Proposed Class Action

Settlement.

## I.   INTRODUCTION

With the help of former Magistrate Judge Boyd N. Boland in a mediation held on June 30,

2017, the Parties have come to terms on a classwide settlement. As the Court well knows, the

parties have had significant disagreements about legal and factual issues at the core of this dispute—and in particular whether Circle Group employed Plaintiffs and the class as a matter of state and federal law and, if so, in what capacity.  Indeed, significant discovery, along with numerous motions to this Court, demonstrate the disputes between the parties. All parties, however, acknowledge the risk of an adverse outcome after trial and thus agree to the attached settlement. In this motion, the parties jointly request that the Court preliminarily approve the settlement (attached as Exhibit 1[1]) so that notice may be sent to the class (Exhibit 2), a fairness hearing may be set, and the parties can move toward final approval.

Because the claims made by the Named Plaintiffs, on their own behalf and on behalf of the putative class, involve the same people with the same state and federal wage claims, the parties seek what is called a hybrid settlement. As will be discussed in more detail below, hybrid settlements have frequently been approved in the United States District Court for the District of Colorado. *Belice Pliego v. Los Arcos Mexican Restaurant, Inc.*, 313 F.R.D. 117 (D. Colo. 2016); *Lozoya v. AllPhase Landscape Const. Inc.*, No. 12-cv-1048-JLK (D. Colo. Mar. 31, 2015); *Bass v. PJCOMN Acquisition Corp.*, No. 09-cv-01614-REB-MEH (D. Colo. June 1, 2011).

Finally, the parties wish to highlight two aspects of the settlement that the Court should bear in mind when considering whether to preliminary approve it.

- The settlement would resolve all claims in this case, ending the litigation.

- The monetary value of the settlement, even after subtracting estimated attorney's fees and

---

[1] Counsel for both sides represent that the parties agree to the attached proposed settlement agreement, which is consistent with the material terms to which they agreed at mediation. Upon preliminary approval by the Court, the Parties agree to execute the proposed settlement agreement.

costs, service awards, and settlement administration fees, would provide the proposed Rule 23 class with substantially all its estimated alleged monetary damages from unpaid wages and overtime premiums based on an analysis performed by an expert retained by Plaintiffs' counsel.

## II.     RELEVANT FACTUAL HISTORY

The facts of this case, as well as the bona fide disputes as to matters of law and fact, are well known to the Court.  Relevant for this Motion, however, is that the Named Plaintiffs, as well as the putative class members, all allegedly provided labor at the SkyHouse Denver site between September 2015 and July 2016, and all Named Plaintiffs and the putative class have the exact same state and federal wage and hour claims.  More specifically, the nine Named Plaintiffs in this case, in addition to their own individual claims, represent a class of approximately 150-200 workers who installed drywall and performed other construction-related tasks at the SkyHouse Denver luxury condominium building at the intersection of 18th Avenue and Broadway in Downtown Denver. The members of the proposed class provided services in some capacity, which is disputed by the parties, between approximately September 2015 and July 2016.

In regard to the project at SkyHouse Denver, Defendant Circle Group served as the drywall subcontractor for general contractor Batson Cook.  Circle Group then entered into a sub-subcontract for the drywall labor with a company called L.A.G. Drywall, Inc. ("LAG Drywall").[2]

---

[2] Plaintiffs reached an early settlement with former Defendant LAG Drywall. This settlement was only between LAG Drywall and each of the nine original named Plaintiffs and three additional individuals who had opted into the class at that point (Alejandro Tapia, Ramon Rodriguez—a different individual than Plaintiff Juan Ramon Rodriguez—and Benito Romero). The LAG settlement did not fully compensate those workers for their alleged lost wages. In calculating distributions to individual class members from the attached class settlement, lost wages recovered from the LAG Drywall settlements will be subtracted. *See* Ex. 1, ¶9 (d).

LAG Drywall then entered into its own sub-subcontract for the drywall labor at SkyHouse Denver with several other contractors, including Gulf Coast Construction, Inc. ("Gulf Coast Construction").[3]

In jointly seeking approval for settlement and the settlement class, it is important to note that all Plaintiffs, including the Named Plaintiffs and the putative class plaintiffs, all allege common wage claim—that they were not paid overtime premiums and were not paid at all for some hours worked. While the parties dispute whether Circle Group employed Plaintiffs and the Class and whether Plaintiffs were employees or independent contractors, the Parties have agreed to a settlement that fairly considers all claims and defenses and adequately compensates class members.

## III.   SETTLEMENT TERMS

On June 30, 2017, the Parties participated in a mediation facilitated by former Magistrate Judge for the District of Colorado Boyd N. Boland. Prior to the mediation, Judge Boland was given copies of the pleadings as well as a mediation statement from each party.  After negotiations facilitated by Judge Boland, the Parties came to terms in principle on individual settlements of the Named Plaintiffs' Title VII claims as well as a class-wide settlement of Named Plaintiffs' and the alleged classes' wage claims.

The Parties worked together to finalize the settlement, attached hereto as Exhibit 1, which they now ask the Court to approve.  In summary, the settlement agreement provides that Circle Group is to pay $700,000 in full and final settlement of this dispute for the Named Plaintiffs and

---

[3] Defendant Gulf Coast Construction filed for bankruptcy soon after this case was filed. *In re Gulf Coast Construction,* 16-61905 (Bankr. N.D. Ga.).

the putative wage-and-hour class.  The settlement agreement also provides an agreement between the parties for a hybrid settlement of this dispute, involving both the state and federal wage and hour claims.  The Parties have agreed to the following distribution of settlement funds:

| | | |
|---|---|---|
| $50,400.00 | Named Plaintiffs | |
| $9,000.00 | Proposed Service Award | |
| $640,000.00 | Putative Wage and Hour Class | |
| **$700,000.00** | **TOTAL** | |

In terms of the settlement payments to the Name Plaintiffs, the amount will be equally distributed to the nine named Plaintiffs, or $5,600 per Named Plaintiff. Plaintiffs' counsel will recover attorney's fees from those amounts pursuant to fee agreements between Plaintiffs' Counsel and the Named Plaintiffs.

Next, the Parties have agreed, subject to the Court's approval, to a payment of $9,000.00 to the Named Plaintiffs' as a "service award" for their efforts in pursuing this dispute.  In total and as proposed, each Named Plaintiff will receive $1,000.00, without any reduction for attorney's fees, as a service award.

Finally, the parties have agreed to allocate $640,000 of the total settlement for payment into a common fund to remedy wage-and-hour claims on behalf of the class. The Parties agree that this amount will provide the putative class members nearly all of their ascertainable lost wages. In an effort to determine if this settlement amount was reasonable, Plaintiffs' counsel has worked with an expert to estimate the total lost wages.  *See* Ex. 5, Parady Decl. ¶¶ 8-10. Based on information obtained during the discovery process, Plaintiffs' counsel has determined that an average worker in the proposed class worked 56 hours per week. *Id.* Based on this information, the expert was able to calculate that based on the difference between timesheet hours and a 56-hour week, the proposed class is owed approximately **$441,307.00** in unpaid wages and overtime

premises. *Id.* The Parties anticipate that the Net Settlement Fund—the Settlement Payment ***after***

attorney's fees (discussed below), the individual settlements described above, and administration

costs—will be no less than $400,000.00, and will thus nearly completely compensate the entire

estimated putative class. By contrast, the amount of unpaid wages most easily provable at trial—

unpaid overtime premiums for hours that are reflected on the LAG Drywall timesheets—is roughly

half this amount. *Id.* at ¶ 11.

Relatedly, the Parties have also agreed, subject to the Court's approval, to a 30% payment

of attorney's fees to Plaintiffs' Counsel for their services on behalf of the class, for an amount

roughly equal to $192,180.00.  Plaintiffs' counsel will also ask, subject to Court approval, for their

costs in pursuing this litigation, but no set amount has been produced by Plaintiffs' counsel for

their costs at this stage, though the total amount payable to the class will be no less than $400,000.

The 30% fee amount is presumptively reasonable, *Vaszlavik v. Storage Corp.*, 2000 WL 1268824,

at *4 (D. Colo. Mar. 9, 2000), and it is well within the range of attorney's fees awarded in common

fund cases in this Circuit, *see, e.g.*, *CompSource Oklahoma v. BNY Mellon, N.A.*, 2012 WL

6864701, at *8 (E.D. Okl Oct. 25, 2012) (describing a range from 22 percent to 37 percent).

Moreover, this amount will compensate Plaintiffs' counsel only for about 50% of their actual time

billed to the case at their hourly rates, which are highly reasonable for counsel of their experience

level. *See* Ex. 5, Parady Decl. ¶ 5; Ex. 6, Seligman Decl. ¶ 6.

## IV.    CLASS CERTIFICATION AND OPT-OUT PROCESS

As stated above, this case principally involves two sets of wage claims common to the

Named Plaintiffs and the putative settlement class. Both claims revolve around the same set of

facts and the same labor pool, but are alleged under both the Colorado Wage Act ("CWA"), C.R.S.

§§ 8-4-101, *et seq.*, and the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201, *et seq.*[4] Because the same people in the putative class have the same causes of action arising out of a common set of facts, the Parties agreed to pursue a hybrid settlement.

### A. Hybrid Settlements

In filing this lawsuit, Plaintiffs alleged both state and federal causes of action for the alleged failure to pay lawful wages and overtime premiums. These claims involve the same workers and the same underlying facts.  The mechanisms for properly certifying and administering the state and federal wage law claims, however, are not the same.  Class actions based on state wage laws are governed by Fed. R. Civ. P. 23.  Under this paradigm, class members must be sent notice that provides that any class member "who does not wish to be bound by the judgment must timely exclude themselves by affirmatively opting-out of the class." *Pliego*, 313 F.R.D at 123; Fed. R. Civ. P. 23(c)(2)(B).  Conversely, the FLSA and federal courts interpreting the FLSA have concluded that "employees must affirmatively opt-in to the case in order to be bound by a judgment in FLSA collective actions." *Pliego*, 313 F.R.D at 124; 29 U.S.C. § 216(b).

"[T]he most recent cases arising in this District tend toward approving [hybrid settlements]." *Pliego*, 313 F.R.D. at 125.  With regard to hybrid settlements, "[t]he review and approval of a class action settlement is undertaken in three steps: (1) preliminary approval of the proposed settlement after submission of a written motion for preliminary approval, the proposed

---

[4] This lawsuit also involves claims made by the Named Plaintiff for equal pay; breach of fiduciary duty and civil theft; sex, race, national origin, ancestry, and sex plus race/national origin/ancestry Title VII discrimination; race, national origin, and ancestry discrimination under 42 U.S.C. § 1981; and retaliation in violation of the FLSA and CWCA.  Named Plaintiffs have settled on their own behalf these claims and no class certification is sought in relation to these claims. As such, this proposed settlement extinguishes these claims, as well.

class settlement, and the proposed class notice; (2) dissemination of mailed and/or published notice of the settlement to all affected settlement class members; and (3) a formal fairness hearing or final settlement approval hearing, at which time class members may be heard regarding the settlement, and at which time evidence and argument concerning the fairness, adequacy and reasonableness of the settlement may be presented." *Id.*

**B.**  **Preliminary Certification of Opt-In/Rule 23 Class**

As part of the settlement, and for the purposes of settlement only, the Parties have agreed to the certification of the following Rule 23 and FLSA § 216(b) settlement-only class (the "Class"):

> ALL EMPLOYEES OF CIRCLE GROUP OR ANY PERSON OR INDIVIDUAL CONTRACTOR WHO PERFORMED DRYWALL LABOR AND/OR CONSTRUCTION-RELATED LABOR UNDER CIRCLE GROUP ON THE SKYHOUSE DENVER PROJECT BETWEEN SEPTEMBER 2015 AND JULY 2016.

When faced with a settlement-only class, a party must still show satisfaction with Rule 23 class certification requirements. *Pliego*, 313 F.R.D. at 125. To satisfy the requirements of Rule 23(a), the Parties must show that "(1) the class is so numerous that joinder of all members is impracticable [(numerosity)]; (2) there are questions of law or fact common to the class [(commonality)]; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class [(typicality)]; and (4) the representative parties will fairly and adequately protect the interests of the class [(adequacy)]." Fed. R. Civ. P. 23. Then, to certify a damages class under Rule 23(b)(3), the Parties must show that the class meets two additional requirements: (1) "that the questions of law or fact common to the class members predominate over any questions affecting only individual members" (predominance), and (2) "that a class action is superior to other

available methods for fairly and efficiently adjudicating the controversy," (superiority). Fed. R. Civ. P. 23(b)(3).

### 1.  Rule 23(a) Factors

#### a.  Numerosity

"A certifiable class must be so numerous that joinder is impracticable." *Helmer v. Goodyear Tire & Rubber Co.*, Civil Action 12-cv-00685-RBJ-MEH (D. Colo. Mar. 21, 2014). "Numerosity also requires that the members of the class be ascertainable with the use of objective criteria." *Id*.

The Parties agree that there are approximately 150-200 putative class members. The vast majority of class members are ascertainable through review of records obtained from LAG Drywall and Gulf Coast Construction. Specifically, the following records allow the class members to be ascertained: job applications to Gulf Coast Construction, timesheets maintained by LAG Drywall, and payroll records from Gulf Coast Construction. Ex. 5, Parady Decl. ¶ 8. In addition, a review of the applicable records indicates that the approximately 150-200 class members are also geographically scattered, suggesting that joinder of these parties would be difficult to manage. Because the class is so numerous and geographically scattered, making joinder impracticable, and because the class is readily ascertainable, the proposed class presumptively satisfies the numerosity requirement in Rule 23(a). Alba Conte, Herbert B. Newberg, & William B. Rubenstein, *Newberg on Class Actions* § 3:12 (5th ed. 2011) (suggesting that a class of 40 or more members should presumptively satisfy numerosity) ("*Newberg*").

#### b.  Commonality

The Tenth Circuit has explained that a finding of commonality requires "only a single

question of law or fact common to the class," *DG v. Devaughn*, 594 F.3d 1188, 1194-1195 (10th Cir. 2010), so long has the common contention is "capable of classwide resolution-which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal-Mart Stores v. Dukes*, 131 S. Ct. 2551, 2551 (2011). It is "not necessary that all of the elements of the claim entail questions of fact and law that are common to the class, nor that the answers to those common questions be dispositive." *CGC Holding Co., LLC v. Broad & Cassel*, 773 F.3d 1076, 1087 (10th Cir. 2014). "Commonality still exists if class members differ factually but challenge the application of a commonly-applied policy." *J.B. ex rel Hart v. Valdez*, 186 F.3d 1280, 1288 (10th Cir. 1999).

The putative class clearly satisfies commonality. The common question at the core of each of the class member's claims is whether the drywall workers at the SkyHouse Denver project were paid the legally required wages for their services. In this case, Plaintiffs allege that the class members were all subject to the same company-wide policy of non-payment of wages and overtime premiums for hours worked. While there may be factual differences for each class member on the number of hours worked, each class member's claims turn on the same legal analysis, including whether class members were employees or independent contractors and whether they were employed by Circle Group.

### c.  Typicality

The named Plaintiffs' claims are also typical of the claims of the putative class. Like all members of the putative class, they allege that they were not paid for all hours worked and were never paid overtime premiums. *Bass,* 2011 WL 2149602, at *3 ("A plaintiff's claim is typical of class claims if it challenges the same conduct that would be challenged by the class."). And like

all other workers working under the Circle Group, they were subject to the same alleged conduct under which Circle Group and its subcontractors failed to properly pay wages, including overtime premiums for hours worked.

### d.  Adequacy of Representation

"The adequate representation requirement of Rule 23(a)(4) concerns both the competence of the class representative's counsel and the representative's willingness and ability to control the litigation and to protect the interests of the class as a whole." *Maez. V. Springs Auto. Group, LLC*, 268 F.R.D. 391, 396 (D. Colo. 2010).  In this matter, Plaintiffs and Plaintiffs' counsel can "fairly and adequately protect the interest of the class." Fed. R. Civ. Proc. 23(a)(4). There is no apparent conflict of interest between the putative class members and either the Named Plaintiffs or Named Plaintiffs' counsel.

First, the Named Plaintiffs' incentives are aligned with those of the class because their claims for improperly paid wages are governed by the same legal theories of liability as the remaining class members. In addition, the Named Plaintiffs are competent and knowledgeable class representatives who have pursued this action vigorously on behalf of their unnamed coworkers. *Rutter & Willbanks Corp. v. Shell Oil Co.*, 314 F.3d 1189, 1187-88 (10th Cir. 2002). Further, the nine Named Plaintiffs represent a cross-section of the workers on the project, in that they worked during different timeframes, on difference crews, and in different positions, and were performing the same type of services at the alleged location allegedly under the direction and control of Circle Group.

The fact that the Named Plaintiffs have asserted non-class discrimination claims does not alter this analysis. The presence of individual claims does not on its own present an obstacle to

certification, and as explained below, it presents an obstacle to settlement approval only where there is evidence that the Named Plaintiffs have used the class action as leverage for their individual claims or accepted a suboptimal class settlement in exchange for larger individual payouts. *See, e.g.*, *Rowe v. E.I. DuPont de Nemours & Co.*, 2011 WL 3837106, at *5 (D.N.J. Aug. 26, 2011); *Krzesniak v. Cendant Corp.*, 2007 WL 1795703, at *9 (N.D. Cal. June 20, 2007).

Further, Plaintiffs' attorneys' incentives are aligned with the class as their contingent fee agreement with the named Plaintiffs only allows the attorneys to be compensated if the successfully prosecute the suit. *See Rutter & Wilbanks Corp. v. Shell Oil Co.*, 314 F.3d 1180, 1187-1188 (10th Cir. 2002).

Additionally, Plaintiffs' counsel has considerable experience representing workers (and low-wage workers in particular) in class and collective actions. Among other cases, Towards Justice is class counsel to 60,000 current and former detainees of an immigrant detention facility in Aurora, Colorado, *see Menocal v. The GEO Group*, 14-02887 (D. Colo), and counsel to a Colorado Rule 23 Class in a wage-and-hour case brought on behalf of hundreds of current and former employees of a company that cleans kitchen grease hoods at fast food restaurants, *Avendano v. Averus*, 14-01614 (D. Colo.). Ex. 6, Seligman Decl. Lowrey Parady, LLC is experienced in employment litigation in Colorado, including substantial experience litigating discrimination cases on behalf of Colorado workers under federal and state law.  Both Towards Justice has bilingual staff members who can communicate with Plaintiffs and absent class members in Spanish.[5]  Ex 6, Seligman Decl.

---

[5] For these reasons, the Court should also appoint Towards Justice and Lowrey Parady, LLC as class counsel pursuant to Fed. R. Civ. P. 23(g).

### 2.  Rule 23(b)(3) Factors

"Rule 23(b) requires a party seeking class certification to show either: (1) separate actions by class members would create a risk of inconsistent adjudications affecting the rights or obligations of class members or Defendants; (ii) that the Defendants have acted or refused to act on grounds applying generally to the class, such that class-wide injunctive relief is appropriate; or Iiii) that the common questions of fact or law predominate over individual questions." *Pliego*, 313 F.R.D. at 127; Fed. R. Civ. P. 23(b)(1)-(3).  Much like the approved putative wage-and-hour class in *Pliego*, the requirements of Rule 23(b) are satisfied because the common questions of law predominate over any individual questions, and that a class action resolution of this dispute is superior to individual actions.

### a.  Predominance

The Parties can also establish that common questions predominate over individual ones. For common questions of law or fact to predominate under Rule 23(b)(3), "[i]t is not necessary that all of the elements of the claim entail questions of fact and law that are common to the class, nor that answers to those common questions" be dispositive of the plaintiff's claims. *CGC Holding Co., LLC v. Broad & Cassel*, 773 F.3d 1076, 1087 (10th Cir. 2014). Rather, "the predominance prong asks whether the common, aggregation-enabling, issues in the case are more prevalent or important than the non-common, aggregation-defeating, individual issues." *Id.* (internal quotation marks omitted).  "Classwide issues predominate if resolution of some of the legal or factual questions that qualify each class member's case as a genuine controversy can be achieved through generalized proof, and if these particular issues are more substantial than the issues subject to only individualized proof." *Pliego*, 313 F.R.D at 127.

This dispute involves a controversy related to the labor workforce utilized by Circle Group at the SkyHouse Denver site during a specific time period. All of the drywall labor and construction-related labor at the SkyHouse Denver used by Circle Group were paid at the same time and in the same manner under the same payment policies and practices. Therefore, class members were subject to the same alleged treatment and seek relief under the same legal theories related to the payment of wages. There are disputes between the Parties, however, in regard to the application of certain legal principles, including the concept of joint employment, and the existence of fully executed independent contractor agreements with members of the class. Those factual and legal distinctions, however, are not relevant to this application for a settlement class certification because the Parties agree that for the purposes of settlement the class members were subject to the same practices related to the payment of their wages, and therefore these claims do not present predominance-defeating individual issues.

To be sure, the amount of damages will vary, perhaps considerably, among class members. Not all employees are owed the same wage, worked the same number of hours, or stayed on at SkyHouse for the same number of weeks. But these differences bear only on the *amount* of damages owed to individual class members and "individualized damages determinations alone cannot preclude class certification." *Roach v. T.L. Cannon Corp.*, 778 F.3d 401, 409 (2d Cir. 2015) (in the context of a NY class action wage claim, "individualized damages determinations alone cannot preclude certification under Rule 23(b)(3)").

In this case, fact-intensive, individualized damages determinations are not necessary. In the wage-and-hour context, a single formula can often be applied to mechanically calculate individual damages. *See, e.g.*, *Hart v. Rick's Cabaret Int'l, Inc.*, 60 F. Supp. 3d 447, 472 (S.D.N.Y. 2014)

(certification appropriate where "(1) damages [are] capable of class-wide determination, or (2) individual damage calculations are simple and mechanical, so as not to overwhelm questions common to the class."). Indeed, in this case, Plaintiffs propose distribution to each class member based on the number of weeks that class member worked. *See, e.g.*, *Hall v. ProSource Techs, LLC*, 2016 WL 1555128 (S.D.N.Y. Apr. 11, 2016) (finally approving class settlement that included such an allocation).

### b.  Superiority

"In terms of efficiency for the parties and for the court, a class action is superior to individual suits in the effort to achieve a fair and efficient adjudication of the plaintiffs' claims." *Bass*, 2011 WL 2149602, at *4. "The class action is a superior method of adjudicating the instant case because the absent Class Members to date have shown no interest in controlling the litigation of separate actions and because no other litigation regarding this controversy has been commenced." *Pliego*, 331 F.R.D at 127.  In regard to a similar dispute in this District, a court stated that

> [t]he class action vehicle is also the superior method for adjudicating this controversy because it involves the relatively small claims of low-wage workers, most of whom lack English proficiency, and most of whom were paid at or near the minimum wage.  Courts in this District have repeatedly recognized that a class action is superior where the small claims of parties with limited resources are otherwise unlikely to be pursued.

*Pliego*, 331 F.R.D. 127.

To the knowledge of the named Plaintiffs, no other potential class member has filed any claim in any court or administrative proceeding for unpaid wages against Circle Group outside of this litigation. Thus, no other potential class member has demonstrated an interest in controlling this litigation. *See* Fed. R. Civ. P. 23(b)(3)(A)-(B). Furthermore, the District of Colorado is ideal

for the concentration of this litigation because the work on the SkyHouse Denver project took place in this District. *See id.* 23(b)(3)(C). The putative class action is unlikely to be difficult to manage because of the common question whether employees were jointly employed by Circle Group.

Finally, the class action vehicle is the superior method for adjudicating this controversy because it involves small claims of low-wage workers, most of whom lack English proficiency and also lack the resources to hire private counsel. Based on the discovery in this matter, the parties agree that the putative class members are all laborers working at or just above the applicable minimum wage, are largely transitory, and have varying degrees of English language proficiency. Given that the members of the putative class are unlikely to pursue claims on their own, the class action mechanism is a superior way to provide the putative class members redress for the alleged claims.

Based on the above arguments, the Parties believe that the proposed settlement class satisfies the prerequisites of Rule 23 and of the FLSA.  As such, the Parties respectfully request the Court preliminarily certify the Rule 23 Class and the FLSA collective, as defined as  "[a]ll Employees of Circle Group or any person or contractor who performed drywall labor and/or any construction-related labor under Circle Group on the Skyhouse  Denver Project between September 2015 and July 2016."

C.  **The Notice, Notice Plan, Opt-Out Form are Reasonable and Should be Approved**

When a court determines that a settlement warrants preliminary approval, Rule 23(e)(1)(B) requires the Court to "direct notice in a reasonable manner to all class members who would be bound by a proposed settlement." The notice provided to a class certified under Rule 23(b)(3) must

be the "best notice practicable under the circumstances." Fed. R. Civ. P. 23(c)(2)(B); *see also*

*Phillips Petroleum Co. v. Shutts*, 472 U.S 797, 811-12 (1985). Notice is sufficient "if it generally

describes the terms of the settlement in sufficient detail to alert those with adverse viewpoints to

investigate and to come forward and be heard." *Churchill Village, L.L.C. v. Gen. Elec.*, 361 F.3d

566, 575 (9th Cir. 2004) (internal citations omitted). The notice should inform class members "that

the court will exclude from the class any member who requests exclusion, stating when and how

members may elect to be excluded." Fed. R. Civ. P. 23(b)(2)(B).

Mailing notice to each member of a settlement class "who can be identified through

reasonable effort" is presumptively reasonable and sufficient. *Eisen v. Carlisle & Jacquelin*, 417

U.S. 156, 176 (1974). But in identifying the "best notice practicable," courts are mindful of the

circumstances of the case and the relevant class. Particularly where the class is transient, notice

via the Internet or cell phone is often the most effective way of contacting absent class members.

*See, e.g.*, *Schemkes v. Presidential Limousine,* 2011 WL 868182, at *4 (D. Nev. Mar. 10, 2011)

(finding distribution of notice of proposed FLSA collective action via e-mail, in addition to first

class mail, appropriate due to long length of time alleged conduct dated back and rampant

foreclosure in relevant geographic area); *Gutierrez v. Wells Fargo Bank, N.A.*, 730 F. Supp. 2d

1080, 1140 (N.D. Cal. 2010) (following favorable class judgment, ordering defendant bank to

provide class counsel with class members' last known U.S. mail address, last known e-mail

address, and last known telephone number).

The Parties propose the notice attached in English as Exhibit 2 and the notice plan outlined

in the settlement, *see* Ex. 1, ¶ 8. The Parties also attach a proposed opt-out form as Exhibit 3 and

a proposed opt-in/claim form as Exhibit 4. The notice is sufficient as required by the requirements

17

above and Fed. R. Civ. P. 23(c)(1)(2). Moreover, the notice plan is designed to provide notice to a high percentage of class members. Ex. 7, Optime Decl. Additionally, to reach as many potential class members as possible, the parties proposed that a form of the notice be published in a Spanish speaking newspaper.

In addition, the settlement does not require an extensive claims process. Instead of requiring class members to submit a lengthy claim forms, simple to use color-specific opt-in/opt-out forms will be transmitted by the class administrator to the putative class. *See* Exs. 3 & 4. In addition, the class administrator will use its best efforts to contact class members about how they can recover distributions from the Net Settlement Fund and will be required to contact class members via text messages. *See* Ex. 1, ¶ 31.

This notice and claims process is designed to be effective in (1) getting ***actual*** notice to as many members of the putative class as possible, and (2) distributing settlement funds to as many of those workers as possible who do not opt out of the settlement.

## V.   THE SETTLEMENT SHOULD BE PRELIMINARILY APPROVED

"Preliminary approval of a class action settlement, in contrast to final approval, is at most a determination that there is…'probable cause' to submit the proposal to class members and hold a full-scale hearing as to its fairness." *In re Crocs, Inc. Securities Litig.*, 2013 WL 4547404, at *3 (D. Colo. 2013) (quoting *Davis v. J.P. Morgan Chase & Co.*, 775 F. Supp. 2d 601, 607 (W.D.N.Y. 2011)). "A proposed settlement of a class action should therefore be preliminarily approved where it appears to be the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, and does not improperly grant preferential treatment to class representatives." *Id.* (citing *In re Motor Fuel Temperature Sales Practices Litig.*, 286 F.R.D. 488, 492 (D. Kan. 2012)).

Additionally, "[i]n the context of settlement of an FLSA [action], a district court must 'scrutiniz[e] the settlement for fairness' and decide whether the proposed settlement is a 'fair and reasonable resolution (sic) of a bona fide dispute over FLSA provisions." *Pliego*, 313 F.R.D. at 127-28 (citing *Lynn's Food Stores v. United States*, 679 F.2d 1350, 1353-55 (11th Cir. 1982). "If the settlement reflects a reasonable compromise of issues in dispute, the court may approve the settlement to promote the policy of encouraging settlement of litigation." *Id*.   "The object of preliminary approval is for the Court 'to determine whether notice of the proposed settlement should be sent to the class, not to make a final determination of the settlement's fairness.'" *Id*. (citing *Lucas v. Kmart Corp.*, 234 F.R.D. 688, 693 (D. Colo. 2006) ("The purpose of the preliminary approval process is to determine whether there is any reason not to notify the class members of the proposed settlement and to proceed with a fairness hearing.").

When faced with a request for the approval of a hybrid settlement, "this court will combine the factors applicable to preliminary approval of an FLSA action with those for approval of a Rule 23 class settlement in determining whether preliminary approval of the settlement should be given." *Pliego*, 313 F.R.D. at 128.   Given the similarities between this dispute and *Pliego*, the parties have chosen to largely follow the framework developed in that matter.

### A. Bona Fide Dispute in an Adversarial Context Concerning Disputed Questions of Law and Fact

Much like the approved hybrid settlement in *Pliego*, this case was hotly contested and litigated by the parties.   The lawsuit was initially filed on June 2, 2016.   In the one year and two months (or roughly 456 days) since the filing of this lawsuit, 147 items have been filed with the Court.   Plaintiffs have amended their complaint four times and defendants filed highly contested motions to dismiss.

In addition, the Parties have engaged in extensive discovery.  In response to discovery requests, over 25,000 documents have been produced and reviewed by counsel. Many depositions have occurred, including five depositions in Atlanta, Georgia.  Discovery has not always been amicable, and the parties had significant disputes related to deposition testimony.  In addition, a motion to compel discovery responses was filed with the Court before the parties agreed to a stay in discovery.

This dispute involves a bona fide dispute between adversarial parties.  Settlement of this matter, as reflects in this motion and by the settlement agreement was born of an adversarial process with all involved advocating for their clients.

**B.**   **Honestly Negotiated Settlement**

There is a presumption that settlements are informed and non-collusive if the class is represented by experienced counsel, the settlement is the result of arms-length negotiation before an experienced mediator, and substantial discovery occurs prior to the settlement. *Newberg* 4th § 13:14 ("Courts also find an absence of collusion when settlement negotiations are conducted by a third-party mediator.") (citing *In re Penthouse Executive Club Compensation Litig.*, 2013 WL 1828598, at *2 (S.D.N.Y. 2013) (granting preliminary approval of proposed settlement reached through negotiations that involved formal mediation, finding that the proposed settlement is non-collusive, as a settlement "reached with the help of third-party neutrals [which] enjoys a 'presumption that the settlement achieved meets the requirements of due process'" (quoting *Johnson v. Brennan*, 2011 WL 4357376, at *8 (S.D.N.Y. 2011))); *see also Beaulieu v. EQ Indus. Servs., Inc.*, 2009 WL 2208131, at *24-25. (E.D.N.C. 2009) (finding settlement procedurally adequate for the purposes of preliminary approval, in light of the fact that settling parties had

participated in "substantial" discovery that "facilitate[ed] an informed decision" and moreover had

engaged in adversarial negotiations that were "at arm's length and without collusion").

Here, all parties were represented by experienced counsel, the parties participated in

significant discovery, and the settlement resulted from a settlement conference held before former

Magistrate Judge Boland. The Parties agreed to compromise on certain factual and legal issues,

which ultimately results in the class members receiving recourse for the alleged failure to pay

wages in accord with applicable state and federal law for work performed.

### C.   The Settlement is Fair and Reasonable to Class Members

Both FLSA and Rule 23 have complementary but unique standards for determining a fair

and reasonable settlement.  First, "[t]o be fair and reasonable, an FLSA settlement must provide

adequate compensation to the employee and must not frustrate the FLSA policy rationales." *Pliego*,

313 F.R.D at 130. Next,

> [t]o determine whether a proposed settlement under Fed. R. Civ. P. 23(e), is fair and
> equitable to all parties, courts apply the following fairness factors: (1) whether the
> proposed settlement was fairly and honestly negotiated, (2) whether serious
> questions lf law and fact exist which place the ultimate outcome of the litigation in
> doubt, (3) whether the value of an immediate recovery outweighs the mere
> possibility of future relief after protracted and expensive litigation and (4) the
> judgment of the parties that the settlement is fair and reasonable.

*Rutter & Wilbanks Corp. v. Shell Oil Co.*, 314 F.3d 1180, 1188 (10th Cir. 2002).  The Parties assert

that the propose settlement satisfies both of the fairness requirements.

In regard to the FLSA-related analysis, the Parties state that there are approximately 150-

200 members of the putative class.  The members of the class are similarly situated in that they

provided labor at the SkyHouse Denver site under the alleged direction of Circle Group. In

addition, all members of the class were paid under Circle Group's same practices and procedures.

As stated above, he proposed remedy nearly fully compensates the putative class for its claimed wage and hour violations, the most important goal of the FLSA's remedial scheme.

In regard to the Rule 23 factors, the Parties first contend that the proposed settlement provides for a fair distribution of funds to the members of the class based on the time each class member spent on the relevant project. Other than the incentive payment to the named Plaintiffs and their individual settlements with Circle Group (both discussed *infra*), the proposed settlement treats all class members equally based on each class member's actual hours providing labor at the SkyHouse Denver site. The Parties have jointly agreed on a formula to determine the amounts owed to absent class members. Ex. 1, ¶ 9. And the Named Plaintiffs' recoveries from the Net Settlement Fund will be calculated by that same formula.

Next, serious questions of law and fact drove this settlement. On the question of liability, Circle Group's principal defense to Plaintiffs' wage-and-hour claims is that it did not employ Plaintiffs or the Class and that members of the class provided labor under a fully executed Spanish language independent contractor agreement signed by certain members of the class. While Plaintiffs dispute these arguments, they acknowledge that there are risks associated with the executed independent contractor agreements and whether an entity qualifies as a "joint employer" depends on a multi-factored, factually-intensive analysis. *See, e.g.*, *Knitter v. Corvias Military Living*, LLC, 758 F.3d 1214, 1226 (10th Cir. 2014) (in Title VII context); *Zheng v. Liberty Apparel Co.*, 355 F.3d 61, 66 (2d Cir. 2003). These issues would be hotly contested at trial, which would only occur after the Parties incurred significantly more litigation expense. As to damages, Circle Group does not dispute that Class Members were not paid overtime premiums for hours in excess of 40 per week, but Circle Group does contest that Class Members were not paid for every hour

they work, as Plaintiffs contend. This dispute presents significant risk for both sides. If Plaintiffs prevailed on this point at trial, Circle Group would be liable for all of these missing wages at trial, plus statutory penalties and liquidated damages.

In addition, the parties agree that the value of an immediate recovery far outweighs the mere possibility of future relief.   By settling this case, Circle Group is obtaining a global release of wage-and-hour claims brought by workers on their SkyHouse Denver project. And, in exchange for that release, the Class is obtaining nearly all its estimated damages in unpaid straight-time pay and overtime premiums.

Finally, in jointly filing this Motion, the Parties stipulate that they both believe the settlement is fair and reasonable.  In addition, each class member has the ability to claim his or her damages and all class members can object to the settlement if they disagree with the calculation of their unpaid wages or any other component of the settlement.

### D.   Reasonable Service Payment to Named Plaintiffs

Here, the Parties jointly request that the Court preliminarily approve a service award of $1,000 to each of the Named Plaintiffs. "[N]amed plaintiffs…are eligible for reasonable incentive payments" as part of a class action settlement. *Staton v. Boeing*, 327 F.3d 938, 977 (9th Cir. 2003). When evaluating the reasonableness of an incentive award, courts may consider factors such as "'the actions the plaintiff has taken to protect the interests of the class, the degree to which the class has benefited from those actions, . . . the amount of time and effort the plaintiff expended in pursuing the litigation. . . and reasonabl[e] fear[s of] workplace retaliation.'" *Staton*, 327 F.3d at 977 (quoting *Cook v. Niedert*, 142 F.3d 1004, 1016 (7th Cir. 1998)).

The Named Plaintiffs came forward to represent their coworkers despite concerns about

adverse consequences that (whether rational or not)[6] are particularly acute in the present political environment. They have also been instrumental in working toward a classwide settlement, and have each spent many hours of their time, sometimes rearranging work and childcare obligations, to attend meetings and take phone calls related to the case. Ex. 5, Parady Decl. ¶ 14. Therefore, the proposed modest service awards are reasonable. *See, e.g.*, *Van Vranken v. Atlantic Richfield Co.*, 901 F. Supp. 294, 300 (N.D. Cal. 1995) (approving $50,000 participation award to a single class representative.); *Glass v. UBS Fin. Servs., Inc.*, 2007 WL 221862 (N.D. Cal. Jan. 26, 2007) (approving incentive awards of $25,000 to each named plaintiff in a wage and hour case); *Rausch v. Hartford Fin. Servs. Group*, 2007 WL 671334 (D. Or. Feb. 26, 2007) (approving $10,000 incentive award per named plaintiff).

### E.  The Release is Fair

The settlement provides that a class member who does not opt out of the proposed settlement will release all claims that could have been brought in the litigation, including those claims under the FLSA.  While there is a debate between courts whether or not the extinguishment of FLSA claims through a Rule 23 class action is contrary to the opt-in requirements under the FLSA, courts in this district "have found that normal *res judicata* principles apply in hybrid FLSA/Rule 23 collective/class actions, thus binding non opt-out Rule 23 Class Members who do not specifically opt-in to the release of FLSA claims to the ultimate judgment, unless such a claimant shows grounds for collateral attack on the judgment."  *Pliego*, 313 F.R.D. at 132; *Lipnicki v. Meritage Homes Corp.*, No. 3:10-CV-605, 2014 WL 923524, at *15 (S.D. Tex. Feb. 13, 2014).

---

[6] Sam Levin, *Immigration crackdown enables worker exploitation, labor department staff say*, The Guardian, March 30, 2017, https://www.theguardian.com/us-news/2017/mar/30/undocumented-workers-deportation-fears-trump-administration-department-labor.

The parties have agreed upon a notice to the class, include color-coded opt-in/opt-out forms, that "conspicuously state the differences between federal and state law claims, describes what federal rights the claimants are releasing by returning the claim form, and stating clearly that the federal claims for which release would be given upon the filing of a claim including those arising under the FLSA." *Pliego*, 313 F.R.D at 132.

## F.   Attorney Representation by Competent and Experienced Counsel

Plaintiffs' counsel has considerable experience representing workers (and low-wage workers in particular) in class and collective actions. Among other cases, Towards Justice is class counsel to 60,000 current and former detainees of an immigrant detention facility in Aurora, Colorado, *see Menocal v. The GEO Group*, 14-02887 (D. Colo), and counsel to a Colorado Rule 23 Class in a wage-and-hour case brought on behalf of hundreds of current and former employees of a company that cleans kitchen grease hoods at fast food restaurants, *Avendano v. Averus*, 14-01614 (D. Colo.). Ex. 6, Seligman Decl. ¶¶ 3-9. Lowrey Parady, LLC is experienced in employment litigation in Colorado, including substantial experience litigating discrimination cases on behalf of Colorado workers under federal and state law. Towards Justice has bilingual staff members who can communicate with Plaintiffs and absent class members in Spanish.[7]  *See* Ex 6, Seligman Decl. ¶ 12.

## VI.   APPROVAL OF THE SETTLEMENT ADMINISTRATOR

The Parties have agreed to use Optime Administration, LLC ("Optime) as settlement administrator. Optime has assisted Plaintiffs' counsel has administered more than 50 class and

---

[7] For these reasons, the Court should also appoint Towards Justice and Lowrey Parady, LLC as class counsel pursuant to Fed. R. Civ. P. 23(g).

collective actions. Ex. 7, Optime Decl. ¶ 4. Also, Optime specializes in distributing funds to non-English speaking workers. *Id.* ¶ 3. Because of Optime's significant experience with class settlements similar to this, Optime has provided a quote of approximately $15,000.00 for the administration of this class settlement. This amount is well within an acceptable range for the maximization of payment to the putative class members. Ex. 6, Seligman Decl. ¶ 8. The Parties request that Optime be approved as the settlement administrator in this case.

## VII.    PROPOSED SCHEDULE

The parties propose the following schedule for finalizing the settlement, distributing notice, and allowing for objections from absent class members.

| | |
|---|---|
| Payment of Settlement Payment | Within **30 days** of **Agreement** |
| Parties Submit Known Names and Known Contact Information for Class Members | Within **30 days** of **Agreement** |
| Notice, Opt-Out, and Opt-In Claims Forms Distributed to the Class | Within **10 days** of **Preliminary Approval** |
| Opt-Out Period | **60 days** following **Transmission of Notice** |
| Objection Deadline | **40 days** following **Transmission of Notice** |
| Class Administrator Discloses to Parties Amounts to be Distributed per Known Class Member Who Has Not Opted Out | Within **10 days** following **Opt-Out Period** |
| Final Approval and Fairness Hearing | **Following Opt-Out Period** |
| Effective Date | **Final Approval or Resolution of Appeals Regarding Approval** |
| Claims Period | **90 days** following **Effective Date** |

## G.  <u>CONCLUSION</u>

WHEREFORE, the Parties respectfully request that the Court enter an Order that:

1. Preliminarily approves the Settlement Agreement as fair, reasonable, and adequate to the collective and class action classes;

2. Certify a settlement class for claims brought pursuant to Fed. R. Civ. P. 23(e)

3. Preliminarily approve Lowrey Parady, LLC and Towards Justice as class counsel for the Class;

4. Preliminarily approve the named Plaintiffs as the class representatives for the Class, and preliminarily approve a service award to each of them of $1,000;

5. Approve the form, contents, and method of notice to be given to the Class as set forth in the Settlement Agreement;

6. Designate Optime as the settlement administrator ("Settlement Administrator") of the settlement and instruct the Settlement Administrator to disseminate, in accordance with the terms of the Settlement Agreement and the Preliminary Approval Order, the settlement notice to the class;

7. Establish procedures and schedule deadlines for persons to object to the settlement, the Settlement Agreement, or class counsel's fee application;

8. Schedule the Fairness Hearing;

9. Schedule deadlines for the filing of: (a) documents in support of entry of the Final Approval Order; (b) objections to the settlement, class certification, appointment of class counsel, and the approval of the representative Plaintiffs as the representatives of the class;

10. Provide that any timely objection to the settlement shall be heard and considered by the Court at Fairness Hearing.

Respectfully Submitted,

/s/ *Sarah Parady*
Sarah Parady
Lowrey Parady, LLC
1725 High Street #1
Denver, CO 80218

Tel.: 303-593-2595
Fax: 303-502-9119
Email: sarah@lowrey-parady.com
Attorney for Plaintiffs


 s/*Alice Conway Powers*
Alice Conway Powers
LEWIS BRISBOIS BISGAARD & SMITH LLP
1700 Lincoln Street, Suite 4000
Denver, Colorado 80203
Phone:  303.861.7760
Alice.Powers@lewisbrisbois.com
Attorney for Defendant The Circle Group, LLC

**Certificate of Service**

I hereby certify that on September 11, 2017 I served a true and correct copy of the forgoing on all parties that have appeared pursuant to F.R.C.P. 5.


 s/ Carol Zumwalt    

Carol Zumwalt