# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Civil Case No. 1:16-cv-01329-RBJ

VIOLETA SOLIS,
CESAR SALAZAR,
EDGAR CEBALLOS,
AARON SALAS,
HILDEBERTO ALDECO BALTAZAR,
JUAN RAMON RODRIGUEZ,
ADRIANA LIRA,
NANCY GUTIERREZ,
BEATRIZ MIRAMONTES,
and those similarly situated;

      Plaintiffs,

v.

THE CIRCLE GROUP, LLC,
JAVIER MARTINEZ DRYWALL, LLC,
GULF COAST CONSTRUCTION, INC.,

      Defendants.

---

## JOINT MOTION FOR FINAL APPROVAL OF
## FINAL HYBRID RULE 23-FLSA CLASS ACTION SETTLEMENT

---

**Contents**

I.   INTRODUCTION --------------------------------------------------------------------------------3

II.  Argument---------------------------------------------------------------------------------------4

    A.   *Standard for Final Approval of a Hybrid Settlement* -----------------------------------------4

    B.   *Settlement Terms* ------------------------------------------------------------------------5

       1.   Payment to the Class for wage claims substantially compensates the Class for estimated damages resulting from alleged unpaid wages and overtime premiums. --------------------- 5

       2.   The Class payment will be distributed fairly in proportion to the monetary harm to Class members. ------------------------------------------------------------------------------- 6

       3.   Payment to Named Plaintiffs for their discrimination claims is modest relative to the size of those claims. ------------------------------------------------------------------------- 7

       4.   The service awards to Named Plaintiffs are modest.-------------------------------------- 8

       5.   The attorney's fees are within the range of what courts approve in this Circuit and are substantially smaller than the economic benefit to the Class.--------------------------------- 9

       6.   The notice, opt-out, and claims process provided the best practicable notice to class members. -----------------------------------------------------------------------------11

       7.   The parties have not agreed to any noteworthy non-monetary terms, and the settlement does not include any confidentiality or non-disparagement provisions. ---------------------11

    C.   *The Settlement was Fairly and Honestly Negotiated* ----------------------------------------- 11

    D.   *Serious Questions of Law and Fact Exist* ---------------------------------------------------- 12

    E.   *Further Litigation Will be Expensive and Risky* -------------------------------------------- 13

    F.   *The Parties Adjudge the Settlement to Be Fair and Reasonable* ------------------------------ 13

    G.   *The Court Should Certify the Settlement Class* --------------------------------------------- 13

III.  CONCLUSION ------------------------------------------------------------------------------ 13

The named Plaintiffs and Defendant The Circle Group, LLC ("Circle Group") (collectively "Parties"), through undersigned counsel and pursuant to Federal Rule of Civil Procedure 23(e), respectfully submit this Joint Motion for Final Approval of Proposed Class Action Settlement. Separately, in advance of the November 29, 2017 fairness hearing, the named Plaintiffs will also submit an Unopposed Petition for Attorney's Fees and Costs.

## I.   INTRODUCTION

On September 11, 2017, the parties moved for preliminary approval of a hybrid Rule 23-FLSA class action settlement. ECF Doc. 148 ("Mot. Prelim. Approval"). The Court granted preliminary approval and set a fairness hearing, scheduled for November 29, 2017. ECF Doc. 149.

Following preliminary approval, class action administrator Optime Administration endeavored to provide all class members with actual notice of the settlement and their opportunity to opt out or object. At the time of this filing, one class member has opted out of the settlement. No objections have been filed, meaning that no objections have been filed by the deadline for objection, and there will be no valid objections to the settlement. ECF Doc. 148-1, Settlement Agreement ("SA") ¶ 19; Ex. B, Seligman Decl. at ¶ 12. The parties will supplement this motion with a declaration from Optime Administration after the November 25, 2017, the deadline for opting out of the settlement.

The total settlement amount is $700,000. That amount finally resolves litigation against Defendant Circle Group and thus terminates this case [1] Based on estimated settlement administration costs, the settlement amount shall be allocated approximately as follows:

---

[1] Defendant Gulf Coast Construction has filed for bankruptcy and claims against it are subject to the automatic stay. ECF Doc. 21; *In re Gulf Coast Construction*, 16-61905 (Bankr. N.D. Ga.). Defendant Javier Martinez has not been served. ECF Doc. 93. If this settlement is approved, Plaintiffs intend to voluntarily dismiss claims against those Defendants for likely insolvency.

|  | AMOUNT |
|---|---|
| Payment to Class for Wage Claims | $403,875 |
| Payment to Individuals to Resolve Discrimination Claims | $50,400 |
| Service Awards to Named Plaintiffs | $9,000 |
| Attorney's Fees | $192,180 (30%) |
| Costs | $27,545 |
| Estimated Settlement Administration | $17,000 |
| TOTAL | $700,000 |

If the value of the payment to the Class for its wage claims falls below $402,000 for any reason—including for example, settlement administration costs exceeding the estimated amounts—the parties will seek leave of the Court. Any excess amounts will be distributed to the Class per the settlement agreement.

For the following reasons, the settlement is fair, reasonable, and adequate.

## II.   ARGUMENT

### A. Standard for Final Approval of a Hybrid Settlement

Courts in the Tenth Circuit use four factors to determine if a settlement is fair, reasonable, and adequate, Fed. R. Civ. P. 23(e)(2): "(1) whether the proposed settlement was fairly and honestly negotiated; (2) whether serious questions of law and fact exist, placing the ultimate outcome of the litigation in doubt; (3) whether the value of an immediate recovery outweighs the mere possibility of future relief after protracted and expensive litigation; and (4) the judgment of the parties that the settlement is fair and reasonable." *Lucas v. Kmart Corp.*, 234 F.R.D. 688, 693 (D. Colo. 2006) (citing *Rutter & Willbanks Corp. v. Shell Oil Co.*, 314 F.3d 1180, 1188 (10th Cir. 2002)). This standard substantially overlaps with the standard that courts apply in deciding whether to approve settlements under the Fair Labor Standards Act, 29 U.S.C. §§ 201, *et seq.*

("FLSA"). *Pliego v. Los Arcos Mexican Restaurants, Inc.*, 313 F.R.D. 117, 128 (D. Colo. 2016). In both cases, the touchstone of the analysis is fairness. *Id.*

**B. <u>Settlement Terms</u>**

Any evaluation of the fairness and honesty of settlement negotiations, the value of immediate recovery in the face of uncertain continued litigation, and the judgment of the parties that the settlement is fair and reasonable will turn on the fairness of the terms of the settlement, and in particular on the division of the settlement amount among class members, named plaintiffs, and class counsel. As the Court recognized in the Minute Order preliminarily approving the settlement, "once the defendant agrees on a number, the division of the total settlement amount makes little difference to the defendant." ECF Doc. 149. For the reasons set out here, the proposed division is fair.

**1. Payment to the Class for wage claims substantially compensates the Class for esti-mated damages resulting from alleged unpaid wages and overtime premiums.**

This case was filed as a putative class and collective action on behalf of former construction workers who performed drywall-related labor on the SkyHouse Denver construction project in Denver between September 2015 and July 2016. Plaintiffs sought, among other things, to recover unpaid wages and overtime premiums for themselves and similarly situated workers. According to Plaintiffs, they were improperly classified as "independent contractors" and were paid straight-time pay without overtime premiums for hours worked in excess of forty hours per week. Additionally, Plaintiffs allege that they were frequently not paid at all for some of the hours they worked. *See generally* ECF Doc. 97 (Fourth Amended Complaint). Defendant Circle Group disputes these allegations.

Through extensive discovery in this litigation and in the Gulf Coast Construction

bankruptcy proceeding, Plaintiffs have obtained an unusually comprehensive set of documents regarding the potential scope of damages. *See* ECF Doc. 148-5 at ¶¶ 8-10 (Parady Decl. for preliminary approval). In preparation for mediation, Plaintiffs retained an expert to analyze that data. Among other things, Plaintiffs instructed the expert to calculate unpaid wages and overtime premiums for all members of the Class. Plaintiffs' expert assumed a 56-hour workweek based on Plaintiffs' interpretation of information and testimony obtained during discovery. ECF Doc. 148-5 at ¶ 10 (Parady Decl. for preliminary approval); *see* Ex. A, Bardwell Decl. at ¶ 6. Defendant Circle Group, however, disputes that point.

Based on evidence of amounts paid to absent Class members and assuming the disputed 56-hour work weeks, Plaintiffs' expert estimated that the class was owed approximately **$403,000** in unpaid wages and overtime premiums. *See* Ex. A, Bardwell Decl. at ¶ 10. Of that amount, some Class members, including Named Plaintiffs and three additional members of the Class, have or will receive a total of $71,078, in settlement payments for lost wages from LAG Drywall, Inc., ("LAG") one of the other Defendants in this matter. Ex. B, Seligman Decl. at ¶¶ 4-5. Taking those payments into account, the total remaining damages for alleged lost wages are approximately **$331,992**. Under the proposed settlement, the Class will receive **$403,875**, which will more than compensate them for their unpaid damages for alleged unpaid wages and overtime premiums.

2. **The Class payment will be distributed fairly in proportion to the monetary harm to Class members.**

The settlement payment will be distributed to the members of the Class according to the number of weeks that they worked at the SkyHouse Denver project. SA at ¶ 9. The amounts will be divided between lost wages and statutory penalties. SA ¶ 9(e)-(f); *see generally Evans v. Loveland Auto. Investments, Inc.*, 632 F. App'x 496, 497 (10th Cir. 2015) (for discussion of differences

between lost wages, statutory penalties under Colorado law, and liquidated damages under the FLSA).

To avoid double recovery, individuals who have received payments for lost wages from LAG as part of this litigation will have those amounts reduced from their lost wages damages. SA ¶ 9(c).

Finally, this settlement does not include a clause that would revert unpaid class funds to Defendant. The entire class fund will be paid to Class members, to Class counsel as attorney's fees and costs, or to the Class administrator. Therefore, the Court can adjudge the adequacy and fairness of the settlement without waiting to see how many Class members make claims on the class fund. *Grove v. ZW Tech, Inc.*, 2012 WL 1789100, at *7 (D. Kan. May 17, 2012).

**3. Payment to Named Plaintiffs for their discrimination claims is modest relative to the size of those claims.**

Plaintiffs have also alleged claims for unpaid wages and overtime premiums as well as claims for discrimination and hostile work environment. *See* Fourth Am. Compl., ECF Doc. 98 (Counts VIII-X). Based on discovery regarding potential differences between the treatment of putative class members as relates to Plaintiffs' claims for discrimination and hostile work environment—claims which were originally designated as "class claims"—Plaintiffs now believe that a classwide settlement of those claims is inappropriate. Ex. B, Seligman Decl. at ¶ 5. Instead, Plaintiffs have resolved those claims on an individual basis. *Cf. Nat'l Super Spuds, Inc. v. New York Mercantile Exch.*, 660 F.2d 9, 18 (2d Cir. 1981) (class settlement could not release claims of absent class members that were not pursued as a class action).

The simultaneous settlement of class claims and individual claims by class representatives is not inherently problematic. *See* Ex. C, Moss. Decl. at ¶ 5. There is a theoretical concern in such

cases that class representatives might accept inflated individual settlement amounts in exchange for a low class settlement. *See, e.g.*, *Jaffe v. Morgan Stanley & Co.*, No. C 06-3903 TEH, 2008 WL 346417, at \*6 (N.D. Cal. Feb. 7, 2008). But, as explained above, the Class will receive more than its estimated lost wages and overtime premiums. Furthermore, the overall amounts paid to the Named Plaintiffs to resolve their discrimination and hostile work environment claims, approximately equal to 7.2% of the total settlement fund, are modest compared to the typical value of such claims, which are not (like wage claims) limited to economic losses but also account for emotional distress. *See* Ex. C, Moss. Decl. at ¶ 5(c); Ex. F, Powers Decl. at ¶ 4.

**4.   The service awards to Named Plaintiffs are modest.**

The Named Plaintiffs will also receive service awards of $1,000 per person in recognition of the risks and hard work that they have dedicated to pursuing these claims on behalf of their co-workers, many of whom may have been too afraid to come forward affirmatively.

"[N]amed plaintiffs…are eligible for reasonable incentive payments" as part of a class action settlement. *Staton v. Boeing*, 327 F.3d 938, 977 (9th Cir. 2003). When evaluating the reasonableness of an incentive award, courts may consider factors such as "'the actions the plaintiff has taken to protect the interests of the class, the degree to which the class has benefited from those actions, . . . the amount of time and effort the plaintiff expended in pursuing the litigation. . . and reasonabl[e] fear[s of] workplace retaliation.'" *Staton*, 327 F.3d at 977 (quoting *Cook v. Niedert*, 142 F.3d 1004, 1016 (7th Cir. 1998)).

The Named Plaintiffs came forward to represent their coworkers despite concerns about

adverse consequences that (whether rational or not)[2] may have deterred some class members from coming forward. While Defendants assert that no such adverse consequences would result from any workers making legitimate claims, Plaintiffs' believe that the risks they felt are particularly acute in the present political environment. Ex. D, Salazar Decl. at ¶ 4; Ex. E. Gutierrez Decl. at ¶ 2. They have also been instrumental in working toward a classwide settlement, and have each spent dozens of hours of their time, sometimes rearranging work and childcare obligations, to attend meetings and take phone calls related to the case. ECF Doc. 148-5 at ¶ 10 (Parady Decl. for preliminary approval); Ex. D, Salazar Decl. at ¶ 5; Ex. E, Gutierrez Decl. at ¶ 3-4. Therefore, the proposed modest service awards are reasonable. *See, e.g., Van Vranken v. Atlantic Richfield Co.*, 901 F. Supp. 294, 300 (N.D. Cal. 1995) (approving $50,000 participation award to a single class representative.); *Glass v. UBS Fin. Servs., Inc.*, 2007 WL 221862 (N.D. Cal. Jan. 26, 2007) (approving incentive awards of $25,000 to each named plaintiff in a wage and hour case); *Rausch v. Hartford Fin. Servs. Group*, 2007 WL 671334 (D. Or. Feb. 26, 2007) (approving $10,000 incentive award per named plaintiff).

   **5. The attorney's fees are within the range of what courts approve in this Circuit and are substantially smaller than the economic benefit to the Class.**

   Plaintiffs will separately petition the Court to recover attorney's fees and costs from the common fund. In that filing, Plaintiffs will discuss their requested fees at greater length. For the purpose of evaluating the overall settlement, however, the parties point out that fees of 30 percent of the common fund—which will total just over $190,000 of the fund—are modest relative to other

---

[2] Sam Levin, *Immigration crackdown enables worker exploitation, labor department staff say*, The Guardian, March 30, 2017, https://www.theguardian.com/us-news/2017/mar/30/undocumented-workers-deportation-fears-trump-administration-department-labor.

class settlements in this Circuit. *See, e.g., Hill v. Kaiser-Francis Oil Co.*, 2013 WL 12090048, at *3 (W.D. Okla. July 30, 2013); *Anderson v. Merit Energy Co.*, 2009 WL 3378526 (D. Colo. Oct. 20, 2009). And those fees are particularly appropriate considering, among other factors, the substantial time and resources that Plaintiffs' counsel dedicated to the case, the difficulty of the case, the relative undesirability of the case, and Plaintiffs' counsel's success in obtaining a fair result for the Class. Ex. C, Moss Decl. at ¶ 4; x. B, Ex. Seligman Decl. at ¶¶ 6-8. Indeed, based on their loadstar, which courts use to "cross-check" the appropriateness of attorney's fees recovered from the common fund, Plaintiffs' counsel would recover less than half of their fees in this case. *See* ECF Doc. 148-5 at ¶ 5 (Parady Decl. for preliminary approval); Ex. B, Seligman Decl. at ¶¶ 6-8.

Separately, Plaintiffs' Counsel seeks recovery of their out-of-pocket costs, totaling around $27,545. Ex. B, Seligman Decl. at ¶¶ 10-11. Costs will also be discussed at greater length in Plaintiffs' fee petition. Costs alone amount to about 4.2 percent of the common fund, bringing the total recovery of attorney's fees and costs to 34.2 percent of the common fund. That amount is also within the range of attorney's fees and cost recoveries permitted by courts within this Circuit. *See, e.g., CompSource Oklahoma v. BNY Mellon, N.A.*, 2012 WL 6864701, at *8 (E.D. Okl Oct. 25, 2012) (describing a range from 22 percent to 37 percent). Additionally, the costs here, which include the costs of discovery in Atlanta, obtaining the identities of the class members through discovery in the Gulf Coast bankruptcy proceeding, and the costs of the expert analysis that made it possible to negotiate a settlement, were critical in obtaining a fair settlement that compensates the Class for its lost wages. *See* Ex. B, Seligman Decl. at ¶ 10.

6. **The notice, opt-out, and claims process provided the best practicable notice to class members.**

As described in the parties' motion for preliminary approval, the settlement prescribes a comprehensive process for notifying absent class members, informing them of their opportunity to opt out or object to the settlement, and obtaining claims from the Class members who seek to recover from the class fund. *See* Mot. Prelim. Approval at 16-18. In particular, the Parties have worked together to design a notice process that is sensitive to the circumstances of the class, which is constituted primarily by Spanish-speaking, immigrant workers who are more likely to be transient than class members in other cases and less likely to feel comfortable responding to class notice. *Id.*

In this way, the settlement and notice process meet the requirements of due process and provide absent Class members with a meaningful opportunity to recover from the class fund.

7. **The parties have not agreed to any noteworthy non-monetary terms, and the settlement does *not* include any confidentiality or non-disparagement provisions.**

Finally, the settlement does not include any noteworthy non-monetary terms. Most importantly, it does not include any confidentiality or non-disparagement terms.

C. **The Settlement was Fairly and Honestly Negotiated**

In considering whether "[t]he settlement was fairly and honestly negotiated" the Court should weigh heavily the involvement of former Magistrate Judge Boland in mediating the settlement. *See* Ex. F, Powers Decl. at ¶¶ 5-6. *See, e.g.*, *Farley v. Family Dollar Stores, Inc.*, 2014 WL 5488897, at *2 (D. Colo. Oct. 30, 2014). The Court should also consider that counsel for both sides are experienced employment litigators. *See* Mot. for Prelim. Approval at 12; Ex. F, Powers Decl. at ¶ 2.

Relevant to the Court's expressed concerns with how the settlement amount is divided among the Class members and Plaintiffs' counsel, Plaintiffs' counsel took care to order negotiations to mitigate the danger that Named Plaintiffs would accept a low class settlement in exchange for high individual settlements or service awards. In describing Defendants' counteroffers to the Named Plaintiffs attending the mediation, Plaintiffs' counsel presented an overall settlement amount before describing Defendants' proposed breakdown between individual settlements and the classwide wage settlement. Ex. E, Gutierrez Decl. at ¶ 5, ECF Doc. 148-5 at ¶ 12 (Parady Decl. for preliminary approval); *see also* Ex. F, Powers Decl. at ¶ 5 ("Our position at mediation was that any settlement had to be a global settlement including a release of all claims by all named plaintiffs and including attorney fees and costs."). Plaintiffs accepted an amount to settle the wage-and-hour class claims before hearing how much Circle Group had offered to resolve Plaintiffs' discrimination claims. Ex. E, Gutierrez Decl. at ¶ 5. Accordingly, the individual Plaintiffs agreed on the fairness of the overall settlement figure before they knew how much they might receive for settling their individual discrimination claims.

Additionally, while Plaintiffs' counsel had informed the Named Plaintiffs that they could be eligible for service awards if the Court approved them, whether or not service awards would be available and the amount of such awards was not discussed in negotiations. Ex. E, Gutierrez Decl. at ¶ 7.

**D.  Serious Questions of Law and Fact Exist**

The parties have already explained that serious questions of law and fact exist, and they refer the Court to their Motion for Preliminary Approval and incorporate those arguments into this motion as if stated herein. Mot. Prelim. Approval, pgs. 22-23.

**E.  Further Litigation Will be Expensive and Risky**

The parties have already explained that further litigation would be expensive and risky, and they refer the Court to their Motion for Preliminary Approval and incorporate those arguments into this motion as if specifically stated herein. Mot. Prelim. Approval, pgs. 22-23.

**F.  The Parties Adjudge the Settlement to Be Fair and Reasonable**

The parties have already explained that they adjudge the settlement to be fair and reasonable, and they refer the Court to their Motion for Preliminary Approval and incorporate those arguments into this motion as if specifically stated herein. Mot. Prelim. Approval, pgs. 21-23.

**G.  The Court Should Certify the Settlement Class**

The parties have already explained why the Court should certify the Class, and the Court has already preliminary certified the Class. ECF Doc. 149. The parties refer the Court to their Motion for Preliminary Approval and incorporate those arguments into this motion as if specifically stated herein. Mot. Prelim. Approval, pgs. 6-18.

### III.   CONCLUSION

For all the above reasons, the Court should finally approve the proposed settlement and certify the preliminarily certified Class.

Respectfully Submitted,


/s/ David H. Seligman ____
David H. Seligman
Alexander Hood
Towards Justice
1535 High St., Suite 300
Denver, CO 80218

Tel.: 720-248-8426
Fax: 303-957-2289
Email: david@towardsjustice.org

*Attorneys for Plaintiffs*

/s/ *Alice Conway Powers* __
Alice Conway Powers
Jon Olafson
Lewis Brisbois Bisgaard & Smith, LLP-Denver
1700 Lincoln Street
Wells Fargo Center
Suite 4000
Denver, CO 80203
303-861-7760
Fax: 303-861-7767
Email: alice.powers@lewisbrisbois.com
*Attorneys for Defendants*

### Certificate of Service

I hereby certify that on November 22, 2017 I served a true and correct copy of the forgoing on all parties that have appeared pursuant to F.R.C.P. 5.


s/David H. Seligman

David H. Seligman